## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

VINCENT De GIOVANNI,          )
MARIETTE BARROS,           )
and all others similarly situated,  )
                            )
             Plaintiffs,    )
                            )     Civil Action No. 07-10066
          v.            )
                            )
JANI-KING INTERNATIONAL, INC., )
JANI-KING, INC., and         )
JANI-KING OF BOSTON, INC.,    )
                            )
             Defendants.   )
                            )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

In this case, Plaintiffs challenge the systemic and egregious legal violations

committed by the largest janitorial franchise company in the world. Am. Compl. ¶ 4. As

described in the Amended Complaint,[1] Defendants (also referred to collectively as

"Jani-King") sell cleaning "franchises" to vulnerable individuals (most of whom are non-

English-speaking immigrants) who pay large sums of money in order to obtain cleaning

work that they will never see. Defendants know that they do not have sufficient

business to meet the obligations they incur in these so-called "franchises," but they

nevertheless continue to sell them and reap the profits of the plaintiffs' substantial

franchise payments. Am. Compl. ¶¶ 1, 20. In addition, Defendants classify the plaintiff

"franchisees" who perform the cleaning work as independent contractors, despite the

---

[1] Plaintiffs filed their Amended Complaint today, which adds an additional lead plaintiff, Mariette Barros, adds claims under the Massachusetts independent contractor statute and the Massachusetts wage laws, and adds additional factual allegations. As Defendants have not yet filed a responsive pleading, Plaintiffs file their Amended Complaint as of right. *See* Fed. R. Civ. Pro. 15(a); *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 22 (1st Cir. 1989) (motion to dismiss is not a responsive pleading).

fact that they are actually employees under Massachusetts law[2] and thereby are entitled

to all of the protections of the Massachusetts wage statutes (including minimum wage,

overtime, and timely payment of all wages), as well as other benefits that inure from the

employment relationship (such as eligibility for unemployment and workers'

compensation). Am. Compl. ¶¶ 34-45. *See Coverall North America, Inc. v. Com'r of*

*Div. of Unemployment Assistance*, 447 Mass. 852 (2006) (SJC affirmed decision of

DUA that franchisee for another janitorial franchise company was an employee, not

independent contractor).

In their Motion to Dismiss, Defendants are attempting to deprive Plaintiffs of their

ability to vindicate their rights effectively, in violation of the First Circuit's recent

pronouncements in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), as well as in

violation of Massachusetts public policy, which provides non-waivable rights for

employees and strong protections for victims of unfair and deceptive business practices.

Defendants contend that Plaintiffs may only bring claims under Texas law, may only

litigate their claims in Texas, and are specifically prohibited by the franchise agreement

from pursuing claims for treble damages. This argument must be rejected, as the law is

clear that Massachusetts wage laws must apply to employees who have performed

work in Massachusetts and may not be waived, and Defendants' attempt to avoid the

strict Massachusetts unfair and deceptive business practices statute (Chapter 93A)

violates the vindication of statutory rights principles enunciated in *Kristian*.[3]

---

[2]     Plaintiffs bring their claims under Chapter 93A and under the wage laws in the alternative; they
recognize that Chapter 93A does not apply to the employment relationship. Their common law claims are
cognizable regardless of whether they are properly characterized as employees or independent
contractors.

[3]     As discussed further below, *Kristian* addressed the validity of various aspects of an arbitration
clause. Although recognizing that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, creates a strong

In addition, alternatively, the provisions of Jani-King's franchise agreement that purport to limit remedies and dictate the out-of-state law and forum that would be used in the event of disputes, are procedurally unconscionable and unenforceable, as Plaintiffs have alleged that Jani-King has targeted primarily non-English-speaking immigrants whom Jani-King knows would not understand the purported waivers of rights contained in the franchise agreement.

With respect to the venue issue, this case has been brought on behalf of a class of Massachusetts residents, represented by Massachusetts counsel, regarding work performed and violations committed in Massachusetts. The witnesses and evidence in this case will be located primarily in Massachusetts. For the reasons touched upon above, Massachusetts law will be applied in this case, and the federal court sitting in Massachusetts will undoubtedly be more familiar with Massachusetts law than a federal court sitting in Texas. Moreover, it clearly would not be a hardship on Defendants to litigate this case in Massachusetts, given that they conduct business here and have already retained exceptionally competent counsel located here to represent them.

Finally, Defendants argue that this Court does not have personal jurisdiction over Jani-King International, Inc., and that Plaintiffs have not named a necessary party, namely the corporate entity through whom Plaintiff Vincent de Giovanni contracted with Defendants. Both of these arguments must be rejected as well. It is premature for the Court to consider on a motion to dismiss whether personal jurisdiction exists over Jani-

---

presumption in favor of arbitration, the First Circuit in *Kristian* rejected the defendant corporation's attempt to use an arbitration clause to circumvent the plaintiffs' rights in a number of ways. Here, the Court's focus is on a forum selection clause, which does not enjoy the same presumption of validity as do arbitration clauses (given that there is no federal Forum Selection Clause Act). Thus, *Kristian's* vindication of statutory rights analysis should apply with even more force to forum selection clauses than to arbitration clauses.

King International, Inc., as that issue will require some development of a factual record. Moreover, as set forth in the Amended Complaint (whose allegations must be accepted as true on a motion to dismiss), Plaintiffs allege that all Jani-King International, Inc., Jani-King, Inc., and Jani-King of Boston, Inc. are all inter-related entities and that all have engaged in activities within Massachusetts and thereby subjected themselves to jurisdiction here.[4] With respect to Defendants' claim that Plaintiffs have not named a necessary party, this argument is also premature and requires the development of a factual record through discovery. Plaintiffs do not concede that Vincent de Giovanni's purported waiver of his rights to sue in his own name was valid; they will await amending the complaint to add the corporate entity until this issue has been properly addressed by the Court following discovery.

## I. THE CLAUSES IN JANI-KING'S FRANCHISE AGREEMENT THAT DENY PLAINTIFFS THE ABILITY TO VINDICATE THEIR RIGHTS FULLY ARE UNENFORCEABLE.

Jani-King argues that Plaintiffs' claims must be dismissed because of provisions in its franchise agreement that all of its franchisees are required to sign. First, Jani-King argues that Plaintiffs cannot seek multiple damages, even when permitted by the statutes under which they are suing, because the franchise agreement contains a provision limiting franchisees' remedies to the amount that they invested in order to "purchase" the franchise. Second, Jani-King argues that Plaintiffs' claims based on Massachusetts law (including the claim under Chapter 93A and, presumably now, the

---

[4] Plaintiffs also note that the same corporate counsel appears to represent both Jani-King International, Inc. and Jani-King of Boston, Inc., see Declaration of Donald A. Burleson (describing himself as corporate counsel to JKI but purporting to have personal knowledge of JKB's business and transactions), and that their corporate registration shows that they, along with Jani-King, Inc., have

4

wage claims) must be dismissed because the agreement requires that Texas law apply to all claims. Third, Jani-King argues that Plaintiffs' claims must be brought in Dallas County, Texas, because of the agreement's forum selection clause.

All of these arguments go to the same issue—that Jani-King is attempting to prohibit its franchisees from fully vindicating their rights by requiring them to enter into an adhesion contract selecting the forum for their claims, foreclosing the opportunity to pursue statutory claims from their home state in which their work was performed, and drastically limiting the available remedies. These arguments must fail because corporations cannot avoid their obligations under Massachusetts law by requiring individuals to enter into contracts waiving their statutory rights.

In *Kristian v. Comcast Corp.*, in which the plaintiffs challenged the validity of a contract requiring the parties to submit their claims to arbitration and containing limitations on remedies, the First Circuit applied "a vindication of statutory rights analysis" to the issue of the enforceability of the challenged provisions of the arbitration agreement at issue. 446 F.3d 25, 63 (1st Cir. 2006). Under *Kristian*, "the essence of the vindication of statutory rights analysis [is] the frustration of the right to pursue claims granted by statute." *Id.* at 60 n.22.[5] Applying this analysis, the First Circuit held that the arbitration clause's prohibitions against treble damages, attorneys' fees and costs,

_____

identical officers and directors. *See* Liss-Riordan Decl., Exhibit A (printouts from Texas Secretary of State).

[5] In *Kristian*, the First Circuit discussed the confusion in the prior case law regarding whether or not state unconscionability principles apply to the analysis of the enforceability of arbitration clauses. 446 F.3d 25, 60-64 (1st Cir. 2006). The court determined that the vindication of rights analysis provides a separate and independent basis for rendering arbitration provisions invalid. *Id.* Thus, under *Kristian*, it is not necessary for plaintiffs to prove that the contracts are unconscionable under state law, which would require a showing of both substantive and procedural unconscionability, *id.* at 60 n.20; *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 294 n.13 (1980); all that is required is a showing that the contract provisions would prevent the plaintiffs from vindicating their statutory rights. However, as set forth in Section II, *infra,*

and class actions were invalid because they prevented the plaintiffs from vindicating their statutory rights.

Notably, the *Kristian* court applied this analysis in the context of the Federal Arbitration Act, which embodies "the strong federal policy of resolving any doubts concerning arbitrability in favor of arbitration." *Kristian*, 446 F.3d at 35 (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")). Despite this strong federal policy favoring arbitration, the First Circuit held that parties could not be required to submit claims to the arbitral forum if that forum failed to allow the parties to vindicate their statutory rights. Specifically, the First Circuit explained: "Unless the arbitral forum provided by a given agreement provides for the fair and adequate enforcement of a party's statutory rights, the arbitral forum runs afoul of this presumption and loses it claim as a valid alternative to traditional litigation." *Id.* at 37; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991).

Courts from Massachusetts and around the country have applied a similar analysis in the context of forum selection and choice of law clauses that negatively impact parties' ability to exercise their rights fully. For example, in *Williams v. America Online, Inc.*, 2001 WL 135825 at *3 (Mass. Super. Feb. 8, 2001), a Massachusetts court rejected a forum selection clause that would have prevented consumers from pursuing a Chapter 93A claim because, under the public policy of Massachusetts, consumers in Massachusetts should not have to pursue their claims in Virginia. In *America Online,*

---

Plaintiffs do contend that the Jani-King franchise agreements are procedurally unconscionable, as well as substantively unconscionable.

*Inc. v. Superior Court*, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001), a California appeals court refused to enforce forum selection and choice of law clauses that limited the rights and remedies available to the plaintiff. The court in *AOL* noted the policy favoring enforcement of forum selection clauses but explained that such clauses were only favored "so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement." *Id.* at 13.[6] *See also, e.g., Dix v. ICT Group, Inc.*, 125 Wash. App. 929 (2005) (striking down forum selection and choice of law clause when it would "undermine[] the very purpose of the [Consumer Protection Act], which is to offer broad protection to the citizens of Washington"); *America Online, Inc. v. Pasieka*, 870 So.2d 170, 171-72 (Fla. Dist. Ct. App. 2004) (declining to enforce forum selection and choice of law clause in class action brought under the Florida Deceptive and Unfair Trade Practices Act because "a similar action and comparable remedy could not be pursued in the foreign state").

These cases, taken together with *Kristian*, stand for the proposition that plaintiffs cannot be required to submit to a forum that will not allow them to vindicate all of their rights. Just as an "arbitral forum" that fails to "provide[] fair and adequate enforcement of a party's statutory rights . . . loses its claim as a valid alternative to traditional litigation," so too does a forum selected by adhesion contract fail when it does not allow full enforcement of statutory rights. *Kristian*, 446 F.3d at 37.

---

[6]     The court struck down the forum selection and choice of law clause in *AOL* because it impaired the plaintiffs' substantial legal rights in several respects, namely by prohibiting claims under California's consumer protection law, in violation of California public policy, and requiring claims to be brought under the less favorable consumer protection law in Virginia. This choice of law clause had the effect of denying plaintiffs the ability to bring their claims on a classwide basis and limiting the scope of available relief. 90 Cal. App. 4th at 15-18.

**A.    The limitations on remedies contained in the Jani-King franchise agreement are unenforceable.**

Jani-King's franchise agreement contains an egregious limitation on damages, purporting to limit damages "to franchisee's total investment with franchisor" and explicitly prohibiting punitive or exemplary damages. This provision, which seriously impairs Plaintiffs' substantive rights, cannot stand for several reasons.

First, as written, this provision prohibits Plaintiffs from seeking to recover wages owed to them under the Massachusetts wage laws. As discussed *infra*, in Section I.B.1, a corporation cannot contract out of its obligations to its employees under the state's wage laws for work performed in the state. It also improperly prohibits Plaintiffs from seeking to recover the full extent of their damages under Chapter 93A and their common law claims.

Second, in prohibiting punitive damages, the provision limits plaintiffs' rights under the wage laws and Chapter 93A, both of which allow for recovery of treble damages (which are "'essentially punitive in nature,'" *Goodrow v. Lane Bryant Inc.*, 432 Mass. 165, 178 (2000)). In *Kristian*, the First Circuit struck down a waiver of punitive damages in an arbitration agreement, holding that "the award of treble damages under the federal antitrust statutes cannot be waived." 446 F.3d at 47-48. The court concluded that such a waiver would constitute "'a prospective waiver of a party's right to pursue statutory remedies for antitrust violations,'" for which the Supreme Court had noted it "'would have little hesitation in condemning [an] agreement as against public

8

policy.'" *Id.* at 47 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).[7]

**B.    Plaintiffs must be permitted to pursue their claims under the Massachusetts wage laws and under Massachusetts unfair and deceptive business practices law (Chapter 93A).**

**1.    Massachusetts wage laws**

Massachusetts has a strong interest in protecting its workers and ensuring that its wage laws are enforced. To that end, the Massachusetts Legislature has explicitly provided that an employee cannot contract to waive his rights under the wage laws. Specifically, "[n]o person shall by a special contract with an employee or by any other means exempt himself from" the requirements of Chapter 149, which governs payment of wages generally. Mass. Gen. L. c. 149 § 148. This "provision is unconditional; it sets forth no circumstance in which such a waiver would be lawful." *Dobin v. CIOview Corp.*, 16 Mass. L. Rptr. 785, 2003 WL 22454602, at *5 (Mass. Super. Oct. 29, 2003). Moreover, "it is plain that the Legislature intended to bar any contract between an employer and employee that denied the employee the prompt payment of wages guaranteed by the Wage Act." *Id.* The Massachusetts laws governing minimum wage and overtime are even more strict. Massachusetts Gen. L. c. 151 § 1 states: "It is hereby declared to be against public policy for any employer to employ any person . . . at an oppressive and unreasonable wage [i.e., at less than minimum wage], and any

---

[7]    Other federal circuit courts have similarly stricken contract provisions that have limited parties' available remedies. *See, e.g., Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) ("[T]he arbitrability of [federal statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies[, and w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute, . . . the arbitration clause is not enforceable."); *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994) (striking down arbitration clause that prohibited exemplary damages).

contract, agreement or understanding for or in relation to such employment shall be null and void."

Defendants' franchise agreement constitutes a contract to avoid the requirements of Chapters 149 and 151, because the forum selection and choice of law clauses prohibit franchisees from exercising their rights under the Massachusetts wage laws. As alleged by Plaintiffs, Defendants improperly misclassify the franchisees who perform cleaning work as independent contractors, in violation of Massachusetts statute, and have thereby denied workers minimum wage and overtime and other wage protections established by Massachusetts law. Am. Compl. ¶¶ 34-45. Defendants attempt to evade liability for these wage law and misclassification violations by denying the workers access to Massachusetts wage law protections. This is precisely what the Massachusetts Legislature intended to protect against by prohibiting employers from contracting around their wage payment obligations.

Defendants' attempt to contract out of their wage law violations is particularly problematic here, because Texas provides far less protection for workers. Texas' minimum wage law expressly excludes all employees who are covered by the federal Fair Labor Standards Act. V.T.C.A. Labor Code § 62.151. In addition, the Texas minimum wage is keyed to the federal minimum wage, which is only $5.15 per hour, V.T.C.A. Labor Code § 62.051, while the Massachusetts minimum wage was $6.75 per hour until January 2007, when it increased to $7.50 per hour. Mass. Gen. L. c. 151 § 1. Massachusetts requires time-and-a-half pay for overtime, Mass. Gen. L. c. 151 § 1; Texas has no overtime requirement. Also, while Massachusetts allows employees to recover treble damages for wage law violations, Mass. Gen. L. c. 149 § 150, c. 151 §

1B, 20, Texas allows only double damages and only in the case of minimum wage violations, V.T.C.A. Labor Code § 62.201; Texas also does not provide for liquidated damages, attorneys fees, or even a statutory claim for illegal deductions from employees' wages. *See, e.g., Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995) (victim of wrongly withheld wages limited to administrative claim or common law action for debt).

Further, Massachusetts defines "employee" far more broadly than Texas and, indeed, has enacted a statute specifically protecting employees from misclassification as independent contractors, Mass. Gen. L. c. 149 § 148B, and providing a cause of action for treble damages for such misclassification (pursuant to c. 149 § 150). This statute presents perhaps the most difficult test in the nation for employers to establish independent contractor status for workers.[8] Significantly, the Massachusetts SJC has recently held that a "franchisee" of Coverall, another cleaning franchise company that employs similar tactics to those alleged in the Amended Complaint as to Jani-King, was actually an employee and thus eligible for unemployment compensation upon the loss of her job. *See Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance*, 447 Mass. 852 (2006).[9]

---

[8] Under this Massachusetts Independent Contractor Law, *the alleged employer bears the burden of proving that all three of the following elements are met*:

    (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

    (2) the service is performed outside the usual course of business of the employer; and,

    (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. L. c. 149 § 148B(a)(1-3).

[9] The SJC's decision in *Coverall* was based upon the unemployment insurance law, Mass. Gen. L. c. 151A § 2 *et seq.*, which is almost identical to, yet not as strict as, the Independent Contractor Law. The three prongs that the alleged employer must satisfy under the unemployment law in order to prove

In contrast to Massachusetts' Independent Contractor Law, Texas adheres to the more narrow multi-factor common law "right to control" test to determine employee status. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 45 Tex. Sup. Ct. J. 382 (2002) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work."). This test is not used in Massachusetts under the wage laws or unemploment law. *See Athol Daily News v. Bd. of Rev. of Div. of Empl. & Training,* 439 Mass. 171, 178 n.10 (2003) (because "right to control" is but one of several factors under Massachusetts law, "notwithstanding that the worker could be considered an independent contractor under common law, the worker may still be deemed an employee for purposes of" Massachusetts unemployment law).

Enforcement of Jani-King's forum selection and choice of law clause would be to deny Plaintiffs the right to pursue their claims under the very protective Massachusetts wage laws. Allowing Jani-King to contract out of its obligations to pay its workers in accordance with the Massachusetts wage laws is impermissible under the plain language of the wage laws and under Massachusetts public policy.[10]

---

independent contractor status is identical in wording to the Independent Contractor Law with the exception of one factor that makes it easier for the alleged employer to satisfy the second prong: the employer can satisfy this element under the unemployment law by showing that the worker works away from the employer's *physical place* of business. *See* Mass. Gen. Law c. 151A § 2(b). In contrast, the employer can only satisfy the second prong under the Independent Contractor Law by showing that the worker works outside the employer's usual course of business (i.e. provides a different type of service than the service the company provides).

[10] Another reason Plaintiffs should be permitted to pursue their statutory claims under Massachusetts law is that the Massachusetts wage laws expressly state a policy favoring class actions in order to encourage full compliance with the wage laws. Thus, Jani-King franchisees who have not received the wages to which they are entitled under Massachusetts wage laws would not have the benefit of this policy were they required to litigate in Texas under Texas law. Mass. Gen. L. c. 149 § 150 expressly allows aggrieved employees to bring wage claims on behalf of themselves and all others similarly situated. *See also* Section I.B.2, *infra*, regarding the more favorable class action standard contained in Chapter 93A. At least one Massachusetts court has recognized that c. 149 § 150, as well, allows claims to be brought for similarly situated workers regardless of whether all of the Rule 23

## 2. Massachusetts unfair and deceptive business practices law (Chapter 93A)

Chapter 93A, the Massachusetts statute protecting individuals from unfair and deceptive business practices, "was enacted as a broad consumer protection statute imbued with concerns for the public welfare."[11] *North American Consol., Inc. v. Kopka*, 644 F.Supp. 191, 195 (D. Mass. 1986) (Young, J.); *see also Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 624 (1978) (Chapter 93A "is a statute of broad impact whose basic policy is to ensure an equitable relationship between consumers [or other individuals] and persons engaged in business."). The legislative policy behind Chapter 93A, as interpreted by courts, makes clear that it is of the utmost importance that individuals be permitted to vindicate these claims.

Massachusetts courts have not allowed individuals to waive their rights under Chapter 93A by contract. In *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369 (1990), the SJC was presented with the question of whether a corporation could waive its rights under chapter 93A by contract. The court held that the corporation in that case could waive chapter 93A rights but explained why that conclusion would not likely apply to chapter 93A claims by individuals: "A statutory right may not be disclaimed if the waiver could 'do violence to the public policy underlying the legislative enactment.' Thus, we ordinarily would not effectuate a *consumer's* waiver of rights under c. 93A." *Id.* at 378 (internal citations omitted, emphasis in original); *see also*

---

requirements have even been satisfied. *See Moore v. Barnsider Mgmt Corp.*, 2006 WL 2423328, *7 (Mass. Super. Ct. Aug. 15, 2006) (granting summary judgment in part on § 150 claim even where no showing had been made regarding Rule 23 requirements).

[11] Courts often refer to claims by individuals under Chapter 93A as "consumer" claims. However, the statute applies to all claims relating to unfair and deceptive business practices brought by individuals. M.G.L. c. 93A § 2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). Accordingly, when referring to claims

*Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 816 (1982) (consumers cannot be required to arbitrate § 93A claims despite signing contract with arbitration clause). Prohibiting waiver of individuals' rights under Chapter 93A is consistent with Massachusetts courts' treatment of contracts to waive statutory rights as a general matter: "where laws are enacted on grounds of general policy their uniform application for the protection of all citizens alike is desirable, and an agreement to waive their provisions is generally declared invalid. . ." *Beacon Hill Civic Ass'n v. Ristorante Toscana, Inc.*, 422 Mass. 318, 322 (1996).[12]

Federal courts in this district have also recognized that Massachusetts law looks unfavorably on corporations' efforts to impose choice-of-law clauses and other provisions that would have the effect of contracting away individuals' rights under Chapter 93A. For example, in declining to enforce a corporation's contractual choice-of-law provision, Judge Zobel observed that, "if an agreement 'purported to contract away any claims under G.L. c. 93A,' Massachusetts courts might 'decline to enforce the provision on public policy grounds.'" *Computer Sales Intern., Inc. v. Lycos, Inc.*, 2006 WL 1896192, at *2 (D. Mass. July 11, 2006) (quoting *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 580 n.9 (1995)). Judge Young has similarly observed: "query whether, given Massachusetts' strong policy interest in the unfair trade practice aspect of 93A, an attempt by parties to contract themselves out from within its shadow

---

by "consumers," courts are in essence referring to any claims brought by individuals against corporations, as opposed to claims brought by corporations against other corporations.

[12] Notably, all of the cases cited by Defendants for the proposition that Ch. 93A rights may be waived by choice of law clauses involved *corporate* plaintiffs, rather than individual consumers -- the critical distinction the Supreme Judicial Court noted in upholding a waiver of rights in *Canal*. 406 Mass. at 378. *See Neuro-Rehab Assocs., Inc.*, 2006 WL 1704258, at *1 (D. Mass. 2006); *ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159 (D. Mass. 2002), *Worldwide Commodities, Inc. v. J. Amicone, Inc.*, 36 Mass. App. Ct. 304, 307-08 (1994).

would not be void as against public policy." *Home Owners Funding Corp. of America v. Century Bank*, 695 F. Supp. 1343, 1346 n.2 (D. Mass. 1988); see also *North American Consol., Inc. v. Kopka*, 644 F.Supp. 191, 195 (D. Mass. 1986) (Young, J.) (proposing a "rule that claims of unfair and deceptive practices may never be prospectively waived by contract, either by individual consumers or business people," because such a rule would be "most protective of the public and truest to the legislative purpose underlying [Chapter 93A]").[13]

Beyond the public policy concerns dictating that Chapter 93A claims must be allowed to proceed (and to be litigated in Massachusetts), Plaintiffs would also lose the rights afforded by Chapter 93A if they were prohibited from pursuing their claims under that statute, most notably a deferential class certification standard. Chapter 93A contains its own class action mechanism, which the SJC has recognized to be more favorable to class status than Rule 23. In *Baldassari et al v. Public Finance Trust et al*, 369 Mass. 33, 40 (1975), the SJC noted that the class action mechanism contained in Chapter 93A has "a more mandatory tone" than Rule 23 with respect to allowing a case to proceed on behalf of a class. *See also Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381, 391-92 (2004) (noting that, when considering class certification requests under Chapter 93A, "the judge must bear in mind a pressing need for an effective private remedy for consumers, and that traditional technicalities [i.e. Rule 23

---

[13] Courts in this district have retained jurisdiction of Chapter 93A claims in other contexts as well, in light of the important public policy interests in the statute. *See, e.g., Back Bay Farm, LLC v. Collucio*, 230 F. Supp. 2d 176, 187 (D. Mass. 2002) (applying Massachusetts' long-arm jurisdiction statute to a case pursuing claims against an out-of-state corporation under Chapter 93A because, inter alia, "Massachusetts certainly has an interest in preventing the violation of its consumer protection statute"); *Pearson v. Town of Rutland*, 2002 WL 32759592, at *6 (D. Mass. Sept. 10, 2002) (declining to abstain from taking jurisdiction over a case with Chapter 93A claims in light of an earlier filed New Hampshire state case, explaining: "Although there is no allegation that the New Hampshire state forum will

technicalities] are not to be read into the statute in such a way as to impede the accomplishment of substantial justice").

In contrast, the comparable Texas law contains no class action mechanism. Notably, the Texas unfair and deceptive business practices law did contain its own class mechanism at one time, allowing individuals to bring claims on behalf of "others similarly situated," but the provisions explicitly permitting class actions under the Texas law were repealed by the Texas Legislature in 1977. *See* Act eff. May 23, 1977, 65th Leg., R.S., ch. 216, §§ 10-13, 1977 Tex. Gen. Laws 605. Accordingly, under Texas law, Plaintiffs would be denied the more favorable class certification standard from Chapter 93A.[14]

As with the wage laws, enforcement of the forum selection and choice of law clauses would deny Plaintiffs the ability to vindicate their rights under Chapter 93A. This waiver of rights is impermissible under Massachusetts law and is against public policy.

## C. Application of the factors relevant to the enforceability of a forum selection clause weighs against enforcing the forum selection clause in Jani-King's franchise agreement.

This is a Massachusetts case, filed by Massachusetts counsel on behalf of Plaintiffs who reside and/or have performed work for Jani-King in Massachusetts,

---

inadequately protect the parties' interests, the plaintiffs' Chapter 93A claim is a creature of Massachusetts statutory law").

[14]     In the analogous context of arbitration clauses, courts in this Circuit and elsewhere have held that arbitration clauses that prohibit class actions are unenforceable. *See Kristian*, 446 F.3d at 61; *Skirchak v. Dynamics Research Corp., Inc.*, 432 F. Supp. 2d 175 (D. Mass. 2006) (striking down class action waiver in arbitration agreement as unconscionable); *see also Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 857 N.E.2d 250, 274-75 (Ill. 2006) (holding that class action waiver by which defendant "seeks to insulate itself from liability to a potential class of customers" was unenforceable); *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 912 A.2d 88 (N.J. 2006) (court found class action waiver in arbitration agreement unconscionable, noting that "[t]he public interest at stake in her ability and the ability of her fellow consumers effectively to pursue their statutory rights under this State's consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement"); *Wong v. T-Mobile USA, Inc.*, 2006 WL 2042512, at *9 (E.D. Mich. July 20, 2006) ("Because

relating to acts that occurred in Massachusetts, for violations of Massachusetts deceptive business practices laws, wage laws, and common law. Accordingly, it is appropriate for this case to proceed in a court located in Massachusetts and applying Massachusetts law.

Contrary to Defendants' analysis, such a conclusion is supported by application of the set of factors typically applied by courts in evaluating forum selection clauses—interpreted through the lens of *Kristian*, which stated unequivocally that parties cannot be required to pursue their claims in a forum that denies them statutory rights. As to the first factor (the law governing the contract), as discussed in Section I.B.1, *supra*, Massachusetts law governs the agreement and, indeed, Plaintiffs' Massachusetts statutory claims cannot be waived. On the second factor, notwithstanding defendant's tortured attempt to portray the contract as having been executed in Texas, the place of execution of the contract is clearly Massachusetts—that is where the contract was signed by Plaintiff De Giovanni and a representative of Jani-King in Massachusetts.[15] The third factor, where transactions are to be performed pursuant to the contract, clearly favors Massachusetts. Plaintiffs and all members of the putative class purchased franchises to perform cleaning services in Massachusetts; the accounts Plaintiffs serviced were in Massachusetts; and all of Plaintiffs' interactions with Jani-King

---

the class action waiver in Defendant's contract prevents the effective vindication of Plaintiff's statutory rights under the MCPA, it is unenforceable.").

[15] Defendants' assertion that the agreement was "made and entered into in Addison, Dallas County, Texas," *id.* is mere boilerplate that simply ignores reality. Notably, the date that De Giovanni's contract was signed in Massachusetts, October 25, 2005, is denominated as the "effective date" of the agreement, *see* Def. Ex. D at 1 and 21 (¶ 9.1), belying Defendants' contention that the contract was not valid until it was "accepted" by the home office in Texas. Moreover, Defendants' reliance on the numerous factual materials that they have submitted (in support of this and other arguments) is improper, as it is beyond dispute that the allegations of the Amended Complaint must be accepted as true at this stage of the litigation. *None* of the documents defendants submit were referenced in the complaint. Accordingly, Plaintiffs request that the Court strike all factual materials improperly submitted by Defendants in support

personnel occurred in Massachusetts. Thus, all of Plaintiffs' obligations, and many of Defendants', were to be performed in Massachusetts.[16]

The fourth and fifth factors, the availability of remedies in the contractually designated forum and the public policy of plaintiff's choice of forum, also strongly favor Massachusetts. As discussed in Section I.B, *supra*, Massachusetts wage laws and Ch. 93A offer far more extensive remedies than do the corresponding Texas statutes, and Massachusetts does not permit parties to waive these statutory rights.

The sixth factor – the location of the parties, convenience of witnesses and accessibility of evidence – again favors Massachusetts. The named plaintiffs both live in Massachusetts, as will most of the class members. The Jani-King personnel with whom Plaintiffs dealt presumably reside in, and at a minimum regularly conduct business in, Massachusetts. And all of the Jani-King clients for whom Plaintiffs performed cleaning services are, of course, in Massachusetts. When weighed against these Massachusetts connections—with particular emphasis on the fact that this is an alleged *class* action, involving hundreds of Massachusetts plaintiffs—the fact that Defendants' home office is in Texas does not begin to shift the center of gravity of this action away from this area.

The seventh, eighth and ninth factors – the relative bargaining power of the parties and the circumstances of their negotiations, the presence of fraud or undue influence, and the conduct of the parties – all weigh heavily in favor of voiding the forum selection clause. While Defendants correctly note that in certain cases any one of these

---

of their motion to dismiss.

[16]     The fact that certain administrative functions may have been performed in Texas does not diminish the fact that the great weight of the parties' duties under the contract were to be performed in Massachusetts.

might be not be enough to invalidate a clause entered into as part of an otherwise fair agreement, this is not such a case. Here, the essence of Plaintiffs' claims is that Jani-King used its overwhelming bargaining power to perpetrate a fraud on a class of unsophisticated individuals and to deprive them of their rights under Massachusetts law. Jani-King, by its own admission, is a multinational corporation with 75 regional offices and 12,000 franchisees worldwide. Burleson Decl. ¶ 6. As alleged in the Amended Complaint, the majority of the plaintiff class have limited or no English proficiency and all were presented with the contract for signature without the opportunity for any negotiation of its terms. Am. Compl. ¶¶ 12-13. The form contract is more than thirty pages long, with extensive terms and recitals, many of which contain complicated legal formulations difficult even for a native speaker to comprehend, some of which waive important rights. Def. Ex. D. The Amended Complaint further alleges that Jani-King representatives misrepresented the nature of the agreement that Plaintiffs were entering into, lied about the company's intentions and ability to satisfy its obligations to provide the promised cleaning work, and thus effectively fraudulently induced Plaintiffs into signing away their rights and handing over their money. Am. Compl. ¶¶ 14-33. If this is not a case where a disparity in bargaining power, and the presence of fraud, overreaching, and misconduct do not strongly favor rejecting a forum clause, then these factors are meaningless and no such case exists.

The two cases upon which Defendants place such heavy reliance are distinguishable. In *Silva v. Encyclopedia Britannica, Inc.*, the plaintiff's *sole claim* was for breach of contract. 239 F.3d 385, 386 (1st Cir. 2001); *see also Silva v. Encyclopedia Britannica, Inc.*, No. 98-1755(HL) at 1 (D.P.R. Feb. 24, 2000) (Def. Ex. A). The plaintiff

in *Silva,* who sought to recover unpaid sales commissions under his contract with defendant, did not seek to avoid the forum selection clause on the grounds that the defendant made misrepresentations to induce him into signing the agreement, or that defendant had otherwise acted improperly. Much less did the plaintiff have independent tort and statutory claims alleging that agreement violated his rights under Puerto Rico law. There was simply nothing in *Silva* like the Chapter 93A claim or the wage claims brought by Plaintiffs in this case. Nor did the plaintiff in that case seek to represent a class of Puerto Ricans, which would have made litigating in Illinois, the contractual forum, less reasonable. In short, the plaintiff in *Silva* raised none of the allegations of overreaching and unfairness that lie at the heart of the plaintiff's case here. *See Silva,* 239 F.3d 385, 389 (1st Cir. 2001) ("Britannica's alleged bargaining power is not relevant *on these facts.*") (emphasis added).

Likewise in *Doe v. Seacamp Assoc.,* 276 F. Supp. 2d 222 (D. Mass. 2003), this Court was not presented with the type of exploitative relationship between the parties that Plaintiffs allege here. In *Doe,* a Massachusetts mother sued the Florida summer camp where her minor son had been sexually abused by a counselor. *Id.* at 223. Unlike this case, the Massachusetts plaintiff chose to send her son to Florida for his benefit, and that is where the conduct giving rise to the complaint – the abuse – occurred, and where numerous witnesses resided. Indeed, the negligence and intentional tort claims at the heart of the complaint were all pled under Florida law. *Id.* Unlike in this case, the *Doe* plaintiff herself sought out and availed herself of Florida's "benefits and protections"; her being bound by a Florida forum-selection clause thus did

20

not offend the Court's sense of fair play.[17]

## II. ALTERNATIVELY, THE LIMITATION ON REMEDIES, FORUM SELECTION CLAUSE, AND CHOICE OF LAW PROVISIONS IN JANI-KING'S FRANCHISE AGREEMENT ARE UNENFORCEABLE DUE TO PROCEDURAL UNCONSCIONABILITY.

As discussed earlier, under the First Circuit's decision last year in *Kristian*, courts in this circuit should now apply a vindication of rights analysis, as opposed to traditional state unconscionability principles, in determining the enforceability of a company's attempt to dictate the forum in which plaintiffs must bring their disputes against the company. However, even if this Court were to conclude that unconscionability must be proved under Massachusetts state law in order to invalidate Jani-King's forum selection and choice of law provisions, Plaintiffs in this case will be able to show that Jani-King's contract was unconscionable under Massachusetts law.

Proving unconscionability under Massachusetts law requires proof that the contract is both procedurally and substantively unconscionable. *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 294 n.13 (1980). Procedural unconscionability is the "absence of meaningful choice on the part of one of the parties" in the contract formation process, and a contract is substantively unconscionable where terms of the contract are "unreasonably favorable" to the other party. *Id.* Moreover, "unconscionability must be determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Id.* at 293.

---

[17] A closer analogy to the present case would be if the mother had sent her son to a camp in Massachusetts, where the abuse had occurred and all the witnesses remained, then sued in Massachusetts under Massachusetts law, then been told she had to litigate her case in Florida under Florida law. Even this scenario fails to capture the breadth of what defendants are asking the Court to do

Adhesion contracts[18] must be scrutinized particularly closely to determine, *inter alia*, whether they "offend public policy." *IKON Office Solutions, Inc. v. Belanger*, 59 F. Supp. 2d 125, 131 (D. Mass. 1999) (citing *Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248, 253, 588 N.E.2d 705 (1992)); *see also Lechmere Tire & Sales Co. v. Burwick*, 360 Mass. 718, 277 N.E.2d 503, 506, n.3 (1972). Significantly, in *Kristian*, the First Circuit noted the parallels between its "vindication of statutory rights" analysis and unconscionability analysis under state common law and cited with approval a Ninth Circuit decision holding an arbitration agreement with a class action waiver to be unconscionable. 446 F.3d at 60 (citing *Ting v. AT&T*, 319 F.3d 1126, 1130 (9th Cir. 2003)).

In this case, plaintiffs assert that the clauses in Jani-King's franchise agreement relating to forum selection, choice of law, and limitation on remedies are both procedurally and substantively unconscionable and therefore cannot be a basis for dismissal of the complaint. With respect to procedural unconscionability, Plaintiffs have made allegations relating to the inequality in the parties' bargaining power (included the limited English proficiency of the majority of the individuals targeted by Jani-King), as well as the misrepresentations made by Jani-King's representatives to induce individuals to sign franchise agreements. Am. Compl. ¶¶ 12-14. As to substantive unconscionability, as discussed above, the franchise agreement is unquestionably overly favorable to

---

in this case, which is to deprive plaintiffs not only of their chosen forum but of their statutory protections as employees and consumers of this state.

[18]    As alleged in the Amended Complaint, the franchise agreement is unquestionably an adhesion contract. Adhesion contracts are "'standard form printed contracts prepared by one party and submitted to the other on a take it or leave it basis.'" *Capellini v. Mellon Mortg. Co.*, 991 F. Supp. 31, 39 (D. Mass. 1997) (quoting *Standard Oil Co. of California v. Perkins*, 347 F.2d 379, 383 n.5 (9th Cir. 1965)). Here, the Amended Complaint alleges that the franchise agreement is a standard-form contract and that individuals are not able to negotiate for different terms than those in the standard-form agreement. Am. Compl. ¶¶ 10-11.

Jani-King, as it prohibits Plaintiffs from pursuing many of their claims altogether and from recovering many of the remedies they seek.

Other courts have recognized that similar provisions in adhesion contracts are unconscionable when they effectively cut off plaintiffs' ability to exercise their rights. In *Skirchak v. Dynamics Research Corp.*, Judge Lasker struck down the class action waiver in the defendant's mandatory arbitration agreement, concluding that it was procedurally and substantively unconscionable because "the imposition of a waiver of class actions may effectively prevent DRC employees from seeking redress of FLSA violations." 435 F. Supp. 2d 175, 181 (D. Mass. 2006).

Similarly, in a case strikingly similar to this one, the Ninth Circuit has recently stricken a forum selection clause as unconscionable. *Nagrampa v. MailCoups, Inc.* involved a franchisee's claims for misrepresentation and fraud against the franchisor, and the franchisor sought to compel arbitration and enforce a forum selection clause requiring all claims to be litigated in Boston, Massachusetts. 469 F.3d 1257 (9th Cir. 2006). The court struck down the forum selection clause as unconscionable because "[t]he parties' bargaining positions were unequal" and because the "contract would require a one-woman franchisee who operates from her home to fly across the country to arbitrate a contract signed and performed in California," incurring "additional traveling and living expenses" and "increased costs" of retaining counsel familiar with Massachusetts law. *Id.* at 1289-90. The court in *Nagrampa* noted that "[a]rguably, [the defendant] understood those terms would effectively preclude its franchisees from ever raising claims against it, knowing the increased costs and burden on their small businesses would be prohibitive" and concluded that "[t]he forum selection provision has

23

"no justification other than as a means of maximizing an advantage over [franchisees]."
*Id.*

For similar reasons to those in *Skirchak* and *Nagrampa*, namely the effective denial of plaintiffs' and class members' ability to vindicate their rights—a result at least "arguably" intended by Jani-King—and the parties' unequal bargaining positions, the forum selection, choice of law, and remedy-limiting clauses in Jani-King's franchise agreement are unconscionable. Therefore, those clauses cannot form the basis for dismissal of this action pursuant to Rule 12(b)(6).[19]

## III. THE COURT SHOULD DEFER RULING ON WHETHER PERSONAL JURISDICTION EXISTS OVER JANI-KING INTERNATIONAL, INC. UNTIL PLAINTIFFS HAVE HAD ADEQUATE DISCOVERY ON THIS ISSUE.

Defendants argue that there is no personal jurisdiction over Jani-King International, Inc. ("JKI"). However, Plaintiffs' Amended Complaint contains detailed allegations about the interrelation between JKI, Jani-King, Inc., and Jani-King Boston, Inc. ("JKB"), which must be accepted as true on this motion to dismiss. Am. Compl. ¶¶ 4-6. At the very least, this issue cannot be resolved without discovery. As such, Defendants' argument on this issue must fail.[20]

As the First Circuit has repeatedly recognized, "jurisdictional discovery" is appropriate where, as here, an out-of-state corporation asserts a jurisdictional defense

---

[19] At the very least, factual development is required on this issue.

[20] Defendants' argument that Plaintiffs have failed to state a claim against Jani-King International, Inc. as opposed to Jani-King of Boston, Inc., (Def. Mem. at 13), merits little discussion. Each and every allegation in the Amended Complaint concerning the conduct of Jani-King pertains to both JKI and JKB. The first line of the Amended Complaint specifically states that JKI and JKB are collectively referred to as "Jani-King." (Am. Compl. ¶ 1); the Amended Complaint expressly pleads the interdependence of the two defendants, as well as of Jani-King, Inc. (Am. Compl. ¶¶ 4-6.) The Amended Complaint – which must, of course, be accepted as true – does not distinguish between the actions of JKI and JKB. Defendants may not rewrite the complaint to provide that its "only allegations concern actions and/or inactions allegedly committed by JKB." (Def. Mem. at 13.)

24

and the plaintiff has made "a colorable case" for the existence of personal jurisdiction. *Sunview Condominium Ass'n. v. Flexel Int'l, Ltd.*, 116 F.3d 962, 963 (1st Cir. 1997); *see also, e.g., Surpitski v. Hughes-Kennan*, 362 F.2d 254, 255 (1st Cir. 1966) (vacating judgment where plaintiff was denied adequate discovery despite having made showing of personal jurisdiction that was "not ... frivolous"). The Court should therefore defer consideration of this aspect of defendants' motion until such discovery, as is described in more detail below, has taken place.

Though courts have presumed the institutional independence of parent and subsidiary when determining whether to assert jurisdiction over the parent based solely on the activities of the subsidiary, this presumption may be overcome in variety of circumstances. *See Donatelli v. Nat'l Hockey League*, 859 F.2d 459, 465 (1st Cir. 1990). As the First Circuit has explained, personal jurisdiction may be found over the parent where "the parent has utilized the subsidiary in such a way that an agency relationship between the two corporations can be perceived," where there is "a finding of control," or where "the subsidiary is merely an empty shell." *Id.* at 466.

Here, further factual development is necessary to determine whether JKB served as JKI's agent, whether JKI excercised "unusual hegemony" over JKB, and/or whether JKB is a separate entity in name alone. *Id.* On the limited record before the Court, it is clear that even without discovery Plaintiffs have made far more than a "colorable" claim that one or more of these exceptions applies. Indeed, though citing authorities that recognize that the presumption of corporate separateness cannot be overcome absent evidence that the parent controls the subsidiary, defendants pointedly do not deny that JKI exercised control over JKB. Def. Mem. at 16.

Public records obtained from the Texas Secretary of State provide additional evidence of corporate interdependence.[21] As these documents reveal, the officers and directors of JKI and JKB are virtually identical.[22] *See* Liss-Riordan Decl., Exhibit A (public filings from the Texas Secretary of State). Further, both corporations share the same address – 16885 Dallas Parkway in Addison, Texas. Additionally, the transfer agreement and Plaintiff's franchise application both contain copyrights by Jani-King International, Inc. Def. Exs. A, B.

In light of the foregoing, it is clear that substantial questions exist as to whether JKB is truly an independent entity, or whether it exists merely to conduct the business of JKI and is accordingly subject to JKI's control. Plaintiffs therefore request the opportunity to conduct discovery on this issue, which would include interrogatories regarding the interrelationship between the companies, a limited number of brief depositions of officers of both companies, and requests for documents revealing JKI's involvement in JKB's operations.

## IV. C.D.D. ENTERPRISE LLC IS NOT AN INDISPENSABLE PARTY.

Defendants' throwaway contention that the complaint must be dismissed for failure to join C.D.D. Enterprise lacks merit. As elsewhere in their motion, defendants do not confine themselves, as they must, to the complaint as pleaded by plaintiff, but instead posit their own version of the facts. It is Vincent De Giovanni who has brought this suit, alleging that *his* rights were violated under Massachusetts statutory and common law. The complaint alleges that De Giovanni was the victim of defendants'

---

[21] The Court may consider these factual materials inasmuch as defendants are moving to dismiss for lack of personal jurisdiction. *See Ticketmaster-N.Y. Inc. v. Alioto*, 16 F.3d 201, 203 (1st Cir. 1994).

deceptive business practices, and that Defendants made misrepresentations to De Giovanni and otherwise unjustly enriched themselves at his expense. At most, C.D.D. *may be* a necessary party on De Giovanni's contract claim, but whether or not it is depends on the circumstances surrounding the transfer agreement, including the validity of De Giovanni's alleged release of all claims against Jani-King. These are factual issues requiring discovery; indeed, "release" is an affirmative defense that must be pleaded and proven. *See* Fed. R. Civ. P. 8(c). Where, as here, a motion to dismiss for failure to join an indispensable party depends on a factual showing, it is appropriate to defer consideration of the motion, which Plaintiffs ask the Court to do here. *See Blacksmith Investments, LLC v. Cives Steel Co.,* 228 FRD 66, 74 (D. Mass. 2005).[23]

## CONCLUSION

Defendants seek to dismiss Plaintiffs' complaint based on provisions in Jani-King's franchise agreement that effectively deny Plaintiffs the ability to vindicate their statutory rights. These provisions cannot be enforced because they violate Massachusetts public policy and the First Circuit's holding in the *Kristian* case. Defendants' other arguments in support of their motion rely primarily on factual assertions that are not to be considered on a Rule 12(b)(6) motion. Accordingly, for the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied in its entirety.

---

[22] The same individuals hold the same roles in Jani-King, Inc., which Plaintiffs have added as a defendant in the Amended Complaint.

[23] Plaintiffs thus seek to defer the issue as to whether they will add C.D.D. as a plaintiff. Depending on the Court's decision on this issue following discovery, Plaintiffs may seek to amend the complaint at that time to make this addition, in accordance with Rule 15.

Respectfully submitted,

VINCENT DE GIOVANNI, and all others
similarly situated,

By their attorneys,

s/Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
(617) 367-7200

Dated:      April 16, 2007

## CERTIFICATE OF SERVICE

    I hereby certify that on April 16, 2007, I caused a copy of this document to be
served by electronic filing on David S. Rosenthal and Gregg A. Rubenstein, Nixon
Peabody LLP, 100 Summer Street, Boston, MA 02110.

s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.