# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VINCENT DE GIOVANNI, ) <br> MARIETTE BARROS, and all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JANI-KING INTERNATIONAL, INC., ) <br> JANI-KING, INC. and ) <br> JANI-KING OF BOSTON, INC. ) <br> Defendants. ) <br> ) | Docket No. 07-10066-RCL |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS JANI-KING INTERNATIONAL INC. FOR LACK OF PERSONAL JURISDICTION

On August 22, 2008, the Court issued an order denying Defendants' Motion to Dimiss the complaint in this action, finding that enforcement of a forum selection clause sought by the Defendants would be "unreasonable and unjust under the totality of the circumstances." That order also stated:

> The court defers ruling on the motion to dismiss for lack of personal jurisdiction over JKI and grants the plaintiffs' request for limited jurisdictional discovery, including to determine whether Jani-King of Boston, Inc.("JKB") served as JKI's agent, the amount of control JKI asserts over its subsidiaries, and whether JKB is an independent entity from JKI.

Docket entry dated 8/22/08.

The parties have had the opportunity to engage in limited discovery, and the Plaintiffs have received some documents relevant to the matter of jurisdiction. In addition, on April 28, 2009, the Plaintiffs took the Rule 30(b)(6) deposition of Jani-King International, Inc.'s ("JKI") designated representative. As requested by the Court, the

Plaintiffs now submit this Memorandum of Law, setting forth the basis of jurisdiction this Court has over JKI.

## I.     Introduction

This case is a putative class action brought on behalf of individuals who have performed cleaning services for the Defendants. The Plaintiffs allege that the Defendants sold them and others similarly situated cleaning "franchises" although they know that they do not have sufficient business to satisfy their obligations under the franchise agreements. The plaintiffs claim that the Defendants have engaged in systematic misrepresentations, have breached their contracts and have employed unfair and deceptive practices in violation of Massachusetts law. In addition, Defendants classify the plaintiff "franchisees" who perform the cleaning work as independent contractors, despite the fact that Plaintiffs contend that they are actually employees under Massachusetts law and thereby are entitled to all of the protections of the Massachusetts wage statutes (including minimum wage, overtime, and timely payment of all wages), as well as other benefits that inure from the employment relationship (such as eligibility for unemployment and workers' compensation). Am. Compl. ¶¶ 34-45. *See Coverall North America, Inc. v. Com'r of Div. of Unemployment Assistance*, 447 Mass. 852 (2006) (SJC affirmed decision of DUA that franchisee for another janitorial franchise company was an employee, not independent contractor).

The sale of these cleaning "franchises" is part of a national franchising "system" created by the Jani-King International, Inc. ("JKI"). That system is deployed and implemented in Massachusetts by its subsidiary, Jani-King of Boston, Inc. ("JKB"), with significant in-state involvement of JKI.  JKI is now seeking to avoid liability for its actions

in Massachusetts, and thereby deprive the Plaintiffs here of the possibility of obtaining relief against it, by asserting it had nothing to do with the actions of JKB that it created and controls, and whose daily operations it oversees.  However, the facts in the pleadings and this memorandum clearly demonstrate that, contrary to JKI's assertions, this Court has personal jurisdiction over it.  As shown below, the Court's exercise of jurisdiction over JKI in this matter is proper and reasonable.  JKI has had and continues to have a continuous and significant stream of contacts with the state of Massachusetts, as documented in section III(A)  below. Those contacts are more than adequate to subject it to general jurisdiction, and demonstrate its plenary control of its subsidiary JKB. Its contacts also satisfy the requirements for specific jurisdiction, in that the claims here directly arise out of and relate to those contacts, such that JKI clearly purposefully availed itself of this forum, and such that the exercise of jurisdiction over JKI is eminently reasonable.

## II.     Applicable Standard of Review

On a Motion to Dismiss for Lack of Personal Jurisdiction, the Court "draw[s] the facts from the pleadings and the parties' supplemental filings, including affidavits, taking facts affirmatively alleged by plaintiff[s] as true and construing disputed facts in the light most hospitable to plaintiffs." *Ticketmaster-New York v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994).  In construing the presence or absence of jurisdiction of a non-resident defendant in a case based on diversity, the Court "is the functional equivalent of a state court sitting in the forum state…[and] must find contacts that, in the aggregate, satisfy the requirements of both the forum state's long-arm statute and the Fourteenth Amendment." *Id.* at 204 [citations omitted].  However, in assessing its duty to construe

3

the Massachusetts long-arm statute, the First circuit has said "The Supreme Judicial

Court of Massachusetts has interpreted the state's long arm statute as coextensive with

the outer limits of the Constitution…thus the only inquiry that remains is the

Constitutional one." *Platten v. HG Bermuda Exempted Limited*, 437 F.3d 118 (1st Cir.

2006). (internal citations omitted)

The first step of the inquiry is to establish whether there exist "minimum contacts"

between the Defendant over whom jurisdiction is to be exercised and the forum state.

*International Shoe Co. v. State of Washington,* 326 U.S. 310. 316 (1945). The First

Circuit employs a three-part test to determine whether such contacts exist:

> "First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities. Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the
> forum state, thereby invoking the benefits and protections of that state's laws and
> making the defendant's involuntary presence before the state's courts
> foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors,
> be reasonable." *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st. Cir. 1995) [citations
> omitted].

The "Gestalt factors" were recited by the Supreme Court in *Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 476-477 (1985), and are:

- The burden on the defendant,
- The forum State's interest in adjudicating the dispute,
- The plaintiff's interest in obtaining convenient and effective relief,
- The interstate judicial system's interest in obtaining the most efficient resolution
  of controversies, and
- The shared interest of the several States in furthering fundamental substantive
  social policies.

## III.    Analysis

It is clear from the filings in the action to date and the facts recited herein that

these factors are easily satisfied for JKI. The claim underlying the litigation arises out of

and relate to JKI's activities in Massachusetts, including establishing a corporate regional office (JKB), hiring and supervising a Massachusetts-based regional director, providing form documents and contracts that the regional office was required to use without alteration, providing accounting services for the regional office and its unit franchisees, and providing other services in Massachusetts. JKI's extensive in-state contacts represent a purposeful availment of the privilege of conducting activities in Massachusetts, and its being subjected to suit under Massachusetts' law was entirely foreseeable. Finally, the exercise of jurisdiction is entirely reasonable, as is demonstrated by the application of the Gestalt factors below.

### A. JKI's activities in Massachusetts

JKI engaged in a continuous stream of activities in and directed towards the state of Massachusetts, both directly and through its wholly-owned subsidiary, Jani-King, Inc. ("JK") and JK's wholly-owned subsidiary, Jani-King of Boston ("JKB"). *See* Exhibit A, Transcript of Deposition of Donald Albin Burleson, p.6 line 23 – p.7 line 6, p. 21 lines 18-24,  While, "in general, the courts have presumed the institutional independence of parent and subsidiary when determining whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum," jurisdiction lies here not solely because of Jani-King of Boston's contacts with Massachusetts and JKI's control over Jani-King of Boston, but because of JKI's own direct contacts with and activities directed towards Massachusetts. *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). There is, however, ample evidence that Jani-King of Boston is merely an agent for JKI, and that JKI exercises "unusual hegemony" over Jani-King of Boston's operations and "has dictated the entry" of Jani-King of Boston into

Massachusetts, such that JKI "has plain made a choice to avail itself of the forum's benefices." See *Donatelli,* 893 F.2d at 466. The facts demonstrating that evidence include:

1. Nearly completely overlapping and duplicative Boards of Directors between JKI, Jani-King, Inc. and Jani-King of Boston.  As shown in the chart below, three individuals hold <u>virtually</u> <u>identical</u> positions on the Boards of Directors of all three entities.

| Individual | Jani-King of Boston, Inc. | Jani-King International, Inc. | Jani-King Inc. |
|---|---|---|---|
| **James Cavanuagh, Jr.** | Director, Chairman, Vice-President and Secretary | Director, Chairman, President and Secretary | Director, Chairman, Vice-President and Secretary |
| **Jerry Crawford** | Director and President | Director and President | Director and President |
| **Charles Gibson** | Vice President | Vice President | Vice President |

See Exhibit B, Texas Secretary of State records.

In addition, JKI itself is owned by JAC Holdings, which is owned by James Cavanaugh, Jr. *See* Exhibit A, Burleson deposition, p. 22 lines 1-4.  The corporate directorships and leadership of all three entities are nearly indistinguishable, and all three are dominated by the individual who is the ultimate owner of all of them, James Cavanaugh, Jr. Thus, decisions made concerning the operations of Jani-King of Boston, Inc., the ultimate "subsidiary" of JKI, are made by individuals who are also in control of JKI, and vice-versa. These interlocking directorships belie the illusion of independence that JKI has sought to construct.

2. The corporate offices of all three entities are at the same address on Dallas Parkway in Addison, TX. *Id.* at p. 24, lines 4-21.

3. JKI receives detailed information, regular reports and copies of completed forms from Jani-King of Boston on new unit franchisees, including date of sale, size of

the franchise purchase, identity of the purchaser, and a copy of the executed franchise agreement. JKI endeavors to maintain a file on every single unit franchise sold by Jani-King of Boston. *Id.* at p. 31 line 17 – p.32 line 33. JKI also receives information on cleaning accounts offered to individual franchisees. See Exhibit C, Bates Nos. JKB000527-000539.

4. JKB submits information and data to JKI on the exact amount of revenue earned by each and every of its active unit franchisees for every active cleaning account that those franchisees have. JKI in turn generates monthly franchisee reports for Jani-King of Boston, for each of JKB's unit franchisees, showing the amount of money that the franchisee is due to receive from JKB for that month.  *Id.* at p.34 line 1 – p. 35 line 19.  JKB uses the reports generated by JKI to issue checks to JKB's unit franchisees. *Id.* at p.36 line 1-6.  *See* Exhibit D, sample monthly franchisee reports, Bates Nos JKB000376-000379 and 000449-000452. .

5. JKI receives 80% of any monthly profits earned by JKB from the sales of franchises, cleaning contracts, royalties and finders' fees. *See* Exhibit A at p.36 line 22 – p. 37 line 23. and p. 38 lines 2-6.  In addition, JKI receives monthly corporate dues from JKB. *Id.* at p. 38 lines 12-20.

6. JKI provides numerous support services to JKB in Massachusetts, including operational support, design of computer software, accounting and management support. *Id.* at p.7 line 11-13. JKI requires JKB to use its customized software for franchisee accounting. *Id.* at p. 7 line 21 – p. 8 line 10.

7. JKI is responsible for the hiring and supervision of JKB's regional director, who is the top management staffperson of JKB.  *Id.* at p. 9 lines 10-18.  JKI evaluates the

performance of that regional director on an ongoing basis. *Id.*at p. 14 lines 16-24.  JKI sets the salary for the regional director and approves any increases in salary. *Id.* at p. 70 lines 15-20.

8. JKI receives and reviews reports from JKB on the amount of "initial business" that JKB owes to each cleaning worker (i.e. the amount of monthly cleaning accounts that each unit franchisee is owed under their franchise agreement). *Id.* at p. 13 line 4 – p.14 line 3.

9. JKB is required to use "a multitude" of forms drafted and designed by JKI for numerous transactions and purposes, including the Uniform Franchise Operating Circular (UFOC) given to all prospective franchisees (now referred to as the Franchise Disclosure Document), the franchise agreements signed by new franchisees, contracts for cleaning accounts and marketing materials. *Id.* at p.17 lines 1- 21, p. 18 lines 12-15 and p.19 lines 7-22.

10. JKI develops materials that are used by JKB to marketing unit franchises to potential franchisees, including a PowerPoint presentation and a sales brochure, titled "The Right Franchise Solution." *Id.* at p. 52 line 23 – p. 54 line 13. *See* Exhibits E & F.

11. The PowerPoint presentation contains a slide titled "Infrastructure," that has a bullet point that read "Jani-King International, Inc. corporate World Headquarters, located in Addison, Texas, provides support to franchise owners through the expertise of many specialized departments."  *See* Exhibit E at Bates No. JKB0002863.

12.  The sales brochure shows a copyright of "Jani-King International, Inc." on a number of pages. See Exhibit F at Bates Nos. JKB 001011, 001022, 001023, 001027. The brochure refers repeatedly to "Jani-King's regional offices," rather than referring to

corporate regions like JKB as discrete independent entities.  See, e.g, *Id.* at Bates No. JKB001016 and 001022.

13. Documents executed by the plaintiff Mariette Barros similarly are marked with notices of copyrights held by JKI. See Exhibit G, copy of Franchise Agreement and other documents signed by Mariette Barros, Bates Nos. JKB000034, 000038, 000046, 000048-000054.

14. JKI regularly reviews and tailors the UFOC used by JKB to ensure compliance with any applicable Massachusetts regulatory requirements. See Exhibit A at p.43 line 17 – p. 44 line 5.

15. Both JKI and JK send staffpeople to JKB and other corporate regions to provide oversight and assist with operations and marketing. *Id.* at p.45 line 16 – p. 46 line 18. This includes assisting with the "up front logistical startup" of large cleaning accounts. *Id.* at p. 46 lines 1-6.

16. JKB is not permitted to make changes to the form franchise agreement provided by JKI that is used in the sale of unit franchises.  *Id.* at p.82 line 19-24.

17. Whenever JKB enters into a new franchise agreement with a unit franchisee, the franchise agreement and other paperwork are reviewed by the legal department of JKI, and JKB is ordered by JKI to make any necessary corrections or cure any deficiencies. *Id.* at p. 112 line 21 – p. 113 line 13. See Exhibit G, Bates Nos. JKB000056-000058, and 000062.

18. The Franchise Agreement executed by cleaning workers in Massachusetts requires those franchisees to "indemnify and hold harmless Franchisor [JKB], Jani-King International, Inc., and their officers, directors, and employees for all loss and damage,"

and further requires the franchisee to "obtain and carry insurance [including general liability, automobile, umbrella and workers compensation insurance] …naming Franchisor, Jani-King International, Inc.  and their officers and directors as Additional Insureds…." See Exhibit G, at JKB 000010.

As the above facts demonstrate, JKI and JK are involved in ongoing activity both taking place in and directed at Massachusetts, both in their own right and through their wholly-owned subsidiary.  JKI and JK exercise a level of control over JKB that belies any notion of corporate separateness. Not only does JKI hire and supervise JKB's regional director, but it also dictates the most basic operations of JKB's business, including what representations it makes to potential franchisees and cleaning customers, what forms and contracts it may use, how it reports financial and accounting data to JKI, and how much JKB pays out to its franchisees. In addition, JKI and JK provide services to JKB without which JKB could not operate, such as performing all the accounting for JKB's unit franchisees, and approving franchise agreements. In addition, the overwhelming majority of profits earned by JKB are remitted on a monthly basis to JKI. Thus, JKI is the primary and direct beneficiary of the services which it provides to JKB, including and especially the drafting of franchise agreements and cleaning contracts, and the performance of JKB franchisee accounting.

**B. JKI's contacts with Massachusetts are significant enough to subject it to general jurisdiction and demonstrate its plenary control of its subsidiary**

In *Donatelli,* the First circuit addressed the question of what minimum contacts would be necessary to subject an unincorporated association to the exercise of general jurisdiction. 893 F.2d 459 (1st Cir. 1990). Every characteristic of the putative defendant

which the Court there considered to *defeat* general jurisdiction here produces the

opposite result, and *supports* a finding of general jurisdiction.  Whereas, in *Donatelli,* the

hockey clubs comprising the NHL "are independently owned entities, structured as their

owners please," JKB is wholly owned by its parent, JK, and by JK's parent, JKI. 893

F.2d at 461.  Where, there, "the members comprise the league, but the league does not

dominate the members," here, JKI dominates JKB, as described above.  *Id.* Where,

there, "The NHL is run by a board of governors...but has no ownership interest in any

team," here, JKI's ownership interest in JKB is complete. *Id.* In that case, the NHL

"exercises no control over the day-to-day business operations of the any team, and

receives no substantial part of the teams' revenue," JKI by contrast exercises

overwhelming control over JKB's day-to-day business operations, and receives the

overwhelming majority of its revenue. *Id*. Finally, there, "the clubs perform virtually all of

their crucial functions...independently of the league," but here, JKB is surprisingly and

unusually dependent on JKI in performing its crucial functions. *Id.*

> The Court in *Donatelli* said:
>
> "In general, the courts have presumed the institutional independence of parent
> and subsidiary when determining whether jurisdiction may be asserted over the
> parent solely on the basis of the subsidiary's contacts with the forum...But, the
> fact of separate incorporation is not alone determinative of a court's constitutional
> power to assert personal jurisdiction over the parent based on the subsidiary's
> activities; rather, '[t]here is a presumption of corporate separateness that [may]
> be overcome by clear evidence.'"

893 F.2d at 465, *citing Escude Cruz*, 619 F.2d 902, 905 (1st Cir. 1980)

In the memorandum in support of their Motion to Dismiss, the Defendants reason

that "[b]ecause JKI has no place of business in Massachusetts, is not qualified to do

business in Massachusetts, owns or leases no real estate in Massachusetts, and

employs no one in Massachusetts, no evidence supports the court's exercise of general

jurisdiction. At least one of these assertions is false, as documented in paragraph 7

above: JKI hires the regional director of JKB. This regional director is subject to the

supervision and authority – including the authority to promote, discipline, direct and

terminate – of JKI. While that individual may be formally employed by JKB, he or she is

clearly *de facto* jointly employed by JKI and JKB. Further, the Defendants conveniently

ignore the pervasive control exercised by JKI over JKB.

The Court in *Donatelli* further explained, in relevant part:

In those cases where personal jurisdiction over the parent has been found to
exist, there is invariably a "plus" factor- something beyond the subsidiary's mere
presence within the bosom of the corporate family… [A]ctual control- an element
vital to a determination of "purposeful" establishment- should override the artifice
of separate legal incorporation. To the extent that a subsidiary enters the forum
state as an agent for the parent, or in circumstances where the parent is
exercising unusual hegemony over the subsidiary's operations and has dictated
the entry, or where the subsidiary is a separate entity in name alone, the parent
has plainly made a choice to avail itself of the forum's benefices. Since the
essence of personal jurisdiction is to bring responsible parties before the court, a
corporation which is actually responsible for its subsidiary's decision to undertake
instate activities should, in all fairness, be within the state courts' jurisdictional
reach.

*Id.* at 465-466.

As is apparent, the "plus factor" required by *Donatelli* is present here in

numerous manifestations. The above excerpt describes JKI's relationship to JKB, as

documented in the fact section above – JKB entered Massachusetts as an agent of JKI,

JKI exercises unusual hegemony over JKB's operations (even to the extent of dictating

forms and software to be used, and generating accounting invoices for JKB), and JKB

can even be described as a separate entity in name alone, given that the Board of

Directors of JKB is comprised entirely of individuals who also sit on, and in the case of

James Cavanaugh, Jr, have a complete ownership interest in, JKI and JK. That the Directors of JKB are the Directors (and owner) of JKB's parent organizations is strong evidence that JKB is a separate entity in name only.[1]

The Appeals Court of Massachusetts considered a similar question in *Kleinerman v. Morse.* 26 Mass.App.Ct 819 (1989), in which an employee of a Massachusetts-based subsidiary of a New York-based parent corporation sued the parent for breach of his employment contract and other claims. There, the court considered whether out-of-state parent corporation fell within the jurisdictional purview of the Massachusetts long-arm statute by virtue of its control over the subsidiary.   The court said:

> Significant exercise of control by an out-of-State parent corporation over a subsidiary and significant intermingling of officers and directors between parent and subsidiary have served to establish jurisdiction in the State where the subsidiary is conducting its business operations…Running the operations of a subsidiary in Massachusetts constitutes a breadth of business activity that necessarily involves exercise of the privilege of conducting business here.

*Id.* at 224. (internal citations omitted)

The facts which the court there found to support the application of jurisdiction over the defendant closely mirror the facts here.   The court there said "The activities in Massachusetts of NAMIC, the parent corporation, went well beyond isolated incidents...." and found that the parent corporation held 80% of the capital stock of the subsidiary, that the president of the parent was also the president of the subsidiary, and that that president made "major staffing and policy decisions" at the subsidiary. *Id.* at 223-224.

---

[1]     While *Escude,* on which *Donatelli* heavily relies, said that "allegations of interlocking directorates and stock ownership will not alone suffice," it prefaced that statement by saying that "plaintiff must show

Like the New York-based parent corporation in *Kleinerman*, JKI exercises significant control over JKB and has not just significant, but complete, intermingling of officers and directors. The facts adduced in the pleadings and above demonstrate that JKI is and was running the operations of JKB, its subsidiary in Massachusetts, which "constitutes a breadth of business activity that necessarily involves exercise of the privilege of conducting business here." *Id.* at 224.

### C. JKI's activities that relate to the claims in this action also subject it to the Court's specific jurisdiction

Even if the Court finds that JKI's conduct in Massachusetts does not satisfy the requirements for general jurisdiction, there is more than adequate factual evidence demonstrating that specific jurisdiction should lie.

### i.  The claims in the action directly arise out of and relate to JKI's Massachusetts activities

In a nutshell, the Plaintiffs' claims are that the Defendants misrepresented the terms of the franchise agreements and misclassified cleaning workers as independent contractors, that they breached those agreements, that they made many other misrepresentations concerning their ability to fulfill their obligations to provide the contracted-for amount of monthly income and the promised number and type of cleaning accounts.  The Plaintiffs claim that these courses of conduct constitute violations of various common law and statutory requirements arising under Massachusetts state law, and that JKI is the employer of the Plaintiffs and all others similarly situated, liable for violations of wage laws.

---

that the parent exercised the type of control necessary to ascribe to it the activities of the subsidiary." 619 F.2d at 905. (internal citations omitted).

JKI's activities in Massachusetts are primarily those involving the drafting of franchise agreements, the accounting of franchisee revenues and the oversight and management of JKB in its franchise and cleaning account sales.  The Plaintiffs' claims arise directly out of and relate to these activities. For instance, the Plaintiffs' claims that the Defendants have breached their franchise agreement contracts and that those contracts contain provisions that are unfair, unconscionable and against public policy arise directly out of JKI's drafting of those franchise agreements, and their legal review of the UFOC containing that form contract. *See* Paragraph 14, *supra.*  JKI's Rule 30(b)(6) deponent testified that JKB is not permitted to amend or alter the terms of those contracts, leaving JKI the sole party responsible for drafting contracts concerning activities in Massachusetts and governed by Massachusetts law.

In addition, Plaintiffs' claims that the Defendants misrepresent the number of hours it required to service a cleaning account relate directly to and arise out of JKI's involvement in the drafting and negotiation of cleaning account contracts. As described in paragraphs 9 and 15 above, JKI creates the form cleaning contracts that must be used by JKB and other corporate regional offices, and at times even sends JKI personnel to assist with the startup of large cleaning accounts. Plaintiffs' claims that the representations of JKB personnel to them and other cleaning workers concerning the purchase of a Jani-King franchise relate directly to JKI's creation and dissemination of marketing materials to JKB, such as the PowerPoint presentation and sales brochure referred to in Paragraph 10.  These are just a few illustrations of the extent to which the Plaintiffs' claims arise out of and are related to JKI's activities in Massachsuetts.

"To satisfy the relatedness prong of the constitutional inquiry in a tort case…the defendant's in-state conduct must form an important or at least material element of proof in the plaintiff's case. A broad but-for argument is generally insufficient. Due process demands something like a proximate cause nexus." *Platten,* 437 F.3d at 137. (internal citations, quotation marks and ellipses omitted).  This standard is easily met in this case. For instance, JKI's in-state conduct in drafting franchise agreements under Massachusetts law form an important element of proof in the plaintiffs' case of whether those contracts were misleading under Massachusetts statutes and common law.

### ii.  JKI's Massachusetts contacts are a purposeful availment of the forum.

The two "cornerstones" of purpose availment analysis are voluntariness and foreseeability. *Ticketmaster-New York,* 26 F.3d at 207.  It is clear from the facts adduced above and alleged in the pleadings to date that JKI's contacts with Massachusetts and its in-state activities were voluntary. Its establishment of JKB in order to market and sell cleaning franchises in Massachusetts, its hiring of JKB's regional director, its creation of JKB- and Massachusetts-specific contracts and marketing materials and its other undertakings are all activities obviously voluntarily undertaken in Massachusetts, and not ones whose impact in and upon Massachusetts is incidental, unintended or unanticipated.

"The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between itself and the forum state," *Sawtelle*, 70 F.3d at 1393. JKI established numerous continuing obligations between itself and Massachusetts, including the creation of Massachusetts contracts (the franchise agreements), the supervision of JKB's regional director and the

operations of JKB's day-to-day operations, and the ongoing accounting services performed for JKB and its unit franchisees, among others.  JKI demonstrated that it foresaw that its "conduct and connection with the forum state [was] such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). For instance, JKI drafted form contracts for JKB that that forced the unit franchisees to indemnify and hold harmless JKI and required them to obtain and carry insurance named JKI as an additional insured, demonstrating that JKI recognized and anticipated the possibility of JKI being named a party to litigation in Massachusetts arising out of the franchise agreements signed and executed there. See Paragraph 18, above.

### *iii. The exercise of jurisdiction of JKI is reasonable*

Application of the "Gestalt factors" from *Burger King Corp.* amply demonstrates that the exercise of jurisdiction here over JKI is reasonable. 471 U.S. at 476-477.

**1.  The burden on JKI**: The burden is minimal at best. JKI has already retained a national law firm to defend it. Lead defense counsel are based in Boston, and have already appeared and made numerous filings in the case. As these counsel are also and already representing Jani-King Inc, and JKB, and the defenses of and facts relevant to each of the defendants are significantly overlapping, there is little apparent burden to JKI.  Many of the documents that would be used and witnesses that would be called to testify at trial are located in Massachusetts. JKI has already demonstrated that litigating in this forum is not burdensome, as its executive vice president, Donald Burleson, traveled to Boston not just to be deposed in the Rule 30(b)(6) deposition, but also to voluntarily attend the depositions of the two plaintiffs.  In addition, the corporate

Directors of JKI are the same as the corporate Directors of JKB. Those directors might be called upon to testify in this Court even if jurisdiction over JKI was not found, and thus it presents no additional burden to them if jurisdiction over JKI is found.

**2. Massachusetts' interest in adjudicating the dispute**: Massachusetts has a significant interest in adjudicating the dispute, as the claims arise entirely under Massachusetts statutory and common law.   The Court has already rejected the Defendants' argument that the case should be adjudicated in Texas. It is axiomatic that a state's interest in the adjudication of disputes arising under its own laws is paramount. In ruling on the jurisdiction of a non-resident defendant in a case based on diversity, the Court "is the functional equivalent of a state court sitting in the forum state…" *Ticketmaster-New York v. Alioto,* 26 F.3d at 204. Further, the overwhelming majority of actions taken that form the basis of the claims took place in Massachusetts.

**3. The Plaintiffs' interest in obtaining convenient and effective relief:**  The plaintiffs' interest is readily apparent.  The allegations and the facts adduced to date underscore that the Defendants took advantage of the plaintiffs' and the putative class members' lack of education, sophistication and resources, and caused them significant damages. Their ability to obtain relief would be significantly hindered if JKI were not called to account before this Court.  The Court, in rejecting the Defendants' arguments that the case should be heard in Texas under Texas state law, has implicitly acknowledged the superiority of the Massachusetts forum for adjudication of this dispute.  Further, the First circuit "has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own

convenience." *Sawtelle,* 70 F.3d at 1395.  Finally, JKI, as the parent company, is more likely to have the resources to pay a judgment in this case on behalf of a class.

**4.   The interstate judicial system's interest in obtaining the most efficient resolution of controversies**: For the reasons stated above, finding jurisdiction over JKI will promote the most efficient resolution of this controversy.  JKI constitutes one of the central actors in the drama of this controversy, and its absence will not only deprive the plaintiffs of relief (as described in the previous section) but will hamper the resolution of this case. Much of the evidence concerning the allegations resides with JKI, JKI is alleged to have been the driving force behind many of the actions taken and JKI is thus at the very least a joint tortfeasor.  To force the Plaintiffs to litigate separately against JKI in its home state of Texas would be an inefficient use of the scare judicial resources, and unnecessarily duplicative, and, further, raises estoppel risks that implicate fundamental fairness concerns to the Plaintiffs.

**5.   The shared interest of the several States in furthering fundamental substantive social policies**:  The States share an interest in ensuring that in-state contracts and the representations made therein do not deceive less powerful parties. The States also share an interest in preventing corporate entities from shielding themselves from liability through the creation and utilization of "subsidiaries" who have no genuine independence and who are effectively the agents of their parent organizations. Finally, the states have an interest in protecting their citizens from fraud and misrepresentations undertaken by nationwide defendants that deploy national schemes on a state-by-state basis. All of these interests are implicated in this action, and are protected by finding jurisdiction over JKI.

**IV.     Conclusion**

In sum, the facts documented the pleadings and this memorandum amply demonstrate that JKI has more than sufficient "minimum contacts" with Massachusetts to subject it to the jurisdiction of the Court in this matter. The Plaintiffs' claims directly arise out of and relate to, the JKI's activities in Massachusetts. The facts strongly demonstrate that JKI exercised nearly plenary control over JKB to the extent that the normal assumption of separateness of parent corporation and subsidiary is overcome. JKI's contacts demonstrate that it purposefully availed itself of the benefits of conducting business in Massachusetts. Finally, the exercise of jurisdiction here is reasonable, and the "Gestalt factors" are easily satisfied. In conclusion, the Court clearly has a basis exercising personal jurisdiction over JKI, and should therefore deny the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully submitted,

VINCENT DeGIOVANNI, MARIETTE
BARROS, and all others similarly situated,

By their attorneys,


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (BBO #640716)
Hillary Schwab (BBO #666029)
Alex Sugerman-Brozan (BBO #650980)
Pyle, Rome, Lichten, Ehrenberg
         & Liss-Riordan, P.C.
18 Tremont Street, 5th Floor
Boston, MA 02108
Dated: May 6, 2009              (617) 367-7200

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2009, a copy of this document was served by electronic filing on all counsel of record.

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.