Region: __Boston__
Individual, Partnership, or Corporation: __Lukanmi Olatubosun d/b/a Tubirem Enterprises__
Franchisee Number: __291129__
Franchisee Name: _____
Franchisee Address: __130 Harvard Street__
__Malden, MA  02148__

# TRANSFER AGREEMENT

THIS TRANSFER AGREEMENT is entered into by and between the above referenced individual(s), partnership, or corporation (hereinafter, individually and collectively, referred to as "Franchisee or Transferor"), Transferee, as identified below, and Jani-King of _____, Inc. (hereinafter referred to as "Franchisor" or "Jani-King").

## RECITALS

WHEREAS, Transferor is a Jani-King franchisee under the terms of a Jani-King franchise agreement dated the __5__ day of __March__, __1997__ (the "Original Agreement"); and

WHEREAS, Franchisee wishes to transfer all of Franchisee's interest in the Original Agreement to the person(s), partnership, or corporation identified below (hereinafter referred to as "Transferee").

NOW, THEREFORE, in consideration of the covenants, conditions, and promises contained herein, the parties enter into this Transfer Agreement conditioned upon the faithful performance of each of the following:

## SECTION 1
## IDENTIFICATION OF TRANSFEREE

IDENTIFICATION OF Transferee:

Name: __Mariette L.S. Barros__
Address: __24 Alexander Avenue__
__Medford, MA  02155__
Telephone Number: __781- 395-2843__
Federal Tax I.D.: __069-184-374__

[ ] Corporation incorporated under the laws of _____

[ ] Partnership

[X] Sole Proprietorship

## SECTION 2
## TRANSFER AND ASSUMPTION OF RIGHTS

2.1 Transferor represents that this transfer is being made for personal and/or business reasons not related to the terms and conditions of the Original Agreement or the related operations of Transferor's Jani-King franchised business.

2.2 Transferor hereby transfers, assigns, conveys, and sells to Transferee, and Transferee hereby assumes all of Transferor's rights, titles, interests, obligations, and responsibilities in and relating to Transferor's Jani-King franchise, which will be described and defined in the New Agreement, as defined herein. Any person or persons who have an ownership interest in both the Transferee and Transferor (hereinafter the "Remaining Party") hereby acknowledge and agree that any rights, title, interests, obligations, or responsibilities under the terms of the Original Agreement are being exchanged for the rights, title, interest, obligations, and responsibilities under the New Agreement, as defined herein.

TRANSFER AGREEMENT
JANI-KING OF __BOSTON__, INC.

INT: _MLSB_  INT: _M_
PAGE 1 OF 7

© JANI-KING INTERNATIONAL, INC. 2003                                          FS-03024-1

JKB 000048

2.3 Transferor acknowledges and agrees that, except for the post-termination provisions which will survive and the certain obligations which will be assumed by Transferee pursuant to this Transfer Agreement, upon the completion of this transaction, including Jani-King's consent and the return of Confidential Information, the Original Agreement will be terminated and will hereinafter be null and void.

2.4 As a condition to this Transfer Agreement, Transferee agrees to execute all documents required by Jani-King in its sole discretion, including but not limited to the current form of the Jani-King franchise agreement (the "New Agreement"). Transferee agrees to execute these required documents before or concurrently with the execution of this Transfer Agreement.

2.5 TRANSFEREE AGREES THAT TRANSFEREE IS PURCHASING OR OBTAINING A FRANCHISE FROM TRANSFEROR AND THAT TRANSFEREE IS NOT PURCHASING OR OBTAINING A FRANCHISE FROM JANI-KING. TRANSFEREE ACKNOWLEGES AND AGREES THAT THIS TRANSFER AGREEMENT AMENDS THE TERMS OF THE NEW AGREEMENT AND THAT SOME TERMS IN THE NEW AGREEMENT WILL NOT BE APPLICABLE TO TRANSFEREE.

## SECTION 3
## FINANCIAL AND INITIAL FINDER'S FEES BUSINESS OBLIGATIONS

3.1 Transferor agrees to pay Jani-King a Transfer Fee, as defined in Section 10 of the Original Agreement, which is attached hereto and made a part hereof. The amount of the Transfer Fee is $ 2000.00 and is due and payable in immediate available funds to Jani-King upon Transferor's execution of this Transfer Agreement.

3.2 Transferor agrees to fully satisfy any and all debts and obligations relating to Transferor's operation or ownership of the Jani-King franchise to the full satisfaction of Jani-King prior to entering into this Transfer Agreement.

3.3 Transferee hereby fully assumes all remaining financial obligations of Transferor relating to the Original Agreement, including but not limited to the payment of any outstanding balance on the promissory note executed by Transferor for the financed portion of the Initial Franchise Fee which is referenced on the front page and in section 4.3 of the Original Agreement as evidenced by a promissory note with an original balance of $ 0 (the "Original Promissory Note") and any outstanding Finder's Fees. Transferee hereby agrees to assume the payment obligations remaining on the Original Promissory Note by executing an Assumption of Original Promissory Note form in an amount equal to the remaining principal balance of the Original Promissory Note which is $ 0 .

3.4 Transferee hereby agrees to execute any documents reasonably required by Jani-King to evidence the assumption of the financial obligations assumed by Transferee from Transferor.

3.5 Transferee acknowledges and agrees that under the terms of the Original Agreement, Jani-King was obligated to offer Transferor (or Transferor's predecessor) the right to provide service to Jani-King clients under the terms of contracts with a certain cumulative gross monthly billing (the "Initial Finder's Fee Business Obligation" or the "Initial Business Obligation") as listed in the Original Agreement. Transferee further acknowledges and agrees that Jani-King has offered Transferor the right to service all or part of the Initial Business Obligation and that Jani-King will only offer Transferee the right to provide service to accounts which will fulfill the remaining balance of the Initial Business Obligation, that remaining balance being: $ 0 . The right to provide service to this remaining balance of the Initial Business Obligation will be offered to Transferee on or before one of the following dates. If there is no Initial Business Obligation, the conditions do not apply.

(a) In the event that a Remaining Party exists, the date listed in the Original Agreement on or before which Jani-King was obligated to offer Transferor the right to service the Initial Business Obligation or
(b) In the event that there is no Remaining Party, n/a number of days following the date all required equipment and supplies have been obtained by Transferee, the Acknowledgement of Completion of Training has been executed by Transferee, and Transferee has provided Jani-King with proof of the required insurance coverage.

TRANSFER AGREEMENT
JANI-KING OF ___BOSTON___, INC.

INT: _WSB_    INT: _h/_
PAGE 2 OF 7

© JANI-KING INTERNATIONAL, INC. 2003

FS-03024-2

JKB 000049

3.6 Transferee specifically acknowledges that, in the event Jani-King fulfills the Initial Business Obligation prior to the execution of this Transfer Agreement, Jani-King has no obligation to offer Transferee the right to provide service to any Jani-King client and any such offer made voluntarily to Transferee by Jani-King to provide service to any Jani-King client will require Transferee to pay Finder's Fees. TRANSFEREE FURTHER ACKNOWLEDGES THAT ANY JANI-KING ACCOUNTS TO WHICH TRANSFEROR'S FRANCHISE IS CURRENTLY PROVIDING SERVICE MAY BE TRANSFERRED IN THE EVENT OF NON-PERFORMANCE AND ARE NOT GUARANTED TO REMAIN WITH THE FRANCHISE NOR BE REPLACED IF TRANSFERRED.

## SECTION 4
## TRANSFEROR OBLIGATIONS AND RELEASE

4.1 Transferor agrees as part of the consideration for Jani-King's consent to this transfer to the following: (a) to comply with all post-termination provisions of the Original Agreement including but not limited to Transferor's agreement not to compete with Jani-King, (b) to immediately cease all use of the Jani-King trademarks, trade names, and service marks, and (c) to return to Jani-King all Confidential Information, as defined in the Original Agreement, including but not limited to all Jani-King manuals, training aids, any documents containing the Jani-King trademark, and any customer information, and all other Jani-King property in Transferor's custody, possession, or control. Notwithstanding the foregoing, the provision of Section 5 of the Original Agreement requiring the return of Confidential Information and an agreement not to compete shall not apply to any Remaining Party.

4.2 Upon execution of this Transfer Agreement, Transferor agrees to immediately deliver to Jani-King all keys, access codes, identification materials, and other items providing access to Jani-King clients, facilities, or properties, or relating to Jani-King clients, currently or previously serviced by Transferor, and to assist in an orderly transfer of the right to service all such clients with minimum disruption and inconvenience. Delivery of the above items to a Remaining Party with written acknowledgment of receipt by Remaining Party to Jani-King shall be deemed sufficient to comply with this section unless Transferor is notified otherwise by Jani-King.

4.3 Transferor hereby agrees that Transferor will not engage in or cause anyone to be engaged in any act, conversation or communication which is reasonably likely to (a) cause embarrassment to Jani-King, (b) interfere with the business of Jani-King, or (c) harm or otherwise negatively affect the Jani-King name, reputation, or any goodwill associated with the Jani-King trademark, tradename, or service mark, regardless of the degree of embarrassment, interference, harm, or negative effect.

4.4 Transferor hereby fully and completely releases any and all claims (including but not limited to any and all claims relating to fraud, negligence, or gross negligence) which Transferor now has, has had, or may have in the future against Jani-King, Jani-King International, Inc., Jani-King, Inc., all affiliated companies of Jani-King, and Jani-King's officers, directors, and employees (the "Jani-King Parties") resulting from or related to Transferor's purchase, ownership or operation of the Jani-King franchise. Transferor further agrees to fully indemnify and hold harmless the Jani-King Parties from any and all claims, actions, causes of action, damages, court costs, and attorneys' fees connected with or related to Transferor's ownership or operation of Transferor's Jani-King franchise.

4.5 Transferor expressly agrees that the existence of any claims it may have against Jani-King, whether or not arising from the Original Agreement or this Transfer Agreement, shall not constitute a defense to the enforcement of any provisions of the Original Agreement, this Transfer Agreement, or any other agreement between Jani-King and Transferor. Transferor further agrees to pay all costs and expenses (including reasonable attorneys' fees) incurred by Jani-King in connection with the enforcement of the terms of the Original Agreement or this Transfer Agreement or any other agreement between Jani-King and Transferor.

4.6 Transferor further acknowledges and agrees that all post-termination covenants of the Original Agreement, including but not limited to the non-competition provisions, will continue to be enforceable against Transferor as though they were fully set forth in this Transfer Agreement, and therefore, such covenants are fully incorporated herein by reference.

4.7 Transferor warrants that Jani-King is not now in breach or violation of nor has it at any time in the past breached or violated the Original Agreement or any franchise law or similar law.

TRANSFER AGREEMENT
JANI-KING OF __BOSTON__, INC.

INT: _HLSB_    INT: _⌀J_
PAGE 3 OF 7

## SECTION 5
## GENERAL

5.1 Transferee certifies and warrants that all of Transferee's owners, spouses of Transferee's owners or partners (if Transferee is a sole proprietorship or partnership), and all persons who are Transferee's shareholders, officers or directors (if Transferee or any ownership of Transferee is a corporation): (a) are listed in the attached Transferee Schedule and (b) will execute all documents required by Jani-King, including but not limited to personal guarantees.

5.2 Each of Transferor and Transferee hereby represents that it has full authority and authorization to enter into this Transfer Agreement. If Transferee is a corporation, it agrees to provide Jani-King with a corporate resolution upon execution of this Transfer Agreement authorizing the acceptance of the terms of this Transfer Agreement and further authorizing the assignment or assumption of all obligations under the terms of this Transfer Agreement and the New Agreement. <u>Transferee and Transferor acknowledge this Transfer Agreement will not be effective until the Transfer Agreement has been accepted and approved by Jani-King and Transferee has successfully completed the Jani-King training program.</u>

5.3 THE PARTIES AGREE AND INTEND THIS INSTRUMENT TO BE EXECUTED, INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REFERENCE TO CONFLICT OF LAWS PRINCIPLES. TEXAS LAW SHALL APPLY TO ALL CLAIMS, DISPUTES, AND DISAGREEMENTS BETWEEN THE PARTIES, WHETHER ARISING FROM ALLEGED BREACHES OF THE CONTRACT OR AGREEMENT OR OTHER CLAIMS ARISING IN ANY WAY FROM THE PARTIES' DEALINGS. JURISDICTION AND VENUE IS DECLARED TO BE EXCLUSIVELY IN DALLAS COUNTY IN THE STATE OF TEXAS.

5.4 Should any part of this Transfer Agreement for any reason be declared invalid, such decision shall not affect the validity of the remaining portion, which remaining portion shall remain in full force and effect as if this Transfer Agreement had been executed without the invalid portion thereof eliminated; and it is hereby declared the intention of the parties hereto that they would have executed the remaining portion of this Transfer Agreement without including herein any such invalid portion(s).

5.5 Any and all prior agreements relating to matters set forth in this Transfer Agreement are hereby merged into this Transfer Agreement and the contents of any such prior agreements will be governed by the language of this Transfer Agreement. Any amendment or modification to this Transfer Agreement is invalid unless made in writing and signed by the party/parties to be bound.

5.6 Transferee acknowledges and agrees that Transferee is assuming certain responsibilities and obligations of Transferor relating to the operation of an ongoing business and that Transferee has an obligation to obtain from Transferor any and all information Transferee may require to fully understand all of the responsibilities and obligations Transferee is assuming from Transferor. Transferee further acknowledges that Jani-King either is not able to or is restricted from providing Transferee with information about Transferor or Transferor's business due to privacy issues or due to Jani-King not having access to such information, and that Transferee is solely responsible for obtaining from Transferor any information Transferee deems necessary, advisable, reasonable, or desirable in order to enter into this Transfer Agreement. Transferee fully releases and holds harmless the Jani-King Parties from any and all claims (including but not limited to any and all claims relating to negligence or gross negligence), known or unknown, relating to information provided to Transferee by Transferor.

5.7 Transferee and Transferor acknowledge that neither Jani-King, nor anyone on its behalf, has made any representations, promises, or agreements, orally or otherwise, respecting the matter of this Transfer Agreement which are not embodied herein. Each of Transferee and Transferor represents and agrees that it has not relied on any representations, promises, or agreements, orally or otherwise, respecting the matter of this Transfer Agreement which are not embodied herein.

5.8 Transferor and Transferee hereby acknowledge and agree that, except for any Remaining Party who has previously completed training, Transferee is required to successfully complete the Jani-King initial training program

TRANSFER AGREEMENT  
JANI-KING OF ____BOSTON____, INC.

INT: _MLSB_   INT:_H_  
PAGE 4 OF 7

© JANI-KING INTERNATIONAL, INC. 2003

FS-03024-4

JKB 000051

within sixty (60) days of the execution of this Transfer Agreement and that Transferor will remain jointly responsible with Transferee for providing on-going acceptable service to any Jani-King accounts that are currently being serviced by Transferee until the successful completion by Transferee of the initial training program. Transferee and Transferor further acknowledge and agree that in the event any account being serviced by Transferor and which is contemplated to be serviced by Transferee following the transfer contemplated herein is not serviced in accordance with Jani-King standards, Jani-King may transfer the right to provide service to any such account and Transferee thereafter will have no rights to provide service to the account(s).

5.9 Notwithstanding anything contained in the New Agreement to the contrary, Transferee acknowledges and agrees that Jani-King will not provide the office supply and advertising package, as outlined in Schedule One of the New Agreement, to Transferee.

5.10 This Transfer Agreement is specifically conditioned on the written acceptance by an authorized officer or director of Jani-King and will not be effective until such acceptance is given by the signature of an authorized officer or director of Jani-King where indicated below.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement this 27 day of August, 2003.

JANI-KING OF BOSTON, INC.:

_____
Signature of Authorized Agent

Michael Salmon,
Regional Director
Print Name/Title

TRANSFEROR:

_____
Signature of Transferor

Lukanmi Olatubosun d/b/a Tubirem Enterprises
Print Name

_____
Signature of Transferor, Partner, or Authorized Officer

_____
Print Name

_____
Signature of Transferor, Partner, or Spouse

_____
Print Name

[ADDITIONAL SIGNATURES ON NEXT PAGE]

COMPLETE IF TRANSFEROR IS CORPORATION:

_____
Corporate Name

_____
Title of Authorized Officer

TRANSFER AGREEMENT
JANI-KING OF  BOSTON , INC.

INT: _____  INT: _____
PAGE 5 OF 7

© JANI-KING INTERNATIONAL, INC. 2003                                          FS-03024-5

JKB 000052

TRANSFEREE:

_Mariette L S. Barros_
Signature of Transferee

Mariet‡e L.S., Barros
Print Name

_____
Signature of Transferee, Partner, or Authorized Officer

_____
Print Name

_____
Signature of Transferee, Partner, or Spouse

_____
Print Name

COMPLETE IF TRANSFEREE IS CORPORATION:

_____
Corporate Name

_____
Title of Authorized Officer

ACCEPTED by the Jani-King in Addison, Texas on this 9 day of September 2003

_[signature]_
Signature of Authorized Officer or Director

ASSISTANT SECRETARY
Title of Authorized Officer

TRANSFER AGREEMENT
JANI-KING OF __Boston__, INC.

INT: _MLSB_   INT: _M_
PAGE 6 OF 7

© JANI-KING INTERNATIONAL, INC. 2003

FS-03024-6

JKB 000053

## SCHEDULE OF PRINCIPALS

ANY OTHER PERSON NOT LISTED IN THIS TRANSFER AGREEMENT WHO IS A SPOUSE, PARTNER, OR AN OFFICER, DIRECTOR OR SHAREHOLDER OF **TRANSFEREE**. ALL PRINCIPALS LISTED MUST SIGN A GUARANTY.

Relationship: _____

Name: _____

Social Security Number: _____

Address: _____

_____

Telephone: (___) _____

Relationship: _____

Name: _____

Social Security Number: _____

Address: _____

_____

Telephone: (___) _____

Relationship: _____

Name: _____

Social Security Number: _____

Address: _____

_____

Telephone: (___) _____

Relationship: _____

Name: _____

Social Security Number: _____

Address: _____

_____

Telephone: (___) _____

TRANSFER AGREEMENT
JANI-KING OF ____BOSTON____, INC.

INT: _MLB_   INT: _JK_
PAGE 7 OF 7

© JANI-KING INTERNATIONAL, INC. 2003

FS-03024-7

JKB 000054