UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
VINCENT DE GIOVANNI,                    )
MARIETTE BARROS and all others          )
similarly situated,                     )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )     Docket No. 07-10066 MLW
                                        )
JANI-KING INTERNATIONAL, INC.,          )
JANI-KING, INC. and                     )
JANI-KING OF BOSTON, INC.               )
                                        )
            Defendants.                 )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs ask this Court to legally transform the business relationship between Jani-King and its franchise owners into an employment relationship. Plaintiffs argue that every owner of a Jani-King commercial cleaning franchise is by law an employee of Jani-King of Boston ("Jani-King") under the Massachusetts Independent Contractor statute, M.G.L. ch. 149, § 148B. They further argue that all individuals hired by a Jani-King franchise owner (either a corporation, a limited liability company, or an individual) are also by law Jani-King's employees.

Plaintiffs are wrong. Courts have repeatedly recognized in other areas of Massachusetts law that franchisors and franchise owners share a business relationship, not an employment relationship. In *Boulanger v. Dunkin' Donuts, Inc.*, 442 Mass. 635 (2004), the Supreme Judicial Court enforced a non-compete agreement signed by a Dunkin' Donuts franchise owner because "the [owner] was not the defendant's employee" and the non-compete agreement was "more akin to a sale of business covenant" than an employment covenant. *Id.* at 640. More recently, in *Coworx Staffing Servs., LLC v. Coleman*, 22 Mass. L. Rptr. 166, 2007 WL 738913 (Mass. Super.

1

Ct. 2007), the court refused to treat a franchise owner as the franchisor's employee for purposes of vicarious liability, explaining that "[t]he franchise relationship is very different in nature from the traditional master/servant relationship applicable to a contract for employment." 2007 WL 738913 at * 5. The only arguable exception in Massachusetts hangs on an administrative ruling under the unemployment statute, reviewed on a deferential substantial-evidence standard, with facts so extreme that the court concluded "that this individual is not a franchisee." *Coverall N.A., Inc. v. Comm'r of the Div. of Unemployment Assistance,* 447 Mass. 852, 853 n.2 (2006).

The Court should deny plaintiffs' motion for summary judgment because Jani-King has produced evidence that, if credited, demonstrates that its franchise owners and their workers are not Jani-King's employees. First, Section 148B does not govern this case because evidence shows that owners of Jani-King franchises do not perform services for Jani-King; they perform services for clients on their own behalf. For that reason alone, plaintiffs' motion must be denied. Second, even if Section 148B applies, evidence shows that franchise owners are independent contractors under its three-prong test because: (a) Jani-King does not retain contractual or actual control over Plaintiffs' day-to-day operations; (b) Plaintiffs' business of providing cleaning services is outside of and different from Jani-King's usual business of selling franchises; and (c) Plaintiffs run independently-operated businesses.

**FACTS**

## I.     Jani-King is a commercial cleaning franchisor.

Jani-King is the world's largest commercial cleaning franchisor. (Defendants' Statement of Facts ("DSOF") ¶ 2.) It licenses its intellectual property—trademarks, goodwill, and proprietary commercial cleaning system—to entities, and people, that want to run their own commercial cleaning business. (DSOF ¶ 16.) By entering into a franchise agreement with Jani-King and paying certain fees, franchisees gain valuable intellectual property along with

2

administrative support, including billing, collections, advertising, and a sales staff to generate new account leads.  (DSOF ¶ 23.)

In 2001, the FTC issued a buying guide for prospects interested in buying a commercial cleaning franchise, titled "Buying a Janitorial Services Franchise."  (DSOF ¶ 30.)  The elements of a commercial cleaning franchise system described by the FTC are very similar to the elements of  a Jani-King franchise (which Plaintiffs say make it an employer).  *See Buying a Janitorial Services Franchise*, 1-2, Fed'l Trade Comm'n (2001) (attached to Seid Decl. as Ex. 2).

## II.     Franchises form a major part of the Massachusetts economy and are a recognized alternative to employee-based business models.

Franchising is a ubiquitous part of the state, national, and global economies.  Companies such as McDonald's, Dunkin' Donuts, H&R Block, and Express Services, plus thousands of others, operate on a franchising model.  *See* Roger D. Blair & Francine Lafontaine, *The Economics of Franchising*, 10, Table 1-1 (Cambridge U. Press 2005) (hereinafter "Blair").  In 2005 franchised businesses employed over 199,000 individuals in Massachusetts and generated $18.5 billion of economic activity.  *See The Economic Impact of Franchised Businesses, A Study for the Int'l Franchise Ass'n Educ. Found.*, 21, 25, Nat'l Econ. Consulting Practice of PriceWaterhouseCoopers (2008) (attached to Declaration of Aaron Van Oort ("Van Oort Decl.") as Ex. M).  Based on 2005 information, on a national level, franchised businesses produce goods and services worth $880.9 billion per year, or 4.4 percent of private-sector output in the United States.  *Id.*

For McDonald's, Jani-King, and others, franchising works; and it works in part because it is different from employee-based models.  In selling a business-format franchise, Jani-King transfers the know-how and support to operate an entire business.  *See Franchising in the Economy 1986-88*, *U.S. Dep't of Commerce,* 3 (Feb. 1988) (hereinafter "USDOC") (attached to

Declaration of Michael Seid ("Seid Decl.") as Ex. 1). Jani-King sells not just the right to use its trademark in selling products or services, but also a "marketing strategy and plan, operating manuals and standards, quality control, and continuing two-way communication." Blair at 6 (quotation omitted). *See also* George W. Mykulak & John S. Rhee, *Business Torts in Massachusetts*, vol. II, § 15.2.4 (2002). Buying a franchise gives an entrepreneur a competitive advantage:

> Franchising has become so powerful partly because economic factors have made growth through company-owned units difficult for many businesses. In addition, franchisees are enjoying a competitive edge over other small business entrepreneurs by the use of trade names, marketing expertise, acquisition of a distinctive business appearance, standardization of products and services, training, and advertising support from the parent organization. Franchising represents the small entrepreneur's best chance to compete with giant companies that dominate the marketplace. Without franchising, thousands of businesspersons would never have had the opportunity of owning their own business and never have felt the immense satisfaction of being part of the free enterprise system.

*USDOC* at 1.

## III. Uniform quality is critical to franchise success; franchisors may achieve it through contractual controls over business methods without being deemed an employer.

Successful franchising depends on different franchised locations appearing consistent to consumers. (DSOF ¶ 10.) Customers must *know*, for example, that they will get the same Big Mac in Fresno as in Boston. (DSOF ¶¶ .10-11) Otherwise the McDonald's brand will have no power and franchising that brand will not work. Building transferable good will is the heart of the franchise system. (DSOF ¶¶ 10-11.) "Customers don't want surprises . . . [t]hey like knowing that a good dining experience . . . in New York assures them an equally good experience at other locations." Susan Konig, *A Fast-Food Strategy for a High-End Menu,* N.Y. Times, Sept. 20, 1998, at 14 (Long Island ed.) (attached to Van Oort Decl. as Ex. L).

Franchises can build good will and deliver consistently good customer experiences only where franchisors control the business methods and their end result. (DSOF ¶¶ 10-13.) The

federal regulations *define* "franchise" based on the existence of such controls.[1]

Moreover, a franchisor may exercise these controls without being deemed an employer. That is the law. "A franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and goodwill, without the risk of creating an agency relationship with its franchisees." *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1295 (Ct. App. 1992). "A franchise . . . is quite different from a contract for employment. For one thing, it is the franchisee that pays, not the franchisor." *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 337-38 (Wis. 2004). (*See also* DSOF ¶¶ 7-9.)

## STANDARD OF LAW

Summary judgment is appropriate only if the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Dykes v. Depuy, Inc.*, 140 F.3d 31, 36 (1st Cir. 1998). This Court must "view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in [its] favor." *Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 404 (1st Cir. 2009).

## ARGUMENT

I. **Plaintiffs Cannot Get Summary Judgment Declaring All Jani-King Franchise Owners To Be Employees.**

"Whether an individual is an employee or an independent contractor is usually a question of fact." *Weston v. Town of Middleborough*, 14 Mass. L. Rep. 323, *17 (Mass. Super. Ct. 2002)

---

[1] A "franchise" under the federal regulations exists when "a person (hereinafter 'franchisee') offers, sells, or distributes . . . goods, commodities, or services which are . . . [i]ndirectly or directly required or advised to meet the quality standards prescribed by another person (hereinafter 'franchisor') . . . and [t]he franchisor exerts or has authority to exert a significant degree of control over the franchisee's method of operation." 16 C.F.R. § 436.2(1)(i)(A) and (B); *see also LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.*, 92 F. Supp. 2d 119, 124 (E.D.N.Y. 2000) (a franchisee is granted, in return for a fee or other consideration, the right to market the services, goods, or name brand of the franchisor in accordance with the established standards and practices of the franchisor, and with its assistance).

(citing *Thorson v. Mandell*, 402 Mass. 744 (1988)). Viewing the facts most favorably to Jani-King[2], a reasonable factfinder could conclude that plaintiffs are *not* Jani-King's employees under Massachusetts law.[3] The record precludes plaintiffs' motion for summary judgment.

>    **A.  Section 148B does not apply to this case because franchise owners do not perform services for Jani-King; they perform services for their clients on their own behalf.**

Plaintiffs claim employee status under M.G.L. ch. 149 § 148B(a), which only protects "an individual performing services *for another*." *Somers v. Converged Access, Inc.*, 454 Mass. 582, 588 (2009) (emphasis added). Jani-King franchise owners do not perform services for *Jani-King*, they perform services for clients on their own behalf. (DSOF ¶¶ 17-19.) They clean clients' buildings, not Jani-King's buildings. (DSOF ¶¶ 19, 22.) If anything, the clients—not Jani-King—would "employ" the services of the franchise owners. On this record, a reasonable factfinder could conclude that Section 148B does not apply to Jani-King, defeating summary judgment for plaintiffs.

Plaintiffs, like many other business entities, perform services on their own behalf, as independent business owners. In *Boulanger v. Dunkin' Donuts, Inc.*, the Court enforced a non-compete agreement signed by a Dunkin' Donuts franchise owner because "the [owner] was not the defendant's employee" and the non-compete agreement was "more akin to a sale of business covenant" than an employment covenant. 442 Mass. at 639-42. The court's conclusion of no

---

[2] Plaintiffs have sued three separate Jani-King entities: Jani-King, International, Inc. ("JK Int") Inc.; Jani-King, Inc. ("JKI"); and Jani-King of Boston, Inc. ("Jani-King"). Plaintiffs have produced no evidence that JK Int or JKI have an employment relationship with plaintiffs. If plaintiff is attempting to get summary judgment against JK Int or JKI, those claims should be denied for lack of proof. Indeed, summary judgment against Plaintiffs on such claims is proper.

[3] To the extent Plaintiffs are seeking a class-wide determination of their wage and hour claims, defendants have filed a Motion to Stay Proceedings on the grounds that the summary judgment motion is unripe and premature in light of the recent class certification of the wage and hour claims. (Dkt. 99.)

employment relationship was based on several factors, including an express contractual statement that the owner was an independent contractor and evidence that the owner (a) had to pay to obtain his franchise; (b) had the right to use confidential franchisor information and trademarks under a long-term contract, and (c) could receive profits from his franchise. *Id.*

All of *Boulanger's* dispositive factors are present here as well and preclude summary judgment for plaintiffs. Plaintiffs' contracts with Jani-King designate them independent contractors; the franchise fee they paid entitles them to use Jani-King's intellectual property for 20 years; plaintiffs earn profits, not wages; and they can sell their franchise for a gain. (DSOF ¶¶ 1, 27-28, 30.) Plaintiffs are business owners who provide services on their own behalf, not for someone else. (DSOF ¶ 1.)

Courts in Massachusetts and elsewhere have also distinguished franchise relationships from employment relationships in assessing vicarious liability. Recently a Massachusetts court stated that "[t]he franchise relationship is very different in nature from the traditional master/servant relationship applicable to a contract for employment" and refused to hold a franchisor vicariously liable for the franchisee's acts. *Coworx*, 22 Mass. L. Rptr. 166, 2007 WL 738913 at *5. The Wisconsin Supreme Court used almost exactly the same terms, stating that a franchise relationship "is quite different from a contract for employment" because it is "a commercial arrangement between two businesses which authorizes the franchisee to use the franchisor's intellectual property and brand identity, marketing experience, and operational methods." *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 338 (Wis. 2004).[4]

---

[4] Other courts have drawn the same distinction in a variety of legal contexts. *See, e.g., Allen v. Choice Hotels Int'l, Inc.*, 917 So.2d 817, 821-22 (Ct. App. Miss. 2006); *Williams v. Dresser Indus.*, 120 F.3d 1163 (11th Cir. 1997).

One of Jani-King's mottos captures the evidence that precludes summary judgment for plaintiffs: "Jani-King franchisees are in business for themselves, but not by themselves." (Van Oort Decl. Ex. K.). Not by themselves because Jani-King supports them with intellectual property, training, advertising, billing, and other services. But for themselves, because, to use the nomenclature of § 148B, the franchise owners provide "services on their own behalf." They have "the right to profit from [their] efforts, commensurate with [their] status as a business or business owner" as well as "bear the risk of loss or failure that is characteristic of this status." (Van Oort Decl. Ex. A at 44.) On this fact record, viewed most favorably to Jani-King, the Court should conclude that Jani-King franchise owners are not subject to § 148B.

**B.     Under § 148B, Jani-King has produced evidence showing that the franchise owners are not Jani-King's employees because Jani-King meets all three prongs of the test to establish them as independent contractors.**

Alternatively, if Section §148B(a) applies, the Court should also deny the motion because Jani-King has produced sufficient evidence to show all three criteria necessary to establish the plaintiffs as independent contractors.

The three-part "ABC test" controls the inquiry under § 148B. *See, e.g., Athol Daily News v. Bd. of Review of the Div. of Employment and Training*, 439 Mass. 171, 176 (2003). Once a plaintiff proves the provision of services for a putative employer, the burden shifts to the employer to prove that: (1) the plaintiff is contractually and actually free from control and direction in the performance of the service; (2) the service is performed outside the employer's usual course of the business; and (3) the plaintiff is customarily engaged in an independently established trade, occupation, profession, or business. M.G.L. ch. 149, § 148B(a).

This three-part inquiry is often so fact-intensive as to preclude summary judgment. *See, e.g., Vargas v. Cummings*, 149 F.3d 29, 36 (1st Cir. 1998) (a doctor was not entitled to summary judgment that he was a hospital employee as "[t]he employment status issue requires further

factual development"); *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 228-29 (D. Mass. 1990) (factual issues existed as to whether the company had a right to control the individual).[5]

> **1.  Jani-King meets prong one because, although it reserves controls over franchise owners' business methods, it does not have the right to direct and supervise the details of their day-to-day activities.**

Plaintiffs' brief does not cite a single case holding that an employment relationship is established by the controls that a franchisor exercises over the franchised product or service and the methods of providing it.  (*See* Pls.' Br. 13-15.)  These typical franchisor controls are the only controls retained by Jani-King.  Jani-King therefore meets the requirement of prong one.

Vicarious liability cases should inform the Court's analysis of prong one because the same common law "right to control" test applies in both contexts.  *Compare Athol*, 439 Mass. at 176 (applying prong one of § 148B(a)) with *Coworx*, 22 Mass. L. Rptr. 166, 2007 WL 738913 at **5-7 (applying vicarious liability test).  This test "is not so narrow as to require that a worker be entirely free from direction and control from outside forces."  *Comm'r of the Div. of Unemployment Assistance v. Town Taxi of Cape Cod*, 68 Mass. App. Ct. 426, 430 (2007) (decided under ch. 151, § 2, containing an analogous right-to-control element).  Rather, courts distinguish direct supervision of day-to-day details, which creates an employment relationship, from controls over the product and the method for producing it, which do not.  "If in the performance of his work an individual is at all times bound to obedience and subject to direction and supervision as to details, he is an employee; but if he is only responsible for the accomplishment of an agreed result in an agreed manner, he is an independent contractor."  *Athol*, 439 Mass. at 177.

---

[5] Although Jani-King has not brought summary judgment on these claims because  summary judgment on class claims is premature at this stage of the proceedings, Jani-King intends to do so in the future, and believes that summary judgment *against* plaintiffs is appropriate.

Courts conclude that franchise owners—who are responsible for accomplishing agreed results in an agreed manner but are not at all times subject to direction and supervision as to details—are not employees. The *Coworx* court rejected the argument that an outsourcing franchisor (Express Personnel) was vicariously liable because its franchise agreement gave it "rights over employee training programs, employee handbooks, supplies such as computers, payroll supervision, and insurance coverage and liability." 22 Mass. L. Rptr. 166, 2007 WL 738913 at *6. Noting that a franchisor "must exert some degree of control over the franchisee to protect its trade or service mark," *id.* at *5, the court held that these controls differ from the "'routine, daily supervision and management of the franchisee's business'" that creates an employment relationship. *Id.* at * (quoting *Kerl*, 682 N.W.2d at 338); *cf. Murray v. Horst*, 110 F. Supp. 678, 679 (D. Mass. 1953) (holding that a "naked license without [] supervisory control of the product or service is invalid"). The *Coworx* court ultimately rejected the argument that the franchise agreement created vicarious liability because "[a]bsent from the Franchise Agreement is an explicit provision giving Express [the franchisor] the right to control Stark's [the franchise owner's] employees on a day-to-day basis." 22 Mass. L. Rptr. 166, 2007 WL 738913 at *6.

Other jurisdictions likewise distinguish between the controls over business methods inherent in franchising and the daily supervision and direction that creates an employment relationship. The Wisconsin Supreme Court explained that "although franchise agreements typically impose detailed requirements on the franchisee's operations . . . [this] does not mean that franchisors have a role in managing the day-to-day operations of their franchisees. To the contrary, the imposition of quality and operational requirements by contract suggests that the franchisor does *not* intervene in the daily operation and management of the independent business of the franchisee." *Kerl*, 682 N.W.2d at 337-38 (emphasis added). "Marketing, quality, and

operational standards commonly found in franchise agreements are insufficient to establish the close supervisory control or right of control necessary to demonstrate the existence of a master/servant relationship for all purposes or as a general matter." *Id.* at 332. Kentucky has embraced Wisconsin's view and likewise explained that "a franchisor typically concentrates its control on the quality and operational requirements relating to its trade or service mark, as opposed to the day-to-day operations and management of the business." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 54 (Ky. 2008). *See also Triplett v. Soleil Group., Inc.,* Civ. No. 2:07-CV-361-PMD, 2009 WL 3397660 (D.S.C. Sep. 22, 2009); *Pizza K, Inc. v. Santagata*, 547 S.E.2d 405, 406-07 (Ga. Ct. App. 2001); *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 814-15 (Iowa 1994).

The *only* controls identified in plaintiffs' brief are the typical franchise controls over the service and the methods for providing it that courts have repeatedly held do *not* establish an employment relationship. Cleaning manuals, training programs, pricing, bidding, and accounting (*see* Pls.' Br. 14) all go to the product and service, and all were rejected as insufficient to establish employment by *Coworx*, *supra*.

Plaintiffs provide no evidence showing that Jani-King has the right to supervise and direct plaintiffs' day-to-day activities. Instead, the evidence shows that Jani-King franchise owners retain all authority over daily supervision and direction of themselves and their own employees. (DSOF ¶ 30) ("Jani-King franchisees offer cleaning services. The product is LABOR, properly managed and supervised by the franchise owner.").) As Judge Young recognized in the class certification Order, "Jani-King franchisees are free to sell their franchises, may hire their own employees, and may generally structure and operate their franchises as they see fit." (Dkt. 99 at 5.) And this is just the beginning of the authority they retain. This Court

must "look beyond the four corners of the agreement to the actual working relationship" to determine whether an employer has satisfied its burden" on the prong one test. *Driscoll v. Worcester Telegram & Gazette*, 72 Mass. App. Ct. 709, 713 (2008) (*citing Boston Bicycle Couriers, Inc. v. Deputy Director of the Div. of Employment & Training*, 56 Mass. App. Ct. 473, 484 (2002)). Here, the documents and testimony, taken in the light most favorable to Jani-King, show that franchise owners retain the rights to, among other things: (1) hire, fire, and dictate the terms of employment for their own employees and independent contractors who perform the franchise's work (*see* DSOF ¶¶ 32-49, 53-56); (2) operate their business at or from a location of their choosing; (DSOF ¶ 30); (3) purchase or lease their own equipment and purchase their own supplies. (DSOF ¶19); (4) accept or decline the offer of business made by Jani-King (DSOF ¶¶ 22, 30, 53-56); (5) determine the order in which they clean the accounts, the pace at which they clean, the number of workers used at each account, and the specific days and hours that they clean (subject to the wishes of the client). (DSOF ¶¶ 32-49); (6) market their business to prospective customers, up-sell existing customers on additional work and bid on work for new clients. (DSOF ¶¶ 32-49; 53-56); and (7) control the tax consequences of the business, including business expenses, depreciation, and deductions (DSOF ¶ 28).

In sum, the record permits (if indeed it does not compel) the conclusion that Jani-King neither retained nor exercise the supervisory control over the day-to-day activities of its franchise owners required to form an employment relationship.

> ### 2. Jani-King meets prong two because it is in the business of franchising, while its franchise owners are in the separate business of providing commercial cleaning services.

The second prong of Section 148B's test requires Jani-King to prove that "the service" provided by its franchise owners "is performed outside the usual course of the business of" Jani-

King.  M.G.L. ch. 149, § 148B(a).  Evidence in the record directly shows that it is.  (DSOF ¶¶ 7-14, 53-56.)  That alone ends plaintiffs' motion for summary judgment.

According to plaintiffs, franchisors such as Jani-King "cannot possibly contend" that the services performed by their franchise owners are outside their usual course of business.  (Pls.' Br. 9.)  Jani-King, they say, is in the business of commercial cleaning.  So too are the owners who buy its franchises.  Plaintiffs essentially ask why else would anyone buy a Jani-King franchise other than to get into Jani-King's business?  In making this glib argument, plaintiffs run directly afoul of the Massachusetts Supreme Judicial Court's warning that no prong should be read so broadly as to render the others test superfluous.  *See Athol Daily News*, 439 Mass. at 180.  If plaintiffs' approach were right, *all* franchisors would be employers as a matter of law, regardless of prongs one and three, because they would always be in the same course of business as their franchisees.  McDonald's would employ all its franchisees because they would all be in the fast food business together.  Dunkin' Donuts would employ all its franchisees because they would all be in the donut business together.

The second prong of § 148B draws a more precise line.  A franchisor is in the business of selling franchise that license its intellectual property and support services to people who want to own and operate a business.  (DSOF ¶¶ 7-14.)  A franchisee, in contrast, is in the business of operating its own business, here, a commercial cleaning business.  (DSOF ¶¶ 8.)  Plaintiffs' contrary argument confuses the *brand* with the franchisor itself.  Franchising exists to offer the public a uniform brand.  That does not mean, however, that the franchisor performs the same services in the usual course of its business as its franchise owners do.  Just as McDonald's advertises cheeseburgers and Dunkin' Donuts advertises coffee, Jani-King advertises cleaning services.  Jani-King does not, however, *perform* those cleaning services at its franchise locations

as part of its usual course of business, just as McDonald's does not make cheeseburgers and Dunkin' Donuts does not brew the coffee. The franchise owners do all that. Selling and supporting franchises is a different course of business than operating franchises.

None of the cases on which plaintiffs relies involved a franchise. (Pls.' Br. 8.) In *Fucci v. Eastern Connection Operating, Inc.*, No. MICV 2008-2659, slip op. (Mass. Super. Ct. Sept. 24, 2009), the defendant did not sell franchises. Rather, it was a commercial courier "that picks up, transports, and delivers packages for customers." *Id.* at 8-9. The drivers it hired to do those activities thus performed services in the usual course of its business. In the same way, the exotic dancers in *Chaves v. King Arthur's Lounge, Inc.,* Civ. No. 07-2505, slip op. at *6-9 (Mass. Super. Ct. Aug. 7, 2009), the automobile detailers in *Rainbow Development, LLC v. Com., Dept. of Indus. Accidents*, No. SUCV2005-00435, 2005 WL 3543770 (Mass. Super. Ct. Nov. 17, 2005), and the fuel-oil delivery drivers in *Amero v. Townsend Oil*, No. 07-1080-C (Mass. Super. Court. April 15, 2009) (fuel delivery driver), all worked for businesses who provided those respective services. None of them had purchased a franchise, and none of the defendants was in the business of selling franchises. Those cases are inapposite.

Indeed, while no Massachusetts case has applied prong two to a franchise, the existing case law supports the distinction between a franchisor and a franchise owner. The phrase "usual course of the business" encompasses only those activities that form a regular and continuing part of the alleged employer's business, according to the court in *American Zurich Ins. Co. v. Department of Industrial Accidents*, 21 Mass. L. Rptr. 224 (Mass. Super. Ct. 2006). This is consistent with other jurisdictions adopting the ABC test. *See, e.g.*, *Mattatuck Museum-Mattatuck Historical Soc'y v. Administrator, Unemployment Compensation Act*, 679 A.2d 347, 350-52 (Conn. 1997).

Substantial evidence in the record would allow a reasonable fact finder to conclude that Jani-King franchise owners do not provide service in the usual course of Jani-King's business. The business of Jani-King is the offering for sale of franchises for professional cleaning and maintenance to persons in Massachusetts. (DSOF ¶ 57.)[6] Its employees sell franchises, provide training, generate sales leads, and provide administrative services and support to the franchisees. (DSOF ¶ 58.) Franchise owners, on the other hand, do not sell and support franchises. (DSOF ¶ 59.) They clean commercial buildings for clients. (DSOF ¶ 59.) Whether the plaintiffs perform the cleaning themselves or hire employees to clean, they operate a different type of business from Jani-King. *See Wiebolt v. Metz*, 355 F. Supp. 255, 260 (S.D.N.Y. 1973) (holding that franchise agreements were not securities contracts because "it would seem that the franchised business operated by the franchisee and the franchisor's business of supplying the franchisee with goods and services are separate 'business ventures'") (citation omitted). This evidence precludes summary judgment for plaintiffs on the second prong of § 148B.

### 3. Owners who buy a Jani-King franchise establish an independent business providing the cleaning services they offer.

The third prong requires Jani-King to show that its franchise owners are "customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed." Mass. Gen. L. ch. 149 § 148B. Record evidence shows that the buyers of Jani-King franchises establish an independent business that they control and whose profits (or losses) they realize. Plaintiffs are not entitled to summary judgment on this prong.

---

[6] Similarly, neither Jani-King International nor Jani-King, Inc. directly engage in the business of providing commercial cleaning services. (DSOF ¶¶ 3-4.) They provide administrative and management services to the various operating affiliates—such as Jani-King of Boston. *Id.*

Again here, plaintiffs overreach and advance arguments that would make all franchise owners employees as a matter of law. They point to the fact that Jani-King franchise owners clean under the Jani-King trade name. (Pls.' Br. 12.) But all franchise owners sell products and services using the trademark or brand developed by the franchisor. That is one of the chief benefits of buying a franchise. Plaintiffs likewise point to the use of Jani-King's proprietary methods of cleaning. (Pls.' Br. 12.) But again, all franchise owners use the business method they license from the franchisor. That is another of the key benefits of buying a franchise.

Third, plaintiffs argue that Jani-King franchise owners are subject to a non-compete agreement. This, too, is characteristic of all franchise owners, and it does not make them employees. (DSOF ¶ 50.) Indeed, in *Boulanger*, the Court enforced a non-compete agreement against a franchise owner precisely because "the [owner] was not the defendant's employee." 442 Mass. at 639-42. Instead, the owner had received proprietary information about how to run a Dunkin' Donuts business, and the non-compete agreement was thus "more akin to a sale of business covenant" than an employment covenant. *Id.* Similarly here, franchise owners gain access to Jani-King proprietary cleaning methods and therefore agree in exchange to pay continuing royalties for those benefits as they operate their commercial cleaning businesses. (DSOF ¶ 16.) The *Boulanger* analysis applies to the franchise agreements here, not the analysis of a non-franchise business in the unpublished lower court opinion on which plaintiffs rely. *See Amero*, *supra*.

That franchise owners are bound by their franchise agreements and can operate only under the licensed trade name does not make them employees. Indeed, in 2003, the Supreme Judicial Court directly rejected a similar argument as a "far too stringent [and] literal application" of the third prong, holding that the better question was whether the individual was

"capable of" performing the service to anyone wishing to avail themselves of the service, or whether the individual is compelled to depend on a single employer. *Athol*, 439 Mass. 171 at 179-80.

Not only are Jani-King franchise owners capable of performing their commercial cleaning services for anyone who wants to purchase them: Jani-King encourages them to grow their businesses in this way and to "up sell" additional cleaning services. (DSOF ¶ 32-49.) While Jani-King offers sales leads, franchisees are free to reject them and pursue their own. Indeed, to encourage entrepreneurship, Jani-King does not charge a finder's fee on new clients that franchise owners develop on their own. (DSOF ¶ 17.)

The decision in *Coverall, supra,* does not establish a broad rule transforming franchise owners into employees, as plaintiffs suggest it does. To start, *Coverall* involves the opposite procedural posture of this motion. An administrative agency had already ruled that the plaintiff was an employee, and the Supreme Judicial Court reviewed that decision only for substantial evidence, taking all facts in the light most favorable to the putative employee. 447 Mass. 852 at 853. Here, of course, the Court must take all facts in the light most favorable to Jani-King. Additionally, the *Coverall* plaintiff did not act as a true franchise owner. She had previously been cleaning a nursing home as an employee of another Coverall franchisee, and when that franchisee lost the account, the plaintiff bought a franchise simply to keep her job. *Id.* at 854-55. That account is the only one she ever had. *Id.* Both the customer and *Coverall* supervised her closely; she was required to check in and check out each day and was given a detailed daily task list to complete. *Id.* Coverall ultimately fired her from the account, and that was the last work she did. *Id.* Under these facts, the court concluded "that this individual is not a franchisee," *id.*

at 853 n.2, and emphasized that its opinion was not judging all other individuals affiliated with Coverall. *Id.* at 854 n.4.

A recent post-*Coverall* case illustrates the limits of its holding. In *Commissioner of the Division Of Unemployment Assistance v. Town Taxi of Cape Code, Inc.*, 68 Mass. App. Ct. 426 (2007), the court determined that the taxi drivers at issue were independent contractors (and not employees) because they "were free to find customers on their own and reject prospective customers referred from the dispatcher," making them entrepreneurs. *Id.* at 436.

Here Jani-King has submitted evidence showing that Jani-King franchise owners have even more autonomy than the taxi drivers in *Town Taxi* and are nothing like the individual in *Coverall*. Both named plaintiffs testified that their respective franchise had been offered and accepted more than one account, that no Jani-King personnel supervised them in their cleaning services, and that they could clean their accounts in whatever order they chose and at whatever hours they chose (within constraints specified by the customers). (DSOF ¶¶ 32-49.) In addition, Jani-King franchise owners may solicit accounts and perform cleaning services for any customer that wishes to hire them. (DSOF ¶¶ 32-49.) The taxi drivers had the freedom to choose which shifts to work, just as Jani-King franchise owners have the freedom to decide the schedule by which they clean their accounts. *See Town Taxi*, 68 Mass. App. Court. at 436. Under these facts, taken in the light most favorable to Jani-King, the Court cannot grant summary judgment for plaintiffs on prong three.

## III. JANI-KING DOES NOT HAVE AN EMPLOYMENT RELATIONSHIP WITH THE INDIVIDUALS WHO WERE HIRED BY JANI-KING FRANCHISEES

Plaintiffs define their class as "individuals who have performed cleaning work for Jani-King in Massachusetts any time since January 12, 2004." (*See* Dkt. 91 at 30.) It is ambiguous whether this definition encompasses not only Jani-King franchise owners, but also any person

the owners hired to clean accounts. To the extent that plaintiffs seek summary judgment on behalf of these individuals, summary judgment is inappropriate because plaintiffs have submitted no evidence showing that they perform services for or are controlled by Jani-King.

The individuals hired by Jani-King franchise owners have no relationship with Jani-King, let alone an employment relationship. Jani-King does not know who they are, what their wages are, or what services each worker performs. (DSOF ¶ 53-56.) They are interviewed, hired, supervised, and paid by the franchise owners. (DSOF ¶ 35.) For example, DeGiovanni hired several young women to perform his franchise's cleaning services, as he chose not to clean his franchise's accounts himself. (DSOF ¶ 35.) DeGiovanni and one of his employees—not Jani-King—interviewed and hired these young women. (DSOF ¶ 35.) DeGiovanni—not Jani-King—trained them in how to perform cleaning services. (DSOF ¶ 35.) DeGiovanni—not Jani-King—told them what to clean and when to clean it. (DSOF ¶ 35.) DeGiovanni—not Jani-King—paid them. (DSOF ¶ 35.) It was DeGiovanni—not Jani-King—that exercised day-to-day control over the franchise's operations. The evidence shows that other franchise owners similarly hire, manage, and pay their own employees. This evidence precludes any summary judgment holding that workers of the franchise owners are employees of Jani-King.

## CONCLUSION

For the foregoing reasons, Jani-King respectfully requests that Plaintiffs' Motion for Summary Judgment be denied.

JANI-KING INTERNATIONAL, INC., JANI-
KING, INC. and JANI-KING OF BOSTON, INC.,

By their attorneys,

/s/ Kerry L. Bundy

Kerry L. Bundy (Pro hac vice)
Aaron D. Van Oort (Pro hac vice)
Eileen M. Hunter (Pro hac vice)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)

and

Arthur L. Pressman (BBO #643094)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  October 29, 2009

<u>Certificate of Service</u>

I hereby certify that this Response to Plaintiffs' Motion for Summary Judgment filed

through the ECF system will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF) on October 29, 2009.

/s/ Kerry L. Bundy
Kerry L. Bundy (Pro hac vice)