**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

_____
)
VINCENT DE GIOVANNI, et al.,                     )
and all others similarly situated,                 )
                                                               )
                                                               )
                        Plaintiffs,                        )
                                                               )
            v.                                                )        Docket No. 07-10066-MLW
                                                               )
JANI-KING INTERNATIONAL, INC.,        )        **LEAVE TO FILE GRANTED ON**
JANI-KING, INC. and                              )        **JANUARY 14, 2010**
JANI-KING OF BOSTON, INC.                 )
                        Defendants.                     )
_____ )

**PLAINTIFFS' REVISED REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Jani-King attempts to avoid its clear liability under Mass. Gen. L. c. 149 § 148B

based solely on the fact that it has styled its operation as a so-called franchise

business.  However, Jani-King cannot sidestep the requirements of the Massachusetts

Independent Contractor Law by calling its cleaning workers "franchisees."  The so-

called franchisor-franchisee relationship enjoys no special protections; just as in any

industry, if a so-called franchisor fails to meet the requirements of Mass. Gen. L. c. 149

§ 148B, then its workers have been misclassified.  Moreover, and this cannot be

emphasized enough, Jani-King does not operate a valid franchise business—it sells

low-paid janitorial cleaning jobs to individual workers (many of whom are immigrants

with no prior business experience).  Whether it calls this low-income job-selling a

franchise or something else, the fact is that Jani-King employs these individuals as

cleaning workers, and its failure to classify them as employees violates the

requirements of Section 148B.

1

Jani-King cannot satisfy prong one, prong two, or prong three of the statutory test for employee misclassification (all three prongs of which must be satisfied in order for a company to avoid liability for classifying individuals as independent contractors).  The arguments that Jani-King has raised in opposition to summary judgment are precisely the same arguments that have been raised by defendants in the other cases in which courts have granted summary judgment to Massachusetts plaintiffs under § 148B.  For example, Jani-King's argument that it can satisfy prong two of the statute ("[t]he service is performed outside the usual course of the business of the employer") because it is not a cleaning company but a company that sells franchises is just another incarnation of the argument rejected by the courts in <u>Eastern Connection</u> (defendant argued it was not a courier business but "a marketing logistics corporation") and <u>King Arthur's Lounge</u> (defendant argued that its business was "selling alcohol rather than exotic dancing").  <u>See</u> <u>Fucci v. Eastern Connection Operating, Inc.</u>, Middlesex Civ. A. No. 08-2659 (Mass. Super. 2009) (attached as "Exhibit A"); <u>Chaves, et al. v. King Arthur's Lounge, Inc.</u>, Suffolk Civ. A. No. 07-2505 (Mass. Super. 2009) (attached as "Exhibit B").

Because, on the undisputed factual record, Jani-King cannot satisfy prong two of the statute (or prongs one or three), the Court should grant Plaintiffs' summary judgment motion.

## ARGUMENT

**I.     THE FRANCHISE RELATIONSHIP IS NOT EXEMPT FROM THE REQUIREMENTS OF THE MASSACHUSETTS INDEPENDENT CONTRACTOR LAW.**

Jani-King's policy arguments concerning the virtues of the franchise business model have no place in this dispute.  It argues at length for what would essentially be an exemption for so-called franchisors from the requirements of Massachusetts law.  First of all, just because a company calls itself a franchisor does not automatically mean that the company is a scrupulous, upstanding company with only its so-called franchisees' best interests at heart.  In fact, there has been much public attention paid to the predatory nature of many franchise companies, particularly in the cleaning industry (and, indeed, particularly Jani-King).

In addition to this case, class action lawsuits have been filed by Jani-King cleaning workers in Pennsylvania, Minnesota and California, alleging deceptive business practices and employee misclassification.  See Myers et al. v. Jani-King of Philadelphia, Inc. et al., E.D. Pa. Civil Action No. 2:09-cv-1738; Juarez et al. v. Jani-King of California, Inc. et al., N.D. Cal. Civil Action No. 3:09-cv-03495-SC; Moua et al. v. Jani-King of Minnesota, Inc. et al., D. Minn. Civil Action No. 08-4942.  Moreover, Jani-King's Franchise Disclosure Document reveals that Jani-King is currently embroiled in three other cases involving allegations of fraud, misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and other claims.[1]  (See "Franchise Offering Circular: Jani-King of Boston, Inc." at 5-6, attached as "Exhibit C").

---

[1]     This same disclosure statement reveals that Jani-King has tried or settled over 30 cases in the past ten years, all of them brought against it by franchisees alleging claims for breach of contract,

Jani-King is not the only cleaning franchise company whose business practices have raised concern.  Cases alleging employee misclassification and other claims have been filed against Coverall North America, Inc. and Jan-Pro Franchising International, Inc. as well.  See Awuah et al. v. Coverall North America, Inc., D. Mass. Civil Action No. 1:07-cv-10287-WGY; Machado et al. v. Coverall North America, Inc., D. Mass. Civil Action No. 1:05-cv-11884-MLW; Depianti et al. v. Jan-Pro Franchising International, Inc., D. Mass. Civil Action No. 1:08-cv-10663-MLW.  Indeed, as to Coverall, a company that operates just like Jani-King—selling cleaning work under the guise of a cleaning "franchise—the Massachusetts Supreme Judicial Court has already determined that a so-called Coverall franchisee was in fact an employee.  Coverall North America, Inc. v. Commissioner of the Division of Unemployment Assistance, 447 Mass. 852 (2006).  Coverall could not escape this result by claiming that it is exempt from employee misclassification claims because it calls its workers "franchisees," and Jani-King's efforts to advance such an argument must be rejected as well.

Recently, a Joint Task Force on the Underground Economy and Employee Misclassification established by Governor Deval Patrick has highlighted particular concerns with misclassification in the cleaning industry.  Exec. Order No. 499 (March 12, 2009) (attached as "Exhibit D").  In its recent Annual Report, the Joint Task Force points out:

> In the construction and **cleaning industries**, in particular, we've observed a trend in  misclassification of employees and establishment of sham businesses using immigrant workers to serve as the employer/fall guy, when, in fact, they are simply misclassified employees.

---

promissory estoppel, unjust enrichment, unfair and deceptive business practices, misrepresentation, and other theories of recovery.  (Ex. G at 7-21).

Joint Task Force on the Underground Economy and Employee Misclassification, Annual

Report June 2009, at 7 (attached as "Exhibit E") (emphasis added), citing

Massachusetts Attorney General's Office.

The fact is that Jani-King is not a valid franchise business, and its efforts to

compare its business model to that of McDonald's and other traditional franchise

companies are unavailing.  McDonald's sells a small business to its franchisees—they

operate their own stores in their own way, relying on McDonald's only for support as to

the *products* sold.  Jani-King, on the other hand, is simply selling *work*, and low-paid

manual work at that.  Jani-King's business model is akin to if an individual McDonald's

store sold the opportunity to work as a cashier at its store, called it a "franchise,"

charged money for the opportunity, and deducted large percentages from the cashiers'

monthly wages.

If policy is to enter into this matter at all, the Court should consider the policy

pronouncements of the Commonwealth in enacting and enforcing what is likely the

strongest law in the nation prohibiting the misclassification of workers as independent

contractors. See Pls.' Mem., Exs. D-F.  The force of this policy is evidenced by the strict

liability nature of Section 148B.  See Somers v. Converged Access, Inc., 454 Mass.

582, 590-91 (2009) (Section 148B "is a strict liability statute" in that none of the prongs

of the test "speaks of the employer's intent; rather, all speak of the nature of the service

provided.").  Indeed, there is no reason that Jani-King's choice to do business as a so-

called "franchisor" should be relevant to the Court's consideration of this matter.

Jani-King's citation to cases regarding the franchisor-franchisee relationship in

entirely different contexts is irrelevant to the question of its liability for violation of

Massachusetts' independent contractor misclassification law.[2]  It relies heavily of a number of cases that involved claims that happened to have arisen in the context of a franchisor-franchisee relationship, but those cases are inapposite, as none of them involved a claim of employee misclassification or indeed any challenge at all to the validity of the franchise relationship.  Jani-King has taken grossly out of context statements in those cases comparing the franchise relationship to an employment relationship.

For example, the case on which Jani-King relies most heavily, Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635 (2004), concerned a franchisee's challenge to a non-competition provision in his franchise agreement.  The franchisee did not argue that his relationship with Dunkin' Donuts was an employment relationship nor did he challenge the validity of the franchise relationship.  Instead, the court considered in that case whether a (valid, unchallenged) franchise relationship was more akin to an employment relationship or a business relationship for purposes of deciding the enforceability of the non-competition provision ("courts look 'less critically'" at non-competition provisions in business covenants, id. at 639).  Jani-King's assertion that the court enforced the non-competition provision in Boulanger "because 'the [owner] was not the defendant's employee' and the non-compete agreement was 'more akin to a

---

[2]     So, too, is the fact that Jani-King's franchise agreements contain "releases" purportedly obviating Jani-King's liability for certain claims.  As a matter of law, individuals cannot waive their rights under the Commonwealth's wage and employment status statutes. The rights protected by M.G.L. c. 149, § 150, which include employment status under Section 148B and wage rights under Section 148, cannot be waived or contracted away.  The Wage Act specifically provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself . . . from section one hundred and fifty," which provides a private right of action for wage violations.  Mass. Gen. L. c. 149, § 148.  The same is true of the claims under Massachusetts' Unfair and Deceptive Business Practices statutes, M.G.L. c. 93A. Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 378 (concluding that it "ordinarily would not effectuate a *consumer's* waiver of rights under c. 93A"); cf., J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F.Supp.2d 119 (D. Mass. 2005) (party cannot waive the applicability of a statute that was designed to protect the general public as well as themselves).

sale of a business covenant' than an employment covenant," (Defs.' Opp. at 1), is a gross misreading of that case.  The court in Boulanger simply analyzed the non-competition agreement, applying the usual factors, and concluded that the particular agreement was enforceable under the circumstances.  Id. at 639-49.  There was no challenge to the validity of the franchise relationship in that case, and the court never made a determination that franchise relationships (either as a general matter or on the facts of that case) are or are not in fact employment relationships.  The Boulanger case has absolutely no relevance whatsoever to this case.

Jani-King similarly miscites Coworx Staffing Services, LLC v. Coleman, 22 Mass. L. Rptr. 166, 2007 WL 738913 (Mass. Super. 2007).  The court in Coworx did not "refuse[] to treat a franchise owner as the franchisor's employee for purposes of vicarious liability," as Jani-King claims.  Defs.' Opp. at 2.  As in Boulanger, no party in Coworx argued that the franchise relationship was in fact an employment relationship.  The question was simply whether the theory of *respondeat superior* liability could apply in an admitted, unchallenged franchisor-franchisee relationship.  The out-of-state case of Kerl v. Dennis Rasmussen, Inc., 682 N.W.2d 328 (Wis. 2004), is similarly irrelevant.  There was no challenge in Kerl to the validity of the franchise relationship.  The question there was the same as that in Coworx, regarding the application of the theory of *respondeat superior* liability to a valid and unchallenged franchisor-franchisee relationship.

Unlike in Boulanger, Coworx, Kerl and the other cases cited by Jani-King, Jani-King's relationship with its cleaning workers is not a valid franchise relationship.  As set forth in Plaintiffs' summary judgment briefing and in this brief, Jani-King cannot satisfy

all three prongs of Section 148B, and its cleaning workers have therefore been misclassified as independent contractors/franchisees.  As such, courts' observations about the similarities and differences between *valid, unchallenged* franchise relationships and employment relationships are of no moment.

## II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE JANI-KING CANNOT SATISFY ALL THREE PRONGS OF SECTION 148B IN ORDER TO JUSTIFY CHARACTERIZING ITS CLEANING WORKERS AS INDEPENDENT CONTRACTORS.

### A.   Jani-King has misstated the standard for determining employment status under Section 148B.

In two significant ways, Jani-King has misstated the standard to be applied in determining whether there has been a Section 148B violation.  First, Jani-King claims that "[t]his three-part inquiry [under Section 148B] is often so fact-intensive as to preclude summary judgment."  (Defs.' Opp. at 8).  In fact, the independent contractor misclassification question is unquestionably appropriate for consideration on summary judgment, as the relevant factual issues tend to concern the company's own admissions.  Indeed, here Plaintiffs rely entirely on Jani-King's own statements in its franchise agreements and other documents, *all of which Jani-King has admitted*.[3] Moreover, as explained in Plaintiffs' motion, all of the Massachusetts courts to consider this issue on summary judgment under the new statute have held that the plaintiff-workers were entitled to summary judgment.  (See Ex. A; Ex. B).

The cases cited by Jani-King in its effort to convince the Court that the misclassification question cannot be decided on summary judgment are completely

---

[3]    Plaintiffs included only twenty factual statements in support of their summary judgment motion.  In responding to Plaintiffs' factual statements, Jani-King has admitted all of the statements about its dealings with its cleaning franchises and has denied certain aspects of Plaintiffs' statements only for the purpose of putting its own spin on the undisputed facts.

inapposite—they concern different statutes, different fact patterns, and different legal issues.  First, in <u>Vargas v. Cummings</u>, the issue was whether the plaintiff was an employee of the government for purposes of determining whether Puerto Rico's statute granting immunity to government workers would apply to him for purposes of a medical malpractice claim.  149 F.3d 29, 36 (1st Cir. 1998).  Moreover, the court in <u>Vargas</u> did not, as Jani-King suggests, hold that the determination of employment status was usually too fact-intensive for summary judgment; it simply concluded that "the assembled facts [in that particular case] do not dictate a conclusion that the defendant functioned as an employee of the Department. . ."  <u>Id.</u>  Jani-King's citation to the <u>Vargas</u> case as support for the proposition that Section 148B requires a fact-specific inquiry precluding summary judgment is shockingly misleading.

In <u>Bolen v. Paragon Plastics, Inc.</u>, the considered the employee/independent contractor issue in the context of the defendant's argument that the plaintiff was an employee, not an independent contractor, and therefore could not bring a Chapter 93A claim.  754 F. Supp. 221, 228 (D. Mass. 1990).  The court did not hold that the question could not be determined on summary judgment as a general matter, only that "there is no indication in the material submitted by Beinhocker as to Paragon's right to control Bolen."  <u>Id.</u>  Moreover, the case is also inapposite as it was decided in 1990, prior to the enactment of Section 148B (and over a decade before the enactment of the statute in its current form).[4]

---

[4]      Jani-King has also cited <u>Weston v. Town of Middleborough</u> for the proposition that "[w]hether an individual is an employee or an independent contractor is usually a question of fact."  14 Mass. L. Rptr. 323, 2002 WL 243197, at *17 (Mass. Super. 2002) (cited at Defs.' Opp. at 5-6).  However, that case did not concern § 148B and instead looked at a ten-factor balancing test that is substantially more fact-intensive than Section 148B.

Jani-King has also attempted to create a threshold requirement under Section 148B, arguing that the statute only protects "an individual performing services *for another*" and "Jani-King franchise owners do not perform services for *Jani-King*, they perform services for clients on their own behalf." (Defs.' Opp. at 6). This argument is preposterous—Jani-King requires the workers to pay exorbitant sums of money to get cleaning jobs; Jani-King solicits the cleaning jobs and then offers them to the workers; the workers perform the cleaning work; then Jani-King bills the clients for the workers' service and pays the cleaning workers after making numerous deductions from their wages. Of course the cleaning workers are performing services for Jani-King—otherwise, why is Jani-King soliciting the work, assigning it to the workers, receiving the money from the clients, and taking a hefty percentage?

In any event, the statute does not contain any threshold requirement that the services be proven to be performed "for another," in this case, Jani-King. The statute states that "***an individual performing any service***, except as authorized under this chapter, shall be considered to be an employee under those chapters unless" all three prongs of the statute have been satisfied. Mass. Gen. L. c. 149 § 148B(a).[5] If the company fails to satisfy any of the three prongs of the statute, then the individual is the company's employee. If the individual is not performing services for that company, *i.e.*, he or she is doing work for another third party, then of course the company would

---

[5]    Jani-King also misleadingly argues: "to use the nomenclature of § 148B, the franchise owners provide 'services on their own behalf.'" (Defs.' Opp. at 8). That phrase appears nowhere in § 148B, and Jani-King's argument is nothing more than an effort to take the Court's attention away from the statute's straightforward three-pronged test.

satisfy all three prongs of Section 148B.[6]  Jani-King's attempt to include a threshold

"services for another" requirement is just a red herring, designed to distract the Court

from the fact that Jani-King cannot satisfy the requirements of the statute.

> **B.      Jani-King cannot satisfy prong one of Section 148B because the cleaning workers are not "free from control and direction in connection with the performance" of cleaning services for Jani-King's clients.**

Though admitting that "it reserves control over franchise owners' business

methods," (Defs.' Opp. at 9), and not disputing the assertions in Plaintiffs' summary

judgment filing regarding the numerous ways in which Jani-King controls its cleaning

workers' work, Jani-King attempts to evade prong one of the statute by asking the Court

essentially to create a franchise exemption to the requirements of Section 148B.  It

attempts to distinguish the cases cited by Plaintiffs in which courts have granted

summary judgment to plaintiffs on this prong, arguing that those cases do not involve

"the controls that a franchisor exercises over the franchised product or service and the

methods of providing it."  (Defs.' Opp. at 9).  For several reasons, Jani-King's argument

as to prong one has no merit.

First, prong one does not contain a franchise exemption, nor should it.  As with

any other business, the issue is whether the relationship is an employer-employee

---

[6]      Jani-King appears to attempt to foist liability on its own clients, arguing: "If anything, the clients—not Jani-King—would 'employ' the services of the franchise owners."  (Defs.' Opp. at 6).  Not surprisingly, there is nothing in Jani-King's standard cleaning contract, nor its promotional materials, suggesting that companies that choose to use Jani-King to clean their facilities risk being determined to be employers of Jani-King's cleaning workers under § 148B.  In fact, Jani-King's standard contract indicates the opposite:

> It is expressly agreed that Jani-King will select and designate all personnel to perform its obligations under this Agreement . . .   Jani-King and any of its personnel are not employees of Client but are independent contractors . . .

See Exhibit 5 at § 3.1 to Plaintiffs' Response to Defendants' Statement of Material Facts.

relationship (regardless of whether it is called an independent contractor relationship or a franchisor-franchisee relationship or something else). Indeed, though Jani-King attempts to analogize the control it exerts over its cleaning workers to control typically exercised by a franchisor over a "franchised product or service," Jani-King's business model is a far cry from that of a valid franchisor that sells its franchised product. The so-called "franchised . . . service" that Jani-King purports to sell is nothing more than the janitorial work of its so-called franchisees, and the control it exerts over that work is the control of an employer over its employees.

There can be no question that Jani-King exerts control over its cleaning workers' work such that it cannot satisfy prong one. Jani-King obtains the cleaning clients; Jani-King, not the cleaning worker, enters into the contracts with the clients;[7] Jani-King decides to which cleaning workers it will offer the opportunity to provide cleaning services to its clients; Jani-King monitors the workers' performance and decides whether to take clients away from them; and so on.[8]

---

[7]     This is significant—it is Jani-King that enters into contracts with customers, not their allegedly independent "franchisees." All billing and collection is handled by Jani-King, who claims ownership of all money paid by customers and only pays franchisees for their work after-the-fact. (Exhibit 5 at § 4.7 to Plaintiffs' Response to Defendants' Statement of Material Facts). This is nothing like the relationship between franchisee and franchisor of the dining establishments with which Jani-King wishes to be compared (e.g., McDonald's), where there is a direct relationship between the franchisee and the customer with no intervention by the franchisor.

[8]     Indeed, even under the vicarious liability standard that Jani-King urges the Court to adopt, Defs.' Opp. at 9-10, it cannot satisfy prong one. As the court in Coworx explained, the issue for vicarious liability is "whether the franchisor exercised control over the day-to-day operations of the franchisee *or controlled through the franchise agreement the instrumentality which caused the harm*." 2007 WL 738913, at *5 (emphasis added). Here, as set forth in more detail in Plaintiffs' original motion papers, Jani-King entirely controls "the instrumentality which caused the harm"—the business model by which it sells cleaning work to its so-called franchisees at exorbitant sums and deducts excessive fees from the worker' pay for that work.

Moreover, even if Jani-King is correct that its so-called franchise relationship does not establish sufficient control for it to be an employer under prong one, that says nothing about its ability to satisfy prongs two and three. Control is only one of three factors, and Jani-King would have to satisfy them all in order to avoid liability under § 148B.

**C.      Jani-King cannot satisfy prong two of Section 148B because the service performed by the cleaning workers is not "performed outside the usual course of [Jani-King's] business."**

Jani-King insists that it is not a cleaning company, but a franchising company. This is a semantic distinction that makes no difference for purposes of § 148B and only highlights the problem that the Attorney General has identified – cleaning companies' establishment of "sham businesses using immigrant workers to serve as the employer/fall guy, when, in fact, they are simply misclassified employees."  (Ex. F at 7).

Jani-King simply cannot honestly assert that it is not in the commercial cleaning business.  For example, the evidence establishes, <u>inter</u> <u>alia</u>, that Jani-King:

- Markets itself as a cleaning company (the "King of Clean") and as "the world's largest commercial cleaning franchise company." (Docket No. 98, Pls.' Fact. Stmt. at ¶¶ 2-3; Pls.' Resp. to Defs.' Fact Stmt. at ¶¶ 1, 3);

- Pitches its cleaning services to potential clients and provides proposals for those services. (Docket No. 98, Pls.' Fact. Stmt. at ¶¶ 1-2);

- Enters into contracts with customers to provide cleaning services. (Docket No. 98, Pls.' Fact. Stmt. at ¶¶ 11-12; Pls.' Resp. to Defs.' Fact Stmt. at ¶ 8).

Though Jani-King insists that its argument—that it is a franchising company, not a cleaning company—distinguishes it from the several Massachusetts cases in which summary judgment has been granted to plaintiffs under Section 148B, in fact the

defendants in several of these cases made very similar arguments to Jani-King's, all of which were rejected.  In <u>Eastern Connection</u>, the defendant argued that it was not a courier business but "a marketing logistics corporation which outsources transportation needs for customers," an argument that the court soundly rejected, granting summary judgment to the plaintiffs on prong two.  (Ex. A).  In <u>King Arthur's</u>, the defendant argued that "its 'usual courts of business . . . is selling alcohol rather than exotic dancing.'"  (Ex. B).  The court granted summary judgment to the plaintiffs on prong two, holding:  "this Court is satisfied that the facts establish that King Arthur's is in the business of providing adult entertainment . . . and that the exotic dancers work in the furtherance, or the course, of that business."  (<u>Id.</u> at 7).  Jani-King's argument that its business "is the offering for sale of franchises for professional cleaning and maintenance," as opposed to providing cleaning services, is the very same type of argument that the courts in <u>Eastern Connection</u> and <u>King Arthur's</u> properly rejected.

In <u>Rainbow Development, LLC v. Com., Dept. of Industrial Accidents</u>, the court held that the company did not satisfy prong two, observing:  "The workers are engaged in the exact business Auto Shine is engaged in; Auto Shine merely provides the administration. . .  Without the services of the workers, Auto Shine would cease to operate."  2005 WL 3543770 at *3 (Mass. Super. 2005).  Jani-King is in precisely the same situation—its business relies on the income it receives from the work provided by its cleaning "franchisees."  If these "franchisees" stopped providing cleaning services to Jani-King's clients, Jani-King "would cease to operate."  <u>Id.</u>  Indeed, Jani-King has conceded as much, explaining that Jani-King "advertises cleaning services" and those cleaning services are provided by "[t]he franchise owners."  (Defs.' Opp. at 13-14).

Without the cleaning services provided by the franchisees, Jani-King could not operate because it could not ensure that the cleaning services it advertises were provided to its clients.

The fact is that Jani-King exists to provide commercial cleaning services. That it does this through "franchisees" rather than employees is irrelevant for purposes of §148B. Jani-King's argument that "it is in the business of franchising, while its franchise owners are in the separate business of providing commercial cleaning services," (Defs.' Opp. at 12), is nothing more than an after-the-fact recharacterization of its business that ignores reality. Indeed, Jani-King's argument highlights why the statute is so important. If companies such as Jani-King could escape liability under Massachusetts law simply by providing their core services through "franchisees," the statute would be rendered meaningless.

**D.      Jani-King cannot satisfy prong three of Section 148B because its cleaning workers are not "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."**

As set out above, Jani-King contracts with customers to provide cleaning services and hires "franchisees" to service those customers. In doing this, Jani-King demands of its "franchisees" the same, if not greater, exclusivity and loyalty that any employer requires of its employees. It requires franchisees to enter into non-competition agreements that bind them for the term of the relationship and after. (See Ex. 6 at § 5 to Pls.' Resp. to Defs.' Fact. Stmt.). The effect of this non-competition agreement is that Jani-King cleaning workers cannot be "engaged in an independently established trade, occupation, profession or business of the same nature"; they are not allowed to perform cleaning work for any entity that is not a Jani-King client. These

circumstances are precisely like those of <u>Amero v. Townsend Oil</u>, where the court

granted summary judgment for the under this prong of the test based on the employer's

requirement of a noncompetition agreement—"Amero did not provide fuel oil delivery

services to anyone independent of Townsend, ***nor could he*** have given the non-

competition agreement Townsend required him to sign." (Ex. C at 5-6 to Pls.' Mem.).

This fact alone is sufficient for a finding against Jani-King.

     Jani-King's efforts to avoid the impact of its strict non-competition agreement are

unavailing. First, it once again attempts to analogize this case to <u>Boulanger</u>, incorrectly

arguing that "the Court enforced a non-compete agreement against a franchise owner

precisely because 'the [owner] was not the defendant's employee.'" (Defs.' Opp. at 16).

In fact, as explained in Section I, <u>supra</u>, there was no dispute in <u>Boulanger</u> as to

whether the plaintiff was an employee or a franchisee/independent contractor. Unlike

this case, <u>Boulanger</u> involved a real franchise relationship, where the franchisor sold the

business model, as opposed to selling cleaning work.[9] The fact that a non-competition

agreement in a valid franchise relationship may be enforceable says nothing about how

Jani-king's non-competition agreement, which prevents the cleaning workers from doing

work for anyone that is not a Jani-King client, impacts the application of prong three.

     Jani-King misleadingly argues that its franchisees are "capable of performing

their commercial cleaning services for anyone who wants to purchase them" and that

"Jani-King encourages them to grow their businesses in this way and to 'up sell'

additional cleaning services." (Defs.' Opp. at 17). What Jani-King has avoided

---

[9]     Moreover, the court in <u>Boulanger</u> did not enforce the non-competition agreement because the plaintiff was not an employee; it enforced the agreement after applying the relevant factors and determining that the agreement in question was fair. 442 Mass. at 639-49.

mentioning here is that any clients that the cleaning workers obtain must become Jani-King clients—they must sign contracts with Jani-King for the provision of cleaning services, and they must be billed through Jani-King, which takes all of its deductions before remitting payment for the cleaning work to the workers.  (Docket No. 98, Pls.' Fact. Stmt. at ¶¶ 15-16).  As evidence of its benevolence to the cleaning workers, Jani-King points out that, "in order to encourage entrepreneurship, Jani-King does not charge a finder's fee on new clients that franchise owners develop on their own," (Defs.' Opp. at 17), but it does not deny that the franchisees are still charged all of Jani-King's other excessive monthly fees on these clients (e.g., the 3% "accounting fee" and the 1% "advertising fee") (Ex. 6 at §§ 4.5.2, 4.7, to Pls.' Resp. to Defs.' Fact. Stmt.).

Any client obtained by a Jani-King cleaning worker becomes a Jani-King client. This only reaffirms that Jani-King's workers are not engaged in an "independently established" business, and the company therefore cannot satisfy prong three.  Notably, Jani-King's own citation to Athol confirms its failure to satisfy prong three here.  It notes that the SJC held in Athol that the relevant question under prong three "was whether the individual was 'capable of' performing the service to anyone wishing to avail themselves of the service, or whether the individual is compelled to depend on a single employer." (Defs.' Opp. at 16-17, quoting Athol, 439 Mass. at 179-80).  While the individuals delivering newspapers in Athol were permitted "to deliver newspapers (or other publications, such as advertising flyers) for anyone who wishes to contract with them, even competitors of the News," 439 Mass. at 182 (emphasis added), Jani-King's cleaning workers can provide services only to clients who are also Jani-King clients; they are prohibited from working for any other cleaning company.  As such, Jani-King's

cleaning workers cannot perform cleaning services "to anyone wishing to avail themselves of the service."  They are "compelled to depend on" Jani-King, without which they could not receive any payment for their cleaning work.

Jani-King also attempts to distance itself from the <u>Coverall</u> case, which involved a cleaning franchise company that operates in exactly the same manner as Jani-King does.  Its main argument as to why that decision is inapplicable is that the Coverall cleaning worker "did not act as a true franchise owner."  (Defs.' Opp. at 17).  That is exactly Plaintiffs' point here:  Jani-King's cleaning workers are not "true franchise owner[s]" either.  Jani-King's other arguments attempting to distinguish Coverall focus more on the issue of control, which goes to prong one, not prong three.

As the SJC explained in <u>Coverall</u>, in applying prong three, the Court must "determine 'whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise.'" 447 Mass. at 858, <u>quoting Boston Bicycle Couriers, Inc. v. Deputy Director of the Div. of Employment & Training</u>, 56 Mass. App. Ct. 473, 480 (2002).  In <u>Coverall</u>, not only was the cleaning worker "required to allow Coverall to negotiate contracts and pricing directly with clients [and] bill clients," but "[e]ven if the claimant was capable of being an 'entrepreneur' and expanding her own business as Coverall suggests, it is undisputed that the growth of her own business inevitably expanded Coverall's clientele base, as each new 'client' became a Coverall client."  <u>Id.</u> at 859.  The undisputed facts here establish that the cleaning workers' relationship with Jani-King is exactly like the relationship described in <u>Coverall</u>:  Jani-King negotiates the contracts and pricing; Jani-King bills the clients; and any new client obtained by a cleaning worker would "inevitably expand[] [Jani-King]'s

clientele base, as each new 'client' [becomes] a [Jani-King] client." Id.; Ex. 9 at 20, 50,

62 to Pls.' Fact. Stmt. (contracts that franchisee obtains on her own are subject to Jani-

King approval and bidding policies); Ex. 6 at § 5 to Pls' Resp. to Defs.' Fact. Stmt.

(prohibiting franchisees from performing cleaning work other than for Jani-King).

Accordingly, contrary to Jani-King's argument, the Coverall case is directly on point

regarding Jani-King's liability under prong three of the statute.

     The case cited by Jani-King in support of its argument, Commissioner of the

Division of Unemployment Assistance v. Town Taxi of Cape Cod, Inc., in fact supports

granting summary judgment to Plaintiffs on prong three here.  In that case, the court

affirmed the agency's decision that the company satisfied prong three based on the

following evidence of the taxi drivers' ability to work "in an independently established

trade, occupation, profession or business of the same nature as that involved in the

service performed":

> Upon obtaining a hackney license, the drivers could open their own taxi
> service or drive for another service. They were free to find customers on
> their own and reject prospective customers referred from the dispatcher.
> Town Taxi permitted them to engage in other employment or generate
> their own businesses while using the leased taxi, and many did so.

68 Mass. App. Ct. 426, 432 (2007).  In contrast, Jani-King workers could not open up

their own cleaning business or work for another cleaning company—that is explicitly

prohibited by Jani-King's strict non-competition agreement.  Though they are permitted

to find customers on their own, those customers become Jani-King's customers too, just

as in Coverall.

     The undisputed facts establish that Jani-King's cleaning workers are not involved

in any independently established cleaning business—they rely entirely on Jani-King for

their work and, indeed, are prohibited from working for any other cleaning company under Jani-King's non-competition provision.  As such, Jani-King cannot satisfy prong three.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' original memorandum in support of its summary judgment motion, the Court should grant Plaintiffs' summary judgment motion on Jani-King's violation of Mass. Gen. L. c. 149 § 148B.


Respectfully submitted,


VINCENT DeGIOVANNI, MARIETTE BARROS, et al., and all others similarly situated,

By their attorneys,


 /s/  Hillary Schwab_____
Shannon Liss-Riordan (BBO #640716)
Hillary Schwab (BBO #666029)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
**DATED:**  January 14, 2010        (617) 994-5800

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, a copy of this document was served by electronic filing on all counsel of record.


 /s/  Hillary Schwab_____
Hillary Schwab, Esq.