```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS

                                            Civil Action
                                            No. 07-10066-RCL

      * * * * * * * * * * * * * * * * *
      VINCENT DE GIOVANNI,              *
      MARIETTE BARROS, and all others   *
      similarly situated,               *
                                        *
                  Plaintiffs,           *
                                        *
      v.                                *   MOTION HEARING
                                        *
      JANI-KING INTERNATIONAL, INC.,    *
      JANI KING, INC. and               *
      JANI-KING OF BOSTON, INC.,        *
                                        *
                  Defendants.           *
      * * * * * * * * * * * * * * * * *

                  BEFORE:  The Honorable William G. Young,
                                  District Judge

      APPEARANCES:

                  PYLE, ROME, LICHTEN, EHRENBERG &
            LISS-RIORDAN, P.C. (By Shannon E. Liss-Riordan,
            Esq., Hillary A. Schwab, Esq. and Alexander M.
            Sugerman-Brozan, Esq.), 18 Tremont Street, Suite
            500, Boston, Massachusetts 02108, on behalf of the
            Plaintiffs

                  NIXON PEABODY LLP (By Arthur L. Pressman,
            Esq.), 100 Summer Street, Boston, Massachusetts
            02110
                  - and -
                  NIXON PEABODY LLP (By Christopher M. Mason,
            Esq.), 437 Madison Avenue, New York, New York
            10022 on behalf of the Defendants


                                            1 Courthouse Way
                                            Boston, Massachusetts

                                            May 21, 2009
```

1        **THE CLERK:** Calling Civil Action 07-10066,
2    DeGiovanni v. Jani-King.
3        **THE COURT:** Good afternoon.  Would counsel identify
4    themselves.
5        **MS. LISS-RIORDAN:** Good afternoon, your Honor.  For
6    the plaintiffs, Shannon Liss-Riordan, Hillary Schwab, and
7    Alex Sugerman with them.
8        **MR. PRESSMAN:** And for the defendants, Arthur
9    Pressman and Chris Mason, your Honor.
10       **THE COURT:** Good afternoon.
11       All right.  Now, there really are two motions here,
12   the motion of the defendants to dismiss on jurisdictional
13   grounds and the plaintiffs' motion for class certification.
14       So let's hear the defendants briefly on the motion
15   to dismiss.
16       **MR. PRESSMAN:** Thank you, your Honor.
17       The motion to dismiss is brought on behalf of
18   Jani-King International and Jani-King, Inc., your Honor.
19   The evidence is clear that there is no allegation of any
20   representation by either of these defendants with respect to
21   any of the two class members or indeed any other putative
22   class member.  Neither of these defendants is a party to the
23   franchise agreement.  The fact that Jani-King International
24   may have drafted in Texas a franchise agreement that
25   subsequently gets used by other parties is not sufficient

```
 1    for either general or specific jurisdiction.  It's frankly
 2    no different than if a law firm drafted in Texas or
 3    elsewhere a franchise agreement and someone else used it.
 4              The fact that some of the directors are the same
 5    also is of no moment because the Court has a very high
 6    regard for the corporate separateness of duly constituted
 7    corporations, and there's no evidence that there's any
 8    irregularity with respect to that.
 9              THE COURT:  Let me ask you this.  Suppose, just for
10    discussion sake, that their motion for class certification
11    is allowed.  Does that change things?
12              MR. PRESSMAN:  I don't see that it does, your
13    Honor, to be honest.  Jurisdiction is a threshold issue.  If
14    indeed there's no jurisdiction, there is no jurisdiction.
15    And that supposition hopefully just doesn't --
16              THE COURT:  Well, what I'm, what I'm thinking about
17    is, suppose so much of their motion for class certification
18    as depends upon their claim of unfair business practices.
19              Now, help me out here.  How broad a class do you
20    want on that?
21              MS. LISS-RIORDAN:  In this case we're seeking a
22    class of everyone in Massachusetts.
23              THE COURT:  Just Massachusetts.
24              MS. LISS-RIORDAN:  Yes.
25              THE COURT:  Thank you.
```

1           **MS. LISS-RIORDAN:** Yes.
2           **THE COURT:** I appreciate your candor. All right.
3           And so, at most we're talking Massachusetts class
4    and you say --
5           **MR. PRESSMAN:** Right.
6           **THE COURT:** -- that doesn't reach your people.
7           **MR. PRESSMAN:** It doesn't. Because the franchisees
8    in Massachusetts only have contracts with Jani-King of
9    Boston.
10          **THE COURT:** Okay. I think, I think I understand.
11          Now, let's go on the motion to exercise personal
12   jurisdiction, and then we'll move from there into class
13   certification.
14          Yes, Ms. Liss-Riordan.
15          **MS. LISS-RIORDAN:** Yes. Your Honor, I believe we
16   have shown overwhelming evidence of Jani-King
17   International's involvement in relationships with the
18   Massachusetts franchisees and interrelationships with the
19   activities of Jani-King of Boston. I mean, essentially all
20   of this evidence we've put forth shows that Jani-King of
21   Boston acts as the regional office for Jani-King here in
22   Massachusetts. Eighty percent of the profits from the
23   franchise relationships go to Jani-King International.
24          **THE COURT:** But is it a piercing the corporate veil
25   argument? In essence, that these are really one entity. Is

1    that your argument?
2        **MS. LISS-RIORDAN:**  They are essentially one entity,
3    yes.
4        **THE COURT:**  And that's your argument.
5        **MS. LISS-RIORDAN:**  Yes.
6        **THE COURT:**  All right.  Now, candidly, I grabbed
7    onto this case on the other end.  I grabbed onto the class
8    certification end.  I'm going to take this jurisdiction
9    under advisement.  If my rulings on jurisdiction come back
10   to haunt me with respect to my rulings on class
11   certification, I'll revise that.
12        Now, on class certification.  You've got two
13   approaches to class certification, unfair business practices
14   and then this employee classification.  I think you're
15   stronger on the latter than the former, so why don't you
16   argue the former.
17       **MS. LISS-RIORDAN:**  Certainly.  The unfair business
18   practices?
19       **THE COURT:**  Yes.  And the problem is, and we've
20   faced this in like cases before, that it does seem to me
21   that you have to do an individual calculus about what
22   representations were made to what people and what reliance
23   there was, things like that.
24       **MS. LISS-RIORDAN:**  Right.  No, your Honor, we're
25   specifically not relying on that to certify the class under

```
 1   93A and then the similar common law claims.  Significantly,
 2   93A does not require reliance.  So, that's not a
 3   consideration that should impede class certification with
 4   respect to that claim.  We are looking at the way the whole
 5   franchise system operates much of which, if not all of
 6   which, can be discerned from the franchise agreement itself.
 7   We have multiple attacks on how it is unfair as spelled out
 8   in the agreement.  What people are signing here is a 20-year
 9   agreement for which a promise is made to provide a certain
10   amount of cleaning work for a year.  That itself we would
11   contend is an unfair business practice.  People are putting
12   up thousands and thousands of dollars in order to obtain
13   cleaning work, and the cleaning work is promised in the
14   franchise agreement, because what people are buying is the
15   right to use monthly accounts.
16           Now, the way that Jani-King does not provide this
17   business is manifested in a whole lot of different ways.
18   They churn the accounts from one franchisee to another.
19   They take accounts away.  They don't provide -- okay.  But
20   what we've got --
21           **THE COURT:**  I've read it.  But now let me ask a
22   question.
23           **MS. LISS-RIORDAN:**  Yes.
24           **THE COURT:**  The contract may be uniform among the
25   class members, but the violation, the unfair business
```

1   practice would seem to be individualized.  You say they
2   don't provide.  Well, they may not have provided so much to
3   this person, but they provided some more to that person.
4          Do you see the difference?
5          **MS. LISS-RIORDAN:** Right.  Which is why what we're
6   focused on, very significant is an attachment to the
7   affidavit of our lead plaintiff.  It was submitted as an
8   exhibit to, the first exhibit in our motion for class
9   certification.  We have a spreadsheet that was obtained from
10  the Jani-King of Boston office that lists all the
11  franchisees at the time, how much business they were
12  supposed to be getting per month and how much they were
13  actually getting.  Not a single person on that list was
14  getting the amount of monthly business that they were
15  supposed to be getting.
16         So, our allegation is that Jani-King is selling
17  franchises that it doesn't have.  It's collecting franchise
18  fees by promising business that it does not have enough
19  business in order to satisfy these guarantees that are being
20  made to people.  That's the consistency.  That's why, even
21  though it may be reflected differently in the way the
22  situation plays out with different franchisees, they're
23  selling something they don't have.
24         **THE COURT:** Do you agree that if I were to certify
25  a class on this theory it would be a class only for the

1   imposition of liability generally.  There's going to have to
2   be individualized hearings about the extent of the damages
3   which would then go into what the shortfall was.  If I
4   accept what you say.
5           **MS. LISS-RIORDAN:**  Absolutely.  And the law is
6   crystal clear from the First Circuit, of course, that
7   differences in damages, individualized inquiries on damages
8   should not defeat certification and there can be
9   mini-hearings, there are creative ways of resolving
10  individualized damages inquiries later.
11          And also the amount of business promised us, that's
12  one of the major allegations we have, but there are also
13  numerous complaints spelled out in our papers that can be
14  referenced by the agreement itself.  There are fees,
15  excessive fees and deductions that are made from, as a
16  matter of course from the franchisees' checks which we
17  contend are 93A violations as well as violations of the
18  various common law --
19          **THE COURT:**  It's going to have to be as matter of
20  course, correct?
21          **MS. LISS-RIORDAN:**  Yes.  Yes.  And that's what
22  we're relying on, the ones that are done as a matter of
23  course.
24          **THE COURT:**  If I were to go for this, I always try
25  to be transparent, and it may, since this is Judge Lindsay's

```
 1   case, there's only one chance out of ten that I'm going to
 2   be the judge who actually tries it, so I've got to be very
 3   clear, if I even go for this, what I'm doing.  And I don't
 4   want you to get trapped.  In my mind, if I go for it on some
 5   uniform theory of liability and that's what makes the, the
 6   class aspects predominate and warrants class treatment, then
 7   you're not going to be able, as to liability, to get into
 8   some individualized they made me a promise and didn't come
 9   through.
10           You understand that?  You recognize that?
11           MS. LISS-RIORDAN:  I understand that.  What we
12   would be focusing on for liability purposes are the common
13   course of dealing, the common course of conduct.  Yes.
14           THE COURT:  And all I'm saying back to you is it's
15   got, and I would have to search for some form of words, it
16   would have to be common course of dealing.  So if there's
17   some -- let's say you've got plaintiff F, or class member F.
18   Now, class member F got royally shafted by this flagrant
19   misrepresentation which, however, is unique to class member
20   F.  Class member F's in this, in this class.  If I go for
21   this common course of dealing, we're never going to hear
22   class member F's flagrant misrepresentation because it's not
23   a common course of dealing.
24           Do you see the problem I'm trying to get at?
25           MS. LISS-RIORDAN:  I think I see what you're
```

```
 1    saying.  But what I would suggest would happen would be the
 2    evidence that we would be putting on would be, for instance,
 3    the amount of business that Jani-King actually had, the
 4    amount that was promised out to all the franchisees that it
 5    currently has contracts for and it's shown in the --
 6              THE COURT:  See, I can see that as a damages
 7    calculus.  I understand that.
 8              MS. LISS-RIORDAN:  Right.  But you --
 9              THE COURT:  My hypothetical is a -- I'm imagining
10    things your way here -- is a pretty flagrant 93A violation
11    that is not part of the common course of dealing, it's
12    individualized to class member F and G and H maybe.  They're
13    going to lose that.  Of course the benefit is they're going
14    to be part of a class.  They're going to lose that because I
15    have only certified a class for liability -- even if I go
16    this far -- for liability purposes as to the common course
17    of dealing.  See, if they had the wherewithal and they had
18    the skill of your firm and the like to try it, in the
19    individualized case with three plaintiffs those three could
20    testify to the flagrant violation of 93A.  If I give you a
21    class and we're doing common course of dealing, you're up
22    there giving me the common course of dealing, but if it were
23    before me, I wouldn't receive evidence of the flagrant
24    misconduct with respect to F, G and H.
25              Are you following me?
```

1      **MS. LISS-RIORDAN:**  Yes, I'm following what you're
2  saying.  I mean, I suppose what we would hope to be able to
3  do at trial, but I understand what you're hearing, is be
4  able to have plaintiffs testify about how these common
5  course of dealings, their experience with a common course of
6  dealing.  But I understand you're saying there would be some
7  restriction on what they could say about that.
8      **THE COURT:**  There would be if I were the trial
9  judge.  And all I can -- if I even go this far -- do is try
10 to craft fairly, because under 23(f), I mean one side or the
11 other can appeal here, so I've got to frame out what sort of
12 class I'm thinking about.  All right, that's helpful.
13         Now, on class certification.  The hardest thing for
14 you to resist is not this first one but it's the second, the
15 employee classification claim.  As to that, it would seem
16 that that does seem, if I limit it to a Massachusetts class,
17 and I'm talking about the Massachusetts statutes, I have to
18 tell you my initial reaction is that that fits the class
19 certification requirements.
20         I'll hear you and then work on to unfair business
21 practices.
22      **MR. PRESSMAN:**  Thank you, and I do want to come
23 back to respond to what Shannon said, your Honor.
24         With respect to the employee class there really is
25 no predominance of common issues.  In fact, these employee

1    franchisees -- and to understand this, these are people who
2    buy a franchise after full disclosure with a Uniform
3    Franchise Offering Circular.  They have a cooling off period
4    mandated by the Federal Trade Commission.  They then decide
5    to buy a franchise.  It is not at all surprising that the
6    franchise agreement is generally the same in terms but the
7    specific plan that each person buys and the time for which
8    that plan can be fulfilled is different from franchisee to
9    franchisee.  The notion that Ms. Liss-Riordan would show
10   that on a certain day there was insufficient business to
11   serve an existing or set of franchisees as of that date
12   really shows that there's no understanding of what the
13   contract says.  When I buy a Jani-King franchise, I buy the
14   right to be offered the opportunity to serve clients by
15   performing, Jani-King clients, under the Jani-King system
16   and proprietary marks, which right can be fulfilled over a
17   period of time from a minimum of 120 days to in some cases
18   440 days.
19          So, that means that even for the most modest plan I
20   buy, Jani-King has got 120 days to fulfill that plan.  So,
21   just in terms of understanding what the contract says, I
22   think that the plaintiffs' allegations are really way off.
23          The fact that, for example, the contract is 20
24   years, virtually every franchise agreement written is for 10
25   years, 15 years, 20 years, some much longer, because people

1   make an investment when they buy a franchise and they wish
2   to amortize that investment.  And in point of fact, the
3   typical, one of the representative plaintiffs, and two or
4   three of the affiants, buy their franchises not from
5   Jani-King but from another franchisee who has developed a
6   business and then seeks to harvest the equity that he or she
7   develops by selling it to somebody else.  So, Ms. Barros
8   doesn't buy a franchise from Jani-King, she doesn't get any
9   representations from Jani-King, because she buys a franchise
10  from another franchisee that she's not even introduced to by
11  Jani-King.  She's introduced to by a friend of hers who is a
12  franchisee who says this is a great idea, it's working great
13  for me, I would like you to do it.  And so, there's
14  individualized inquiry really everywhere down the line, and
15  it includes the employment class which I understand was what
16  your Honor asked before I stood up.
17         The employment class requires an in fact
18  satisfaction, in fact analysis of what actually goes on.
19  The cases are clear that the common terms of the agreement
20  are not sufficient.  And, in fact, the Coverall case which,
21  frankly, is the genesis for all of these cases, the Coverall
22  SJC case, in that case, the SJC refused to extend its
23  finding beyond the one employment claimant in that case.
24  And the facts of that case are radically different from any
25  of the facts presented by any of the affiants.

```
 1              In that case, a woman was an employee of a
 2     franchisee.  Her franchisee boss quit his Jani-King
 3     franchise for whatever reason.
 4              THE COURT:  Maybe you want to take just a few
 5     minutes to talk about these unfair business practices --
 6              MR. PRESSMAN:  Sure.
 7              THE COURT:  -- claims.  And you were following my
 8     colloquy with Ms. Liss-Riordan.  What do you have to say to
 9     that?
10              MR. PRESSMAN:  Well, with respect to the unfair
11     business practice, even though the cases say that reliance
12     isn't necessary in the classic way, your Honor has
13     recognized in the TJX case and other cases that reliance is
14     a necessary element in the link of causation and that is an
15     individualized inquiry, particularly when there are so many
16     different sources of information that get to a prospective
17     franchisee, not just the UFOC, not just the franchise
18     agreement which is given at least ten days in advance, but
19     also other franchisees, friends and neighbors and others,
20     plus the general reading that they do about franchising.
21     These are people who by and large already have jobs.  Many
22     of them own businesses.  What they're looking for -- own
23     other businesses.  They're not unsophisticated.  The
24     allegation is that we target unsophisticated non-English
25     speakers.  There are college graduates.  There are people
```

1    who do tax work for others.
2        **THE COURT:** All right.
3        **MR. PRESSMAN:** All of these people actually get
4    their information from a whole mix of different sources.
5        **THE COURT:** All right, here's what we're going to
6    do.  The matter is sufficiently complex that it requires a
7    written opinion.  But trying to be transparent, here's what
8    I think.  I express no opinion on personal jurisdiction.  I
9    take that under advisement.  I'm not ready.
10            I think I'm likely to authorize a Massachusetts
11   class with respect to the employment classification.  I
12   really need to reflect more on whether the class is going to
13   be any broader than that.
14            This case is Judge Lindsay's case.  And it's not
15   yet been redrawn because really at my instance, and I
16   offered this, the Court has agreed that I'll handle his
17   cases up to the end of September and try to have them on a
18   track for trial.
19            So I recognize this is not my case.  I'll write the
20   opinion on class certification.  I'll make the determination
21   on personal jurisdiction.  And if anyone wants to appeal
22   when they've seen it, do what you have to do.
23            Assuming that something is going to go forward, do
24   we have a case management order out there yet?
25       **MR. PRESSMAN:** We do.

```
 1              THE COURT:  And --
 2              MR. PRESSMAN:  We do.
 3              THE COURT:  All right.  And that, that comes to
 4    summary judgments when?
 5              MS. LISS-RIORDAN:  I believe those are this fall,
 6    and we have a trial date next January.
 7              THE COURT:  That's fine.  We'll leave that all the
 8    same.  And you will understand that as of the 1st of
 9    October, I'll try to have all pending motions resolved.  The
10    case as of the 1st of October will be randomly redrawn among
11    the judges then sitting in Boston.
12              MR. PRESSMAN:  Your Honor, may I just place two
13    things on the record that I would just like to be clear.
14              THE COURT:  Sure.
15              MR. PRESSMAN:  One is, I would like to make sure
16    that your Honor saw the supplemental authorities, including
17    the Federal Express cases, both of which indicate that class
18    certification is inappropriate for employees that are --
19              THE COURT:  You're arguing more.  Yes, I've seen
20    them.
21              MR. PRESSMAN:  Okay, fine.  And the second --
22              THE COURT:  And that's another reason --
23              MR. PRESSMAN:  Okay.
24              THE COURT:  -- why I'm taking it under advisement.
25              MR. PRESSMAN:  And the second is, I just want to
```

```
 1   make sure that with respect to the conflicts among class
 2   members that you've considered the question, or you will
 3   consider the question --
 4            THE COURT:  You're again arguing.  I'm taking it
 5   under advisement.
 6            MR. PRESSMAN:  Thank you, your Honor.
 7            THE COURT:  I've told you as much as I can tell you
 8   and when I enter my order it will be entered.
 9            Thank you.
10            MR. PRESSMAN:  Thank you.
11            MS. LISS-RIORDAN:  Thank you, your Honor.
12            (Whereupon the matter concluded.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1   **C E R T I F I C A T E**

2

3

4      I, Donald E. Womack, Official Court Reporter for

5   the United States District Court for the District of

6   Massachusetts, do hereby certify that the foregoing pages

7   are a true and accurate transcription of my shorthand notes

8   taken in the aforementioned matter to the best of my skill

9   and ability.

10

11

12

13

14        /S/ DONALD E. WOMACK 2-2-2010
          _____
              DONALD E. WOMACK
15            Official Court Reporter
              P.O. Box 51062
16       Boston, Massachusetts 02205-1062
              womack@megatran.com

17

18

19

20

21

22

23

24

25