1              UNITED STATES DISTRICT COURT

2               DISTRICT OF MASSACHUSETTS

3                          No. 1:07-cv-10066-MLW

4

5

6   VINCENT De GIOVANNI, on behalf of himself and all other
    similarly-situated individuals,
7             Plaintiffs

8   vs.

9
    JANI-KING INTERNATIONAL, INC., et al,
10            Defendants

11

12                    * * * * * * * *

13
                    For Hearing Before:
14              Chief Judge Mark L. Wolf

15
                     Motion Session
16

17             United States District Court
               District of Massachusetts (Boston)
18             One Courthouse Way
               Boston, Massachusetts 02210
19             Monday, August 16, 2010

20
                    * * * * * * * *
21

22        REPORTER: RICHARD H. ROMANOW, RPR
               Official Court Reporter
23          United States District Court
     One Courthouse Way, Room 5200, Boston, MA 02210
24            bulldog@richromanow.com

25

```
 1                   A P P E A R A N C E S

 2

 3    SHANNON E. LISS-RIORDAN, ESQ
         Lichten & Liss-Riordan, P.C.
 4       100 Cambridge Street, 20th Floor
         Boston, Massachusetts 02114
 5       (617) 994-5800
         Email: Sliss@llrlaw.com
 6       For plaintiffs

 7
      AARON D. van OORT, ESQ.
 8    KERRY L. BUNDY, ESQ.
         Faegre & Benson, LLP
 9       2200 Wells Fargo Center
         90 South Seventh Street
10       Minneapolis, Minnesota 55402-3901
         (612) 766-7000
11       Email: Avanoort@faegre.com
      and
12    GREGG A. RUBENSTEIN, ESQ.
         Nixon Peabody, LLP
13       100 Summer Street
         Boston, Massachusetts 02110-2131
14       (617) 345-6184
         Email: Grubenstein@nixonpeabody.com
15       For Defendants

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (Begins, 2:30 p.m.)
 3              THE CLERK:  Civil Action 07-10066, Vincent
 4    Giovanni versus Jani-King International, Incorporated.
 5    The Court is in session.  You may be seated.
 6              THE COURT:  Good afternoon.  Would counsel
 7    please identify themselves for the Court and for the
 8    record.
 9              MS. LISS-RIORDAN:  Good afternoon, your
10    Honor.  For the plaintiff, I'm Shannon Liss-Riordan.
11              MS. BUNDY:  Good afternoon, your Honor.  For
12    the defendants, my name is Kerry Bundy, and with me is
13    Aaron Van Oort and Gregg Rubenstein.
14              THE COURT:  Okay.  We got bumped off track
15    some since I saw you on March 1st and issued my order
16    setting an agenda the next day, but in some respects you
17    put the time to good use because I think the issues are
18    narrower.
19         As I understand it, the present posture of this
20    case is as follows.
21         The operative pleadings, the plaintiffs' second
22    amended complaint, only Counts 2 and 3, the
23    misclassification and wage law claims, remain.  As far
24    as I can see, Jani-King has not answered and there's no
25    pending motion to dismiss.  So a response to the
```

1    complaint has to be scheduled.

2         Then Judge Young certified a class with respect to

3    the misclassification claim.  The class is composed of

4    all individuals who are Jani-King franchisees in

5    Massachusetts.  He said any time since January 12th,

6    2004, but there's now a dispute as to whether the end of

7    the class period should be the date of the

8    certification, which I think was September 21, 2009, or

9    the date of the class notice, which we'll be discussing.

10        Class counsel has not been appointed pursuant to

11   Federal Rule of Civil Procedure 23(g).  I believe

12   there's no objection to Ms. Liss-Riordan and her

13   colleagues being appointed.

14        I need to resolve two disagreements as relating to

15   the proposed notice.  One, the end date for the class

16   period, and second, the degree to which, if any, the

17   notice should inform franchisees about possible adverse

18   consequences if they're determined to be employees.

19        I believe the motion for a stay or dismissal

20   without prejudice of the Chapter 93(a) claims is moot.

21        The other motion that I intend to address today is

22   the request for further discovery of the defendant under

23   Rule 56(f).  I think your agreement addressing the

24   merits of the motion for summary judgment needs to wait

25   until the opt-out period for the class has expired so it

 1    will be clear who's bound by the judgment.

 2         All right.  To summarize that summary, my present

 3    intention is to schedule a time for Jani-King to respond

 4    to the second amended complaint, to appoint class

 5    counsel, um, to decide the issues regarding class notice

 6    and put it in a posture to be issued, and to hear you on

 7    and then decide the Rule 56(f) motion.

 8         Have I accurately summarized where we are and what

 9    we ought to be focusing on today?

10              MS. BUNDY:  Yes, your Honor.

11              THE COURT:  All right.  And then earlier today

12    the plaintiff filed a supplementary authority, a brief

13    decision from the Georgia *DePianti* case.  Does that have

14    any direct bearing or any bearing on the issues we'll be

15    discussing?

16              MS. LISS-RIORDAN:  It has somewhat of a direct

17    bearing just in that it's another example of another

18    court that determined, on summary judgment, that a

19    so-called "franchisee" cleaning worker in Massachusetts

20    is an employee.  So now we have Judge Young's decision

21    in the *Coverall* case, we have Judge Campbell's decision

22    in the *Jan-Pro* case -- and we attached the briefing,

23    just to show you that it is the same issue as we present

24    here for Jani-King.

25         So the reason it's relevant to what we have on the

```
 1    agenda for today is Jani-King has urged you that it
 2    needs more discovery in order to fight our summary
 3    judgment motion, yet we now have two courts determine
 4    it, without all of the discovery that Jani-King is
 5    claiming is necessary, but we say they've already had
 6    that discovery.
 7              THE COURT:  All right.
 8              MS. LISS-RIORDAN:  So we just got it on Friday
 9    but we wanted to put it to your attention right away.
10              THE COURT:  Well, we'll get back to that under
11    the Rule 56(f) analysis.
12         Am I correct that there's no response to the
13    second amended complaint yet?
14              MS. BUNDY:  We need to check that, your Honor,
15    but if there's not, we will promptly submit one.
16              THE COURT:  Okay.  What's the minimum
17    reasonable period of time for you to answer the
18    complaint?
19              MS. BUNDY:  We can do it in 10 days, your
20    Honor.
21              THE COURT:  Okay.  So today is the 16th.  Why
22    don't we say by the 26th the defendant shall respond to
23    the complaint.
24         Is it your intent to file an answer, not a motion
25    to dismiss?
```

1          MS. BUNDY:  Yes, that's correct.

2          THE COURT:  Okay.  By agreement, by that date,

3    you'll file an answer to the second amended complaint.

4        Then, as I understand it, there's no objection to

5    Ms. Liss-Riordan and her firm serving as lead counsel.

6    That may have been implicit in what Judge Young did a

7    year ago.  But the standards require me to consider the

8    work counsel's done in identifying or investigating

9    potential claims, counsel's experience in handling class

10   actions, the types of claims asserted, counsel's

11   knowledge of the applicable law, and the resources

12   counsel will commit.  I'm inclined to believe those

13   standards are fully met.

14       Does Jani-King want to be heard?

15          MS. BUNDY:  We have no objection to that.

16          THE COURT:  And, Ms. Liss-Riordan, do you want

17   this appointment?

18          MS. LISS-RIORDAN:  Um, yes, I do, your Honor.

19          THE COURT:  And who should I say -- how should

20   I articulate the appointment, by appointing the firm?

21          MS. LISS-RIORDAN:  Yes, that would be fine.

22          THE COURT:  Okay.  All right.  Then with

23   regard to the class notice issues, you have two and I

24   have two more.  Mine are easier that yours, I think.

25       All right.  With regard to the date on which the

1    class period should end, I believe that the defendant

2    advocates September 21st, the date that Judge Young

3    certified the class, and the plaintiff would like the

4    class to go until the notice goes out.  Do I understand

5    it right?

6              MS. LISS-RIORDAN:  Yes, that's right, your

7    Honor.

8              THE COURT:  All right.  My present thinking is

9    that the class period should end September 21, 2009,

10   when it was certified.  Judge Young certified a class

11   of, quote, "individuals who have performed," past tense,

12   "cleaning work."

13       All right.  It's conceivable -- and neither Judge

14   Young nor I had the information to address whether

15   there's been any material change since last September,

16   so I don't know that I have a factual basis to say that

17   these last 11 months qualify for class certification.

18   And in any event, this case is going to go on beyond

19   today if Jani-King's still in the process of granting

20   franchises, that there's going to be some universe of

21   people who aren't in the class.  So that's my present

22   inclination.

23       But since I'm leaning against you, Ms. Liss-

24   Riordan, would you like to be heard on that?

25             MS. LISS-RIORDAN:  Well, it's a tricky issue

1    and we've been caught in the other direction on this,

2    your Honor.  I had a case that we tried in the state

3    court and it was, I think, really by agreement we

4    defined the class period prior to the trial just because

5    everyone agreed there should be some finite period of

6    time.  And then later when we tried to bring a new claim

7    for the post-class period, um, the judge in that case

8    wouldn't allow us to do it because it should have just

9    been done in the original case.

10            THE COURT:  Well, you can't -- well, all

11   right.

12            MS. LISS-RIORDAN:  So that's why our argument

13   was really one more of efficiency that what we may do is

14   bring a new action and then starting in September to

15   fill in the gap, and it could really be ongoing, I would

16   say, until something changes.

17            THE COURT:  Well, I guess the -- I now

18   understand what animates your position, but, as I said,

19   I mean, Judge Young couldn't have known what was going

20   to happen in the future, if they changed their mode of

21   operating in some material respect or -- I think that

22   even if I certified the class as of the time of the

23   notice, there would be people left out of it.  So if

24   you're going to have to bring another class action, then

25   I believe it's most appropriate that it go back to

1   September 21, 2009.

2        So I'm going to certify the class as ending on

3   that date.  The class period, for the purpose of the

4   notice and for the purpose of the case, will be January

5   12th, 2004 until September 21, 2009.

6        All right.  Then you have a dispute about the

7   defendant's proposed description of the risk to a

8   plaintiff of not opting out.  As I understand it -- and

9   it seems to me to be well stated as a general matter in

10  the *Nissan* case, 552 F.2d 1688 at 1104, that "the notice

11  must contain information a reasonable person would

12  regard as material to make an informed decision on

13  whether to opt out or remain a class member and that

14  should be in a neutral" -- "expressed in neutral

15  understandable terms."

16       My present intention, but again I'm going to give

17  you a chance to be heard on it and to what the specific

18  language is I propose, is that the positions of both

19  parties regarding the risk of remaining a class member

20  should be included.  In other words, in language that --

21  in language that I've drafted, as it's stating the

22  defendant's position, but also the plaintiffs' position,

23  that these contentions are without merit, they're

24  unlawfully retaliatory, and making clear that the

25  Court's expressing no view on these.  But here, let's

1   mark this -- these sheets as Exhibit 1 for today's

2   date.  Here.

3                (Hands out.)

4                THE COURT:  Why don't you take a look at this

5   language and see if you have some thoughts on it.

6                (Pause.)

7                THE COURT:  Have you had an opportunity to

8   read that and do you want to be heard on it?

9                MS. LISS-RIORDAN:  I understand what the Court

10  is doing here and, um, I don't have a strenuous

11  objection to it.  I mean, I think our concerns are

12  stated in the papers and I think you recognize that.

13                THE COURT:  Yeah, I suppose -- and my thinking

14  is, you know, if this -- you know, if this parade of

15  horribles were to be a consequence of staying in the

16  class and winning the case, that may well -- that would

17  understandably be material to somebody.  You know, it's

18  your position that they've cited no authority for any of

19  these assertions and it's just meant to be

20  intimidating.  I'm not in a position and I'm not

21  supposed to, as I understand it, in issuing a class

22  notice, to be opining on the merits of the parties'

23  position, so I thought it was most appropriate to try

24  to -- to try to restate your respective positions in

25  hopefully an objective and neutral way and make it clear

1  to potential class members that the Court's not

2  expressing a view on any of this.

3          MS. LISS-RIORDAN:  I mean, I feel compelled

4  just to reiterate my concern that it's giving some

5  condoning or allowing Jani-King to say, "Oh, all of

6  these things are going to happen to you," and we're

7  saying -- we would challenge them and we don't believe

8  they're going to happen.  But it puts everyone on notice

9  of the potential retaliation that could take place,

10  which would then have counsel to be fighting on their

11  behalf.  But, I mean, that causes me concern.  But I

12  understand if the Court just wants to go with --

13          THE COURT:  All right.  The one thing I'm

14  going to do -- now looking at it, I'm going to change

15  it.  The last sentence I'm going to make a separate

16  paragraph because it's not just the parade of horribles

17  I'm expressing no view on, it's the merits of the claim

18  generally -- I mean, the claims generally, the whole

19  thing.  So -- actually, you must have the disk.  Just

20  make the last sentence a separate paragraph, please.

21          (Everyone writes.)

22          THE COURT:  All right.  Then I have two other

23  observations.

24          MR. van OORT:  Your Honor, may I be heard

25  briefly on the notice?

1                THE COURT:  If you stand up.

2                MR. van OORT:  Thank you, your Honor.  We have

3      no objection to this, your Honor, and it is not Jani-

4      King's intent to intimidate or threaten or anything.  We

5      read the rule to be the same as your Honor reads it,

6      which is that people should be informed of things that

7      they would find material and some of these follow

8      directly from becoming reclassified as an employee.  If

9      you're going to argue that you have to be paid hourly,

10     then people have to be paid hourly.  And for the

11     business owners here, especially those who employ

12     multiple other people and receive gross revenues, that

13     would be a material change for them.  And so we think

14     this is the right thing to do.

15         We share your Honor's concern about just wanting

16     to make sure people are informed of this and one of the

17     things we considered and that we would suggest for your

18     Honor's consideration is you could perhaps add a

19     sentence at the end saying "Class members are encouraged

20     to seek advice on those potential consequences either

21     from class counsel on counsel they're choosing."  That's

22     not the USRA requirement, but it would go further to

23     saying that you aren't -- your Honor isn't taking a

24     position.  But that's the only suggestion that we have

25     to what your Honor has proposed.

```
 1              THE COURT:  Do you want to be heard on that?
 2              MS. LISS-RIORDAN:  I don't think it's
 3     necessary.  It's stated squarely in the notice that the
 4     class members have the right to seek counsel if they
 5     choose.  I don't think that's --
 6              THE COURT:  I recall that it was in there and
 7     that's fine.
 8              MS. LISS-RIORDAN:  Yes.
 9              THE COURT:  And you also have the general
10     statement in 4, that "The Court expresses no opinion on
11     the merits of the lawsuit."  It reiterates what I put
12     in.  But I think on this point some redundancy is okay.
13         I want a provision added which states what I
14     believe is the law anyway, that "The Court reserves a
15     right to alter deadlines established in the notice for
16     good cause shown."  I mean, sometimes, you know, I get a
17     letter that says, "I was out of the country in the two
18     months I was given to opt out.  I was taking care of my
19     sick mother in the Dominican Republic.  I didn't find
20     the letter until I came back."  And I believe I have the
21     authority to make an exception, but it should be
22     explicit, but it should also put people on notice that
23     there's got to be a good reason and you just can't miss
24     the deadline after I decide on summary judgment and say
25     "Oh, I meant to opt out of the class.  I didn't see the
```

1      letter.  I was busy."  So you'll put that in.

2           All right.  Then the last issue is dates.  Do you

3      feel that, say, two months is sufficient for all of

4      this?  How long is it going to take for somebody who's

5      got the disk to get this back to me so I can sign off on

6      it?

7                THE MS. LISS-RIORDAN:  Oh, we can submit those

8      promptly.  You mean the final revised version?

9                THE COURT:  Right.

10               MS. LISS-RIORDAN:  We can submit it to you

11     tomorrow.

12               THE COURT:  Tomorrow?

13               MS. LISS-RIORDAN:  Yes.

14               THE COURT:  Okay.  Why don't you have the

15     dates run two months from this Friday then.  And I'll

16     ask Mr. O'Leary and my clerk to review it to make sure

17     it complies with what I decided today and then I'll look

18     at it, too, and sign it this week.  Okay?

19               MS. LISS-RIORDAN:  Thank you.

20               MR. van OORT:  Thank you, your Honor.

21               THE COURT:  Then -- well, I don't know if I

22     mentioned this.

23          Plaintiffs' counsel proposes to send out a letter

24     that was in the packet.  I'm directing that the letter

25     not be sent until the period to opt out ends.  As far as

1    I could see, all the information in the letter is also

2    in the notice and it's my understanding essentially that

3    it's consistent with the idea that the notice is

4    supposed to be neutral, not that the letter, in this

5    case, isn't.

6        But, at the moment, these people are deciding

7    essentially, Ms. Liss-Riordan, whether, you know, they

8    want to be represented by you, by staying in the class,

9    so the time to communicate with them independently would

10   be after it's determined whether or not they're in the

11   class.  Okay?

12           MS. LISS-RIORDAN:  That's fine, your Honor.

13   And by the same token, would the Court -- that Jani-

14   King, I presume, would not be permitted to be

15   communicating with class members now without opting out.

16           THE COURT:  That's my present intention.  I

17   mean, I'll hear you on this, but --

18           MR. van OORT:  Your Honor, we have no

19   intention to send any written communication to the

20   members of the class regarding opting out or

21   participating.  As you know, many of them are current

22   franchise owners of Jani-King and so they approach Jani-

23   King on a daily basis about anything in the business.

24   And, you know, we've instructed people about what they

25   can and cannot say about this class and this litigation

1    in that action.  But I just don't want to represent to

2    your Honor that we aren't going to have any

3    communications with the class members, because we have

4    to.

5              THE COURT:  And what do you think you can and

6    cannot say?

7              MR. van OORT:  Well, we've instructed people

8    not to communicate with them about their decision to

9    participate or stay in this class.

10             THE COURT:  Right.  I think what's most

11   appropriate is -- and it sounds like it's compatible

12   with what you're saying, is that, you know, "Jani-King

13   can't advise you whether or not to stay in the class"

14   and you can go further and say, you know, "If you want

15   to talk to somebody about that, you can talk to the

16   class lawyer who sent the notice."

17             MR. van OORT:  That's consistent with what

18   we're doing, your Honor.

19             THE COURT:  All right.  Then what I feel I

20   particularly need to hear you on is this Rule 56(f)

21   motion.

22        The First Circuit discussed the requirements for

23   having a Rule 56(f) motion granted.  "It must be

24   timely," and I think that's satisfied.  "It must show

25   good cause for the failure to discover the necessary

1   facts sooner.  It must set forth a plausible basis for

2   believing that the necessary facts probably exist and

3   can be learned in a reasonable time.  And it must

4   establish that the sought facts, if found, would

5   influence the outcome of the pending motion for summary

6   judgment."  That's *Adorno*, 443 F.3d 122 at 127.

7   "Essentially a moving party must articulate a plausible

8   reason to believe that discoverable material exists that

9   will suffice to raise a triable issue," as the First

10  Circuit went on to say in *Adorno*.

11       As I understand it, the statute that's at issue in

12  the misclassification claim, Mass. General Law Chapter

13  149, Section 148B, provides three things that the

14  defendant, in this case, must prove to prove the -- to

15  avail on the contention that the franchisees are

16  independent contractors.  The second one is at issue in

17  the motion for summary judgment.  The second part of the

18  statute says, "service is performed outside the usual

19  course of business of the employer."

20       The e-mails that have been submitted to me

21  indicate that in August of 2009, before Judge Young

22  acted on the motion to certify the class, the parties

23  agreed that if the class was certified, that "some

24  additional fact and expert discovery would be needed on

25  any certified claim."  On September 21, 2009, Judge

1   Young certified a class pursuant to an earlier

2   scheduling order and, as I understand it, summary

3   judgment motions were due October 1, 2009.  The

4   plaintiff filed for summary judgment on

5   misclassification on a class-wide basis on that date.

6   The defendant filed an opposition on October 29th, 2009

7   and also moved for a stay pending appeal.

8        It's not perfectly clear to me what the defendant

9   is looking for.  I thought the first thing the defendant

10  seemed to want was discovery from its own employees in

11  order to demonstrate the nature of its business, and

12  it's not clear to me whether you want discovery like

13  depositions or whether you just want to file additional

14  affidavits that you didn't file last October.  And if

15  it's affidavits, whether they were fact affidavits or

16  expert affidavits as well.

17       So maybe I could get that clarification as to

18  what's at issue in that first category.

19            MS. BUNDY:  With regard to the discovery that

20  we're looking for, your Honor, we're looking for both

21  discovery of a limited number of class members as

22  well --

23            THE COURT:  Okay.  I understand that.  What

24  discovery do you want about what Jani-King's own

25  business is?

1          MS. BUNDY:  Actually what we were seeking,

2     your Honor, is -- well, no class certification discovery

3     has occurred in this case and we believe that before

4     summary judgment on any of the prongs that we conducted,

5     we should have class discovery for all three of those

6     prongs.

7          THE COURT:  Well, I want to know what the

8     discovery is because -- well, I don't know why you need

9     discovery as to what your own business is?

10          MS. BUNDY:  Well, if you're specifically

11     referring to Prong II, your Honor, Prong II looks at

12     both sides of the equation.  If you look at the language

13     it says "This service is performed by the putative

14     employee outside the usual course of the business of the

15     putative employer."  So we're going to be looking for

16     discovery both on what does Jani-King, as a franchisor,

17     do and that will be our expert testimony as well as

18     internal.  We also want discovery on what that business

19     of the franchise owner does and that would come from the

20     class members.

21          We also think that the class members, during their

22     depositions, will acknowledge that what Jani-King, as a

23     franchisor, is doing, is substantively different than

24     what they are doing.

25          THE COURT:  Okay, let me go back.  I'm trying

1   to break this down.

2        What discovery do you want from your -- about what

3   your business is, what witnesses do you want to

4   question, or don't you already know what your business

5   is and perhaps you want to file more affidavits about

6   it?

7            MS. BUNDY:  Certainly, your Honor.  With

8   respect to what Jani-King's business as a franchisor is,

9   that is within our realm.

10           THE COURT:  Right.

11           MS. BUNDY:  We'd like to expand on the

12  deposition or the expert testimony of Mr. Seide.  We

13  perhaps will want to depose, um, someone from the

14  International Franchise Association.  We'll want to

15  submit additional affidavits from our Jani-King

16  International employees.  And then we will want to

17  supplement Donna Docrates's declaration, who is Jani-

18  King of Boston.

19           THE COURT:  Okay, let's do these one at a

20  time.

21       So you want additional affidavits from employees,

22  right?

23           MS. BUNDY:  Correct.  We want additional

24  affidavit testimony from our expert, Mr. Seide.

25           THE COURT:  Based on what?

1              MS. BUNDY:  He's going to be talking about the

2    franchising model and the differences between what Jani-

3    King, as a franchisor, does and performs in the usual

4    course of business as opposed to vis a vis what the

5    franchisees do.

6              THE COURT:  He already has an affidavit,

7    correct?

8              MS. BUNDY:  He has an affidavit in, correct,

9    your Honor.

10             THE COURT:  And so if you put in new facts by

11   affidavit, is that going to require some supplementation

12   of the opinions that -- regarding what Jani-King does by

13   that expert?

14             MS. BUNDY:  Yes, your Honor, there would be

15   refinements.

16             THE COURT:  So you want an additional

17   affidavit from your employees and additional expert

18   opinion based on those facts and that new information or

19   additional information.  And then what else do you

20   want?

21             MS. BUNDY:  We'd also like the opportunity to

22   depose a third party, perhaps the International

23   Franchise Association.

24             THE COURT:  What, as an expert?

25             MS. BUNDY:  As an expert in franchising,

1    correct, your Honor.

2              THE COURT:  Yeah, I don't know that you can do

3    that without going out and hiring them as an expert, but

4    that's not going to happen at this point unless you give

5    me some authority.  You don't get free expert advice by

6    noticing a deposition.  The last time I had to contend

7    with this, as I recall, was -- well, it was a long time

8    ago.  Go ahead.

9              MS. BUNDY:  And then we'd like the class

10   members' depositions, your Honor, as well as limited

11   written discovery.

12             THE COURT:  Well, actually, that -- all

13   right.  You want the class members' discovery on what

14   Jani-King does or on what they do?

15             MS. BUNDY:  Both, your Honor.  We believe that

16   if we take a limited number -- a sampling of those class

17   members, they will be affirming the distinction between

18   the functions performed, which is both what Jani-King

19   does as well as what they do.

20             THE COURT:  A "limited number" is how many?

21             MS. BUNDY:  Um, we propose 10, your Honor.

22             THE COURT:  And what kind of questions do you

23   want to ask them about what Jani-King does?  Or how

24   would it -- I'm trying to --

25             MS. BUNDY:  Well, sure, your Honor.  We want

1    to flesh out what they do -- if you're talking about

2    what Jani-King does, I want to flesh out that they

3    acknowledge that Jani-King is a franchisor, that they

4    were sold a franchise by Jani-King.  That Jani-King's

5    usual course of business is not cleaning the accounts,

6    but it's actually working towards promoting and

7    enforcing the brand name.

8         By contrast, I want to talk to them about the

9    franchisors and what they do day to day and talk about

10   how they clean the accounts, how they hire and fire and

11   manage their employees --

12             THE COURT:  But is any of this in dispute?

13   Generally speaking, in order to have a valid 56(f)

14   motion, it has to relate to some fact that's in

15   dispute.  The submissions the parties made, under our

16   Local Rule 56.1, indicate to me that the parties are in

17   agreement that the franchisees provide cleaning

18   services, and so I didn't -- coming in here, perceive

19   that more evidence is needed on what the franchisees

20   do.  But go ahead.

21             MS. BUNDY:  I mean, if you look at it -- we're

22   looking at this globally.  I mean, if you recall, we

23   came here in March.  What we wanted to do is we said

24   that there hasn't been any class discovery.  There are

25   three prongs.  It's the defendants' burden of proof on

1    each of those prongs.  We believe that there is

2    testimony out there for all three prongs that will allow

3    us to --

4              THE COURT:  I know, but I'm -- this is what I

5    do in complex litigation generally, and I do it in

6    patent cases, is, you know, if there's one issue that's

7    dispositive and can be done relatively efficiently, I'll

8    take a motion for partial summary judgment, or if this

9    is a motion for a full summary judgment, because I think

10   you'll agree that the burden of proof on all three

11   prongs is on you and if you lose on Prong II, the other

12   two are not material to the outcome of the case.  Is

13   that right?

14             MS. BUNDY:  I would agree with that, your

15   Honor, but the reason we believe that there should be

16   discovery on all three, though, and that the Court

17   should consider them together is for purposes of having

18   a full record and whether that full record is -- so if

19   you decide for us on summary judgment, then you don't

20   have them coming back on the other two prongs.

21             THE COURT:  No, you would have to litigate the

22   other two prongs, but I'm trying to determine whether --

23   and usually I don't permit any motion for summary

24   judgment until the end of all discovery, but, as I say,

25   if I perceive that this is kind of a silver bullet in

1    the case, if the argument is meritorious, then I

2    usually, or often, you know, I narrow the focus to that

3    issue so that we can get to a properly-informed result

4    more quickly.

5              MS. BUNDY:  The other way to look at it, your

6    Honor, is if there is this one issue and it is decided

7    against Jani-King, that there will not be a full record

8    for appeal, there's, you know, the one issue for appeal,

9    which might lead to a remand of further proceedings.

10             THE COURT:  It might lead to a settlement.  It

11   might --

12             MS. BUNDY:  Judge, I guess, we believe that,

13   even looking at Prong B alone, that what we're asking

14   for, um, the deposition testimony as well as additional

15   affidavits, will inform the Court into how it properly

16   interprets Prong B in a way that's different than what

17   the plaintiffs and Judge Young suggests.  We believe

18   that if -- that Judge Young interpreted it incorrectly.

19             THE COURT:  And, in fact, one of the things --

20   and I'm jumping ahead a bit, but in your second

21   supplemental memorandum in support of your Rule 56(f)

22   motion, you make about five new arguments that weren't

23   made in summary judgment and weren't made previously.

24   And it's my present intention, even if there's no

25   discovery while these two months of opportunity for opt

1    outs exists, I'm going to have further briefing on those

2    issues.

3              MS. BUNDY:  We do believe, your Honor, that

4    allowing us the chance to at least talk to the -- to ten

5    of these class members, to be able to explain and show

6    the Court that when you interpret the prong as we

7    suggest, which is actually looking at their operations

8    on a day-to-day level and seeing whether there are

9    substantive functions that make them separate and

10   distinct, that that testimony will be helpful in us

11   proving our point on Prong B.

12             THE COURT:  You already took the depositions

13   of six or seven of the named plaintiffs, is that right?

14             MS. BUNDY:  That's correct, your Honor.  And

15   those plaintiffs -- as you mentioned, those are

16   plaintiffs that have been picked by counsel.

17             THE COURT:  And did you ask them the kind of

18   questions you want to ask the other ten?

19             MS. BUNDY:  I was not personally involved in

20   those depositions, your Honor, but some of those

21   questions were asked.

22             THE COURT:  Okay.

23             MS. BUNDY:  The difference, your Honor, as

24   Judge Young recognized in his class certification order,

25   however, is that even if you have commonality and

1   typicality in a class, there are still differences.  And

2   we think it's important for Jani-King -- if we're

3   talking about deciding this class-wide issue which is

4   going to have an impact on over 300 franchise owners in

5   Minnesota -- or in Massachusetts -- sorry, your Honor,

6   I'm thinking of my home state, that you need to be able

7   to see the full picture.  And there are franchise owners

8   out there who have multiple franchise employees working

9   for them and therefore they are, not as the plaintiffs

10  are contending, their employee, they are an employer of

11  those employees doing the cleaning work.  And we think

12  that's critical for the analysis under Prong B

13  particularly in reference to the AG guidelines set forth

14  in 2008.

15          THE COURT:  How long do you think it would

16  take you to do this discovery?

17          MS. BUNDY:  Obviously we don't want to start

18  until the notice period is over, your Honor, because we

19  don't want there to be any risk of influence of opt-ins

20  or opt-outs.  We believe we could get it done within

21  four months.

22          THE COURT:  Four months after the two months?

23          MS. BUNDY:  Correct.  If you think about it,

24  your Honor, that's very targeted.

25          THE COURT:  And that would be on all three

 1   prongs?

 2           MS. BUNDY:  Correct.

 3           THE COURT:  And then all discovery would be

 4   complete?

 5           MS. BUNDY:  All discovery with respect to the

 6   common claims, your Honor, and what that means is with

 7   respect to Prongs A, B and C.

 8           THE COURT:  Right.

 9           MS. BUNDY:  Issues about whether, you know,

10   they actually worked overtime or are subject to

11   benefits, that would not be part of this discovery.

12           THE COURT:  All right.  And you -- you haven't

13   mentioned it yet, but the e-mails going back and forth

14   in October of 2009 -- and I'm looking at one from

15   Hillary Schwab to Aaron van Oort dated August 21, 2009.

16   "To get things clarified," I guess Mr. Van Oort wrote,

17   "You say agreed with time for class/damages discovery

18   and experts if needed.  We understand this to mean that

19   if a class is certified, the parties agree that some

20   additional discovery on the merits by fact and expert

21   discovery won't be needed.  What exactly it will look

22   like will depend on what claims are certified."  That's

23   part of it.  And then the next day, August 21,

24   Ms. Schwab, Ms. Liss-Riordan's colleague, writes:  "I'm

25   in agreement on Point 1 with the understanding that we

1  may need an additional expert to analyze class-wide

2  damages."

3         MS. BUNDY:  If I may supplement that, your

4  Honor?  You were very accurate in your rendition of the

5  chronology there.  The one thing I just want to

6  particularly point out is that once the summary judgment

7  was issued, before our opposition was due, we did file

8  an emergency stay and as part of that emergency stay, it

9  is included in our Rule 56(f) motion.  Additionally --

10  just kind of belt and suspenders, we sent three

11  deposition notices to class counsel, which are three of

12  the individuals that we would like to depose in this

13  instance, in case, for some reason, our Rule 56(f) is

14  not heard, and class counsel responded that those

15  depositions could not go forward without written

16  discovery and that they weren't available at the time

17  given anyway.

18      So it's really no surprise that we're here today

19  asking for this, because we've been asking for it -- we

20  agreed to delay it, we asked for it, it didn't happen

21  because of the time constraints and the posture of the

22  case, and that's just what we want now.

23         THE COURT:  All right.  Ms. Liss-Riordan?

24         MS. LISS-RIORDAN:  Yes, a number of points,

25  your Honor.

1          The issue pertinent to the independent contractor

2     statute has been fully --

3               THE COURT:  I'm sorry.  Could you talk into

4     the microphone, please.

5               MS. LISS-RIORDAN:  Yes, I'm sorry.  The issue

6     pertinent to the independent contractor statute analysis

7     has been fully discovered, fully briefed, and has been

8     pending for quite some time.  What Jani-King is trying

9     to do is get another bite at the apple, an opportunity

10     to rebrief things and take depositions of 10 franchisees

11     on issues that I don't think we have any dispute over.

12          It did depose seven franchisees during discovery,

13     at the time only two of them were even plaintiffs, five

14     of them were class members, and they may have been named

15     plaintiffs as well.  The issues that are before you on a

16     summary judgment motion are legal issues, which numerous

17     courts have decided as legal matters, and we've been

18     citing to you the cases on this.  And the discovery that

19     they're taking about, they're not --

20               THE COURT:  If it's summary judgment, they're

21     only legal matters if there are no material facts in

22     dispute.

23               MS. LISS-RIORDAN:  The issues that Jani-King

24     is describing it wants to develop in these 10

25     depositions are issues that I don't think we have any

1    dispute over.  We agree that the Jani-King -- that the

2    franchisees perform cleaning services.  We agree that

3    Jani-King operates a business that provides all the

4    behind-the-scenes work so that the cleaning business can

5    be done.  It's really a legal issue for to you decide

6    whether Jani-King is in the business of providing

7    cleaning services or whether Jani-King is in a different

8    business.  And I just really don't think we're in a

9    disagreement about the facts.

10          THE COURT:  Well, you know, just about a year

11   ago today your colleague, Ms. Schwab, agreed that some

12   factual and expert discovery would be necessary and

13   appropriate if a class was certified.  What should I do

14   about that?

15          MS. LISS-RIORDAN:  Here is what we meant.  We

16   were talking about class-wide damages.  We served

17   discovery asking for information on all the class

18   members so we can calculate their damages.  Our

19   understanding was -- we agreed not to force Jani-King to

20   turn over all their files until we got a class

21   certified.

22       Now, if there was discussion in there -- and I

23   don't know if there's e-mails, about merits discovery

24   with respect to a class, I really think what we were

25   talking about was this 93(a) claim when those related

1    claims were still in the case.  They're not in the case

2    right now.

3         So given the claim that is in the case, the

4    independent contractor claim, I would submit that

5    waiting another six months to do discovery on something

6    that's been thoroughly covered is really just an

7    unnecessary delay and an investment of more time and

8    resources that is not going to move the ball forward.

9              (Pause.)

10             THE COURT:  Okay.  This is helpful in

11   clarifying my understanding of your positions and what

12   you're looking for.  I'm going to take a break to think

13   about it a bit.  I'll be back.

14        Let me amplify, though, something I said earlier

15   because, at a minimum, I feel I've been assisted by the

16   following.

17        In the second supplemental memorandum in support

18   of the 56(f) motion, Jani-King raises some arguments

19   that I think are not briefed in connection with the

20   motion for summary judgment.  Jani-King argues that:

21   "Broadly interpreting Prong II of the independent

22   contractor statute would render superfluous the other

23   two prongs, an outcome rejected by the Massachusetts

24   Attorney General and the SJC," citing the AG's advisory

25   of 2008/1, the *Athol Daily News* case, 439 Mass 171 at

178.

Second, Jani-King argues that "the Massachusetts legislature that defines 'course of business' in other statutes have distinguished between companies playing different roles in a franchise distribution system," citing *Commonwealth vs. Jon Pierre*.  Jani-King argues that Chapter 93(b), Sections 1 and 10, define different levels of automobile sales franchises as being in different businesses.

Third, Jani-King argued that "the plaintiffs' construction would result in the absurd consequence of a prohibition on all franchising."

Fourth, Jani-King argues that "the legislative history underlying Section 148B(a)(2) does not show that anybody contemplated plaintiffs' broad construction."

And, fifth, Jani-King argues that "other Massachusetts statutes and cases treat franchisees as separate business entities rather than employees."

Ms. Liss-Riordan, are those -- maybe I should -- well, I'll ask Jani-King.

Are these arguments that you hope I'll consider when I get to the motion for summary judgment?

MS. BUNDY:  Absolutely, your Honor.

THE COURT:  And why weren't they made last October?

1              MS. BUNDY:  Because they are brought about by

2      Judge Young's overly-broad interpretation of Prong B,

3      which frankly I don't think any of us anticipated.

4              THE COURT:  And that interpretation is where,

5      in *Coverall*?

6              MS. BUNDY:  In the *Coverall* decision, your

7      Honor, where essentially Judge Young states that

8      franchising as a business model is not a valid business

9      model and if any two entities are working together to

10     bring a brand to the market, that they are in an

11     employment relationship.

12             THE COURT:  And when was the *Coverall*

13     decision?

14             MS. BUNDY:  March.

15             THE COURT:  Of this year?

16             MS. BUNDY:  Right.

17             THE COURT:  After the briefing?

18             MS. BUNDY:  Yes, your Honor.

19             THE COURT:  All right.  So Jani-King wants to

20     supplement, at minimum, its summary judgment papers to

21     incorporate these arguments and, if I let them do it --

22     I mean, you want an opportunity to respond to them,

23     I assume?

24             MS. LISS-RIORDAN:  Sure, we'd be happy to

25     respond to them, but it's really not necessary to reopen

1  discovery for us to respond to them.

2          THE COURT:  All right.  Here, let me take a

3  recess and ponder this further.  The Court is in

4  recess.

5          (Short recess, 3:20 p.m.)

6          (Resumed, 3:35 p.m.)

7          THE COURT:  Okay.  It is, for yet another

8  reason, unfortunate that this case is on its third

9  judge.  We miss Judge Lindsay, Judge Young had one way

10 of dealing with it, but my rulings are as follows.

11      I'm allowing the Rule 56(f) motion in part.  I'm

12 ordering -- with regard to evidence concerning the

13 defendant's own usual course of business, that doesn't

14 require any discovery.  This came into clearer focus.

15 That's an issue on which the defendant wants to file

16 additional factual and expert affidavits.  Given how

17 quickly the motion for summary judgment was filed after

18 the class certification, on September 21, 2009, it's

19 appropriate to permit that.

20      So the additional -- any additional affidavits

21 concerning facts on that issue shall be filed by

22 September 17 and any additional expert affidavits on

23 that issue shall be filed by the defendant on October

24 22.

25      After the -- the opt-out period will end, and I'm

1   now refining what I said earlier, on October 22, and

2   after October 22 and before January 14, 2011, the

3   defendant may take discovery from up to five class

4   members regarding the Chapter 149, Section 148B(a)(2)

5   issue, the second prong.  If you want to ask those class

6   members some additional questions on the other two

7   prongs, you may, but I'm not considering this a deadline

8   for discovery on all three prongs.  This second prong

9   may indeed be the silver bullet.  And in that same

10  period, the plaintiffs, if they wish, can take discovery

11  from the defendants' fact and expert witnesses, the

12  people who filed affidavits on the Prong 2.

13      With regard to the motions for summary judgment, I

14  expect you're going to be updating what you've submitted

15  to integrate the new factual record, so the -- I'm

16  denying the pending motion for summary judgment without

17  prejudice.  The defendant -- I'm sorry.  The plaintiff

18  shall file the renewed motion for summary judgment on

19  what we'll call "Prong 2" by, say, February 11th, in the

20  manner required by Local Rule 56.1.  The response shall

21  be filed on March 11.  If there's going to be any reply,

22  it should be filed by March 18.  And I'll aim to give

23  you a hearing on March 29 at 3:00.

24      I'll issue an order memorializing all this, but is

25  there more you'd like to get clarification of?

1          MS. BUNDY:  Your Honor, just one point.  With

2     our expert declaration, because our expert will be

3     looking at the facts of some of the individual

4     franchisors, the class members who we will not be

5     deposing until October 22nd or January 14th, we request

6     the opportunity to have that declaration December 1.

7          THE COURT:  Well, December 1 doesn't help

8     you.  No.  I thought he was going to be addressing the

9     issue of the usual course of your business based on the

10    new facts.  How does December 1 help you?

11         MS. BUNDY:  Well, I think he's going to want

12    to take some of the facts from the class members that we

13    developed to show what those class members are doing vis

14    a vis the usual course of business of a franchise owner.

15         THE COURT:  Well, he can file two declarations

16    then, affidavits.  He can do one on the date I gave you

17    and the other one by, you say, December 1st?  You think

18    you're going to have the five of them discovered by

19    December 1st?

20         MS. BUNDY:  Well, your Honor, I was just

21    trying to get something.

22         THE COURT:  No, this is important.  There's

23    been enough ambiguity, enough loopholes in tripping up

24    the progress of this case and so I don't want that.  But

25    I want them to know what your expert says the

1    implications of your witnesses -- your employees are by

2    the date I established.

3          With regard to the second, he can file any updated

4    declaration by January 21st, 2011, to incorporate

5    whatever discovery you've received from the five class

6    members and give an opinion on the implications of that.

7                MS. BUNDY:  Thank you, your Honor.

8                THE COURT:  Does the plaintiff anticipate

9    wanting or needing an expert?

10               MS. LISS-RIORDAN:  I really don't think it's

11   necessary to go down this road.

12               THE COURT:  Well, we're down it and -- we'll

13   get a record and --

14               MS. LISS-RIORDAN:  I really never anticipated

15   having an expert on this issue.  I suppose if they're

16   putting in an expert, once we see it, if we decide we

17   want to do an expert, we would want that opportunity,

18   but I just don't know that --

19               THE COURT:  Yeah, and I think I'll put that in

20   my order.  If you see their expert declarations and move

21   for an opportunity to respond that you don't, at the

22   moment, feel you're going to need, you can do that.  I'm

23   likely to allow it.  And you know it will just

24   necessitate some further delay, and I know you don't

25   like the delay, but you'll be in a position to make an

1   informed decision once you see what more their expert

2   has to say.

3        And as I say, I know it's hard for you to go from

4   judge to judge to judge and it's hard for me to pick up

5   something that's been through two of my colleagues, so

6   -- but here we are, another regrettable consequence of

7   Judge Lindsay's passing.

8             MS. BUNDY:  Your Honor, one last thing.  I'm

9   assuming when you said the date of February 11th, 2011,

10  that both sides could move for summary judgment on Prong

11  B at that point?

12            THE COURT:  Sure.

13            MS. BUNDY:  Thank you.

14            THE COURT:  Or if you look at the evidence and

15  see there's not a proper basis, just file a statement

16  saying "We're not moving for summary judgment.  We can

17  see material facts are in dispute.  Here's a proposed

18  schedule."  Okay?  And if Ms. Liss-Riordan, at that

19  point, sees a material disputed fact -- and perhaps it

20  would be unprecedented in her personal experience, but

21  things happen.  Okay?

22        The Court is in recess.

23            (Ends, 3:45 p.m.)

24

25

1              C E R T I F I C A T E

2

3

4

5         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

6    do hereby certify that the foregoing record is a true

7    and accurate transcription of my stenographic notes,

8    before Chief Judge Mark L. Wolf, on Monday, August 16,

9    2010, to the best of my skill and ability.

10

11

12

13

14   /s/ Richard H. Romanow 08-18-10
     _____
15   RICHARD H. ROMANOW  Date

16

17

18

19

20

21

22

23

24

25