pUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
VINCENT De GIOVANNI,                          )
MARIETTE BARROS, DIAMANTINO                   )
FERNANDES, MARIA PINTO,                       )
and all others similarly situated,            )
                                              )
                    Plaintiffs,               )
                                              )   Civil Action No. 07-10066-MLW
        v.                                    )
                                              )
JANI-KING INTERNATIONAL, INC.,                )
JANI-KING, INC., and                          )
JANI-KING OF BOSTON, INC.,                    )
                                              )
                    Defendants.               )
_____           )

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

This case is brought on behalf of janitors who have performed commercial cleaning work in Massachusetts for Defendants Jani-King International, Inc., Jani-King, Inc., and Jani-King of Boston, Inc. (collectively, "Jani-King"[1]), having paid thousands of dollars to Jani-King to purchase and run so-called "cleaning franchises." Plaintiffs have alleged, *inter alia*, that they are really employees under Massachusetts law, not independent contractors, a conclusion that the Supreme Judicial Court and federal court

---

[1] Jani-King International, Inc. wholly owns Jani-King, Inc., which is a holding company that wholly owns Jani-King of Boston, Inc., a regional subsidiary. (Plaintiffs' Statement of Undisputed Facts, ¶¶ 2-3). Jani-King International is the architect of the business, exercising ultimate control over all operations; Jani-King of Boston, meanwhile, has the most day-to-day dealings with cleaners. (Id. at ¶¶ 1-64). Given their common ownership, both entities necessarily share in the revenue earned from cleaners. As a result of their inter-related ownership, operations, and management, all three entities are joint employers in the context of this case. Wilfert Bros. Realty Co. v. Mass. Comm'n Against Discrimination, 2006 WL 935105, *2 (Middlesex Super. Ct. 2006) ("two or more businesses may be so interrelated that they may be considered a 'single employer'"), citing Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255 (1965); Romano v. U-Haul Int'l, 233 F.3d 655, 664-66 (1st Cir.2000); Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir.1980).

have already concluded with respect to one of Jani-King's principal competitors, which operates practically identically to Jani-King: Coverall North America. See Coverall North America, Inc. v. Division of Unemployment Assistance, 447 Mass. 852 (2006); Awuah v. Coverall North America, Inc., 707 F. Supp. 2d 80 (D. Mass. 2010). In this case, class certification has already been granted on this misclassification claim, and the class certified includes: "all individuals who have performed cleaning work for Jani-King in Massachusetts any time since January 12, 2004." De Giovanni v. Jani-King International, Inc., 262 F.R.D. 71, 87-88 (D.Mass. 2009).[2]

Plaintiffs previously moved for summary judgment on the misclassification claim, arguing that Jani-King, which must establish *all* three prongs of section 148B in order to treat its cleaning workers as independent contractors, cannot establish *any* of those prongs. (ECF No. 97).[3] Jani-King opposed the motion, in part by claiming that it needed additional discovery in connection with prong two on the "usual course of business" of cleaning "franchisees." (ECF No. 99). The Court ruled, among other things, that Jani-King could take depositions from up to five absent class members, and that the Plaintiffs

---

[2] The Second Amended Complaint includes three claims: unfair and deceptive business practices in violation of M.G.L. c. 93A (Count I), (2) misclassification under the Massachusetts Independent Contractor statute, M.G.L. c. 149, § 148B ("section 148B") (Count II), and (3) violations of the Massachusetts minimum wage, overtime, and payment of wages laws, M.G.L. c. 151, § 1, 1A, 1B and M.G.L. c. 149, § 148 (Count III).

[3] In order to establish that the cleaning workers were properly classified as independent contractors, Jani-King bears the burden to prove each of the three prongs of § 148B:

(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; *and*

(2) the service is performed outside the usual course of the business of the employer; *and*

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

M.G.L. c. 149, § 148B(a) (emphasis added).

2

could then file a renewed motion for summary judgment. (ECF No. 159). Those depositions, together with other additional discovery permitted by the Court, have been completed. As expected, this additional discovery has done nothing to advance Jani-King's position. It remains equally clear that Jani-King's cleaning worker "franchisees" perform services that fall squarely within the usual course of Jani-King's business, which is commercial cleaning.

As noted, Section 148B already has been strictly construed in favor of employee status in another case involving an alleged "cleaning franchise" company just like this one. In two decisions involving one of Jani-King's principal competitors – Coverall (which, like Jani-King, uses a "franchise" system to employ cleaning workers) – the Massachusetts Supreme Judicial Court and another federal court in this District rejected attempts to characterize Coverall's cleaning workers as independent contractors. Coverall North America, Inc. v. Division of Unemployment Assistance, 447 Mass. 852 (2006)[4]; Awuah v. Coverall North America, Inc., 707 F. Supp. 2d 80 (D. Mass. 2010).

Massachusetts has one of the strongest, if not the strongest, independent contractor statutes in the nation, severely limiting the ability of companies to classify workers as independent contractors.[5] Prong two is central to the statute's strength, as demonstrated by Massachusetts cases interpreting the statute. In addition to the Coverall case from this District – where the court soundly rejected the *exact same*

---

[4] In Coverall, the Supreme Judicial Court was interpreting the Massachusetts Unemployment Statute, M.G.L. c. 151A, § 2. Id. at 855-56. However, the language in that statute is identical to section 148B in all respects, except for the second prong, which is even stricter under section 148B.

[5] See, e.g., "Recent Change to Independent Contractor Law: An Earthquake for Employers in Massachusetts?" Massachusetts Lawyers Weekly (May 5, 2005) [Exh. A]; "The Independent Contractor Law; What Additional Requirements Does it Place on Massachusetts Employers?" Massachusetts Lawyers Weekly (Nov. 14, 2005) [Exh. B]; Attorney General Advisory on M.G.L. c. 149, § 148B 2008/1 [Exh. C].

3

*argument* that Jani-King makes here, i.e., that it is in the "franchising" business, not the "commercial cleaning" business[6] – Massachusetts courts have consistently rejected the attempts of defendants to define their "usual course of business" in narrow or disingenuous ways that ignore reality and defy common sense. See Oliveria v. Advanced Delivery Systems, Inc., 2010 WL 4071360, *6-*7 (Middlesex Super. Ct. July 16, 2010) [Exh. D] (granting summary judgment to plaintiff on prong two of section 148B); Cruz v. Manlo Enterprises, Civil Action No. 2010-1931, Slip Op. at 9-10 (Worcester Super. Ct. June 10, 2010) [Exh. E] (same); Fucci v. Eastern Connection Operating, Inc., Civil Action No. 08-2659, Slip Op. at 8-9 (Middlesex Super. Ct. Sep. 21, 2009) [Exh. F] (same); Chaves v. King Arthur's Lounge, Inc., Civil Action No. 07-2505, Slip Op. at 7-9 (Suffolk Super. Ct. July 30, 2009) [Exh. G] (same); Amero v. Townsend Oil, Civil Action No. 07-1080, Slip Op. at 5 (Essex Super. Ct. Dec. 3, 2008) [Exh. H] (same).

All of these summary judgment decisions reflect the unanimous recognition of courts in Massachusetts that section 148B – and particularly prong two – must be construed broadly in favor of finding employee status. As a result, as in Awuah and these other cases, because the undisputed facts establish that Jani-King cannot satisfy prong two of section 148B, Plaintiffs are entitled to summary judgment on Count II of their Second Amended Complaint.[7]

---

[6]     Awuah, 707 F. Supp. 2d at 84 (concluding that "[d]escribing franchising as a business in itself…sounds vaguely like a description for a modified Ponzi scheme").

[7]     Jani-King likewise cannot prove prong three of section 148B, for the same reason that the SJC found a Coverall "franchisee" to be an employee for purposes of the unemployment statute – i.e., because the company could not prove that the worker was "engaged in an independently established trade, occupation, profession or business." As in the Coverall SJC decision, where the Court agreed that the worker was "wearing the hat" of Coverall instead of "wearing the hat" of his own independent business, 447 Mass. at 858-59 (citations and internal quotation marks omitted), Jani-King cleaning

4

## FACTS

Pursuant to Local Rule 56.1, the Plaintiffs' Statement of Undisputed Facts accompanies this memorandum and is incorporated by reference.

## ARGUMENT

**A. THE PLAINTIFFS MUST BE DEEMED EMPLOYEES UNDER THE MASSACHUSETTS INDEPENDENT CONTRACTOR STATUTE, UNLESS JANI-KING CAN PROVE ALL THREE PRONGS OF SECTION 148B.**

To defeat Plaintiffs' claim that they have been misclassified as independent contractors, Jani-King must prove each of the three prongs of § 148B:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; *and*
>
> (2) the service is performed outside the usual course of the business of the employer; *and*
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

M.G.L. c. 149, § 148B(a) (emphasis added). By its plain terms, this test is conjunctive, so Jani-King's cleaning workers are employees unless Jani-King can satisfy all three of the prongs. Somers, 454 Mass. at 590-91 ("[U]nless [the defendant] were to prove at trial the three criteria required to establish that the plaintiff was an independent contractor under G.L. c. 149, § 148B the plaintiff, as a matter of law, *was* an employee of [the defendant] even if he was not hired as an employee.") (emphasis in original).

The language and history of section 148B demonstrate that the Massachusetts legislature intended the statute to be construed strictly in favor of employees. For

---

workers must, by contract, wear the hat of Jani-King because they are bound by a non-compete agreement that *prohibits them* from engaging in cleaning work for any customer that is not a Jani-King customer. (Goffredo Depo. [Exh. M] at 76-77, 104; Franchise Agreement [Exh. S] at ¶¶ 4.19.2, 5.2.3).

5

example, in addition to putting the burden of proof on presumptive employers to establish independent contractor status, requiring them to prove all three prongs of the test, an employer cannot use a contract to exempt itself from the statute's stringent standards. <u>Somers</u>, 454 Mass. at 591. <u>See</u> <u>also</u> M.G.L. c. 149, § 148 (employers may not contract out of wage laws); <u>DiFiore v. American Airlines, Inc.</u>, 454 Mass. 486, 496-97 (2009) (rejecting defendant's attempt to use "special contract" to exempt itself from a wage law, finding that such a result would allow an "end run" around the law). Over time, the legislature has repeatedly amended the law to strengthen its provisions. <u>See</u> 2004 Mass. Adv. Legis. Serv. 193, § 26 (where prong two of section 148B(a) previously read, "and such service is performed either outside the usual course of the business for which the service is performed *or is performed outside of all places of business of the enterprise*," amendment deleted italicized language, making it more difficult for presumptive employers to establish independent contractor status). Massachusetts courts, meanwhile, have consistently interpreted the statute broadly in favor of employees, as discussed above. Indeed, based on the statute's strict language, a presumptive employer's intent or good faith do not matter. <u>Somers</u>, 454 Mass. at 591.

Courts also have read the statute broadly because the provisions of section 148B are designed to protect not only employees, but state and federal governments and law-abiding competitors. <u>Id.</u> at 592-93; Attorney General Advisory on M.G.L. c. 149, § 148B 2008/1 [Exh. C] at 1 ("The need for proper classification of individuals in the workplace is of paramount importance to the Commonwealth."). <u>Cf.</u> <u>Martin v. Tango's Restaurant, Inc.</u>, 969 F.2d 1319, 1324 (1st Cir. 1992) (recognizing that federal wage laws are "intended to protect complying competitors of the defendants, in addition to making the

employee whole"). If commercial cleaning businesses like Jani-King are permitted to escape liability for workers' compensation, unemployment contributions, payroll taxes, health insurance, and other costs by treating their workers as independent contractors, they would gain an unfair competitive advantage over those companies that play by the rules and provide employee protections to their cleaning workers.[8]

In construing section 148B, therefore, this Court should adhere to the clear legislative intent that the statute be construed broadly in favor of employees, like the Plaintiffs in this case. To do otherwise would undermine the important protections put into place for employees, law-abiding competitors, and the general welfare.

**B.	PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT, BECAUSE JANI-KING CANNOT PROVE THE SECOND PRONG OF SECTION 148B.**

Pursuant to this Court's August 17, 2010, Order, although Plaintiffs maintain that Jani-King cannot prove any of the three prongs of section 148B (particularly prongs two and three), they now move for summary judgment only with respect to prong two. As the Court said at the August 16, 2010, hearing, "This second prong may indeed be the silver bullet." (Trancript, ECF No. 161, at 37). Under that prong, the Plaintiffs must be deemed employees unless Jani-King can establish that the commercial cleaning services performed by Plaintiffs are "performed outside the usual course of the business of" Jani-King. G.L. c. 149, § 148B(a)(2).

Plaintiffs have a straightforward position that is consistent with every case that has construed this provision of section 148B: the commercial cleaning work performed by the Plaintiffs is within the usual course of business of Jani-King, the self-professed

---

[8]	One defense attorney has touted the fact that employers can save about 20-30 percent of the costs of employment by treating individuals as independent contractors. "Worker-Classification Enforcement on the Rise," New England In-House (Jun. 13, 2011) [Exh. J].

7

"King of Clean" and "The Proven Leader in the $100 Billion Commercial Cleaning Industry." (Website Excerpts [Exh. R] at 6). Jani-King, on the other hand, relies on a tortured argument that it is not in the "commercial cleaning" business, but in the "franchising" business. Plaintiffs' position is consistent with prior cases interpreting section 148B and with the undisputed facts in this case. Jani-King's position is not consistent with either.

In cases arising under section 148B, Massachusetts and federal courts have uniformly rejected similar efforts by defendants to narrowly frame their "usual course of the business," denying that they are in the business of doing what they obviously do. Most significantly, in a recent decision involving a virtually identical franchise-based cleaning enterprise (Coverall), Judge Young ruled that the defendant could not satisfy prong two of section 148B. Awuah, 707 F. Supp. 2d at 82-84. Coverall, like Jani-King here, argued "that it is not in the commercial cleaning business, but rather it is in the franchising business." Id. at 82. The court rejected that argument, concluding that "[d]escribing franchising as a business in itself…sounds vaguely like a description for a modified Ponzi scheme." Id. at 84. Recognizing the reality of Coverall's dependence on cleaning workers, the court ruled "that Coverall sells cleaning services, the same services provided by [the] plaintiffs." Id. Jani-King's argument that it is in the business of "franchising" plainly fares no better here, because its business is the same as Coverall's.[9]

---

[9] As discussed below, cleaning franchises are not like other franchises. Although Jani-King's reliance on a franchise model is irrelevant for purposes of section 148B, its franchise-based defenses also lack any persuasive value given the unique and problematic way the franchise model is used in the cleaning industry. See Section C, infra.

8

In cases outside of the commercial cleaning context, courts have rejected similar efforts by employers to define their business narrowly in an effort to avoid liability under section 148B. For example, a Massachusetts Superior Court held that a courier company failed to satisfy the second prong where the work of the plaintiff, a delivery driver, was within the usual course of business of the corporation for which he worked; the company denied it was courier company and claimed that it was "only a marketing logistics corporation." Fucci [Exh. F], at 9. The court noted, among other things, that the company indicated it was a courier business in its agreements with the plaintiffs and on its website. Id. Similarly, a nude dancer was found to work within the usual course of business of the adult entertainment lounge at which she danced, despite the lounge's argument that its principal activity was not adult entertainment but "selling alcohol." Chaves [Exh. G], at 6-9 ("[a] court would need to be blind to human instinct to decide that live nude entertainment" was not an integral part of the defendant's business; "[t]he sale of alcohol and the exotic dancing, together and intertwined, both clearly comprise the" defendant's business). In another case, a Massachusetts Superior Court granted summary judgment to an oil delivery truck driver under section 148B, ruling that he was misclassified as an independent contractor where the services he performed (driving trucks to deliver oil) was within the usual course of business of the company (oil delivery services). Amero [Exh. H], at 5. In a case involving workers who were sent out to perform auto detailing at dealerships, the court concluded that the employer, Auto Shine, failed to satisfy the second prong, because "[t]he workers are engaged in the exact business Auto Shine is engaged in; Auto Shine merely provides the administration." Rainbow Development, LLC v. Dep't of Industrial Accidents, 2005 WL

3543770, *3 (Suffolk Super. Ct. Nov. 17, 2005) [Exh. I]. As the court pointed out, "[w]ithout the services of the workers, Auto Shine would cease to operate." Id. Finally, in a case involving a furniture delivery operation, the court rejected the defendant's attempt to distinguish between its business of "manag[ing] the retailers' deliver function" and the business of its alleged independent contractors, who "perform the actual furniture deliveries." Oliveria [Exh. D] at *6.

The reasoning of these cases applies with even greater force here. That Jani-King and its franchisees are in the same commercial cleaning business is demonstrated, beyond any genuine dispute, by Jani-King's contractual statements, as well as statements in its materials and on its website, that it is in the commercial cleaning business, by its exclusive focus on the commercial cleaning industry, by its obligation to provide cleaning services under its own cleaning contracts, and by the extent to which the work of Jani-King and franchisees is inextricably bound together.

First, Jani-King states in its contracts with franchisees and cleaning clients that it is in the commercial cleaning business. The franchise agreements that Jani-King drafts and presents to franchisees as take-it-or-leave-it adhesion contracts state, "Franchisor is in the business of *operating* and franchising *professional cleaning and maintenance businesses*…." (Franchise Agreement [Exh. S] at ¶ 1.1) (emphasis added).[10] Likewise, in its cleaning contracts with clients, Jani-King states, "Jani-King is in the business of providing commercial cleaning and maintenance services." (Jani-King Maintenance

---

[10] In his declaration to this Court, Jani-King Executive Vice President and Special Counsel Donald Burleson states that when drafting this language in the franchise agreement, Jani-King was referring to the "brand" Jani-King, not to the Defendants. (Burleson Decl. [Exh. L] ¶ 10). But that is simply not what the franchise agreement says. It says that "Franchisor is in the business of operating and franchising professional cleaning and maintenance businesses." (Franchise Agreement [Exh. S] at ¶ 1.1). "Franchisor" is defined as Jani-King of Boston, Inc., not as the "brand" Jani-King. (Id. at 2).

10

Agreement [Exh. U] at 1). Jani-King's repeated claims – in contracts that it drafted and that were signed by its authorized representatives – that it is in the business of "operating" cleaning businesses and "providing" commercial cleaning services constitutes compelling evidence that precludes Jani-King from now claiming otherwise. See Fucci [Exh. F] at 9 (concluding that employer was in the courier business based on representations to that effect in its agreements with the plaintiffs).

      Second, Jani-King operates solely in the commercial cleaning industry. Jani-King's decision to use a so-called franchising model is not what is relevant for purposes of determining its usual course of business; what is relevant is Jani-King's singular focus on commercial cleaning. That singular focus is demonstrated throughout its websites (e.g., www.janiking.com, www.janikingcleaningservices.com), where it sells itself to the public not as the "King of Franchising," but as the "King of Clean." (Website Excerpts [Exh. R] at 5-8). See Fucci [Exh. F] at 9 (looking to company's website for evidence of its course of business). The headline on its website does not say "Welcome to Jani-King *Franchising Services*," it says "Welcome to Jani-King *Commercial Cleaning Services*." (Id.) (emphasis added). Indeed, the website – which indicates how Jani-King holds itself out to the public – is filled with statements touting the fact that Jani-King is in the commercial cleaning business. It states, for example, that "[e]very Jani-King regional office is staffed with experts in operations and customer service whose primary responsibility is ensuring the satisfaction of *our* clients." (Id.) (emphasis added). And it offers "[a] local operations team on-call 24 hours a day, willing to work at a moment's notice." (Id.). Presumably, that is not an operations team willing to *sell a franchise* at a moment's notice, but a team prepared to *provide cleaning services* at a moment's

11

notice. Regardless of whether or how it uses a franchise model, therefore, there is no dispute that Jani-King's singular focus is to provide commercial cleaning services.

<u>Third, Jani-King owns all cleaning contracts, so it is contractually obligated to provide cleaning services.</u> When Jani-King signs on a new client (regardless of whether the client was initially identified by a Jani-King salesperson or a cleaner), the cleaning contract is between Jani-King and the client, not the cleaner and the client. This fact is established by Jani-King's own franchise agreement:

> All contracts under which terms services are provided by any Jani-King franchisee are the sole property of Jani-King. The Franchisee may solicit potential clients to provide cleaning and maintenance services through their franchise. However, all contracts for the provision of services by Franchisee must be drafted by Jani-King and must name Jani-King as the sole party to the contract (other than the client).

(Franchise Agreement [Exh. S] at § 4.19.2). As demonstrated by one of those cleaning contracts, it is Jani-King, *not any of its cleaning franchisees*, that is contractually obligated to provide cleaning services. (Jani-King Maintenance Agreement [Exh. U] at 1). Consistent with this contractual obligation, if a cleaner is not cleaning an account in an acceptable way, Jani-King will find someone else to clean the account. (Goffredo Depo. [Exh. M] at 82-83). On occasion, Jani-King must arrange for a "subcontractor" to provide cleaning services. (2d Dockery Decl. [Exh. O] ¶ 27). Jani-King monitors cleaning performance by having its "operations" department – staffed by experienced cleaning personnel – conduct inspections, and by having its customer service department field client complaints and monitor client satisfaction. (2d Dockery Decl. [Exh. O] ¶ 25; Goffredo Depo. [Exh. M] at 14-15, 25-26, 28-29, 87-88; Mota Depo. [Exh. N] at 7, 16; Dockery Depo. [Exh. P] at 18; Burleson Depo. [Exh. Q] at 30-31). Jani-King obviously benefits from being the party named on cleaning contracts, because then Jani-King,

rather than any of its cleaners, retains control over all of the cleaning business. But Jani-King cannot have it both ways. It cannot insist on being the party to the commercial cleaning contracts (thereby ensuring control over those contracts), while simultaneously claiming that its "usual course of business" does not include commercial cleaning.

Fourth, the work of Jani-King and its franchisees is so intertwined that it is impossible to characterize them as having different courses of business. In a section 148B case involving furniture delivery services, when the defendant attempted to distinguish its business from the business of its putative employees, the Court rejected that argument, concluding that "the managing and performing functions of furniture delivery result in a symbiotic relationship." Oliveira, 2010 WL 4071360 at *6-*7. The court went on: "Without providing physical delivery of furniture, which is essential to its business, [the defendant's] business would not exist." Id. Likewise, without its cleaners, Jani-King would cease to exist – it would lose the people who perform the services for which Jani-King's customers pay, and it would lose its only source of revenue.

The "symbiotic" relationship between Jani-King and its cleaners makes it clear that both are part of a single operation, just like any large company has various departments that work together to do the company's business.

- Jani-King develops the cleaning methods, procedures, and training materials upon which cleaners rely to get trained and do their work. (Burleson Decl. [Exh. L] ¶ 14). For example, Jani-King trains cleaners how to strip and wax floors, shampoo carpets, clean bathrooms, and clean offices. (Goffredo Depo. [Exh. M] at 51, 75; Mota Depo. [Exh. N] at 34). This training is plainly not developed or delivered by employees who are "franchising" experts, but by Jani-King employees who are cleaning experts.

- Jani-King provides advertising and accounting services for cleaners. (2d Dockery Decl. [Exh. O] ¶ 16). Among other things, Jani-King is responsible for billing and collecting money from clients. (Burleson Decl. [Exh. L] ¶ 31;

2d Dockerty Decl. [Exh. O] ¶ 30). Indeed, clients send payments directly to Jani-King. (Goffredo Depo. [Exh. M] at 49).

- As a normal part of its day-to-day operations, Jani-King employees regularly interact with cleaners to assist on various issues, including offering suggestions about how to address a disagreement with a client, how to address unique cleaning issues, and how to solicit and bid accounts. (2d Dockery Decl. [Exh. O] ¶ 16).

- Jani-King works to obtain (and, if necessary, modify) cleaning contracts for clients whose offices are then cleaned by cleaners. (2d Dockery Decl. [Exh. O] ¶ 22; Goffredo Depo. [Exh. M] at 30; Dockery Depo. [Exh. P] at 70).

- Jani-King developed and maintains a company-wide database that is used to manage information about client accounts, including sales, inspections, complaints, accounting, billing, and more. (Goffredo Depo. [Exh. M] at 40-42; Dockery Depo. [Exh. P] at 38; Mota Depo. [Exh. N] at 26-27).

- New cleaners typically obtain required cleaning equipment by leasing it from Jani-King. (Dockery Depo. [Exh. P] at 67-68.[11]

This evidence makes clear that Jani-King would not survive without its cleaners, and its cleaners would not survive without Jani-King. Together, they form an integrated commercial cleaning company, just like UGL Services (Unicco), National Cleaning Services, or other large commercial cleaning companies that properly treat their cleaners as employees instead of independent contractor "franchisees."

Jani-King likely will attempt to differentiate what its "employees" do from what its cleaners do by making distinctions between non-cleaning functions (such as advertising, billing, etc.) and cleaning functions (such as vacuuming, dusting, or mopping). If the "usual course of business" test were interpreted so narrowly – i.e., looking at each individual employee's duties – then it would be rendered meaningless. Indeed, no court has ever interpreted section 148B in such an overly pinched fashion.

---

[11]  Additional details regarding these facts are described in Plaintiffs' Statement of Undisputed Facts.

As recognized by every other court to consider the issue, a "course of business" is not the work conducted by each individual employee; it is the overall operation of a group of employees working to deliver a specific product or service. Jani-King and its cleaners work together towards a common goal: providing commercial cleaning services to clients.[12]

The bottom line is that Jani-King and its cleaning workers together constitute an international commercial cleaning business. That Jani-King is in the commercial cleaning business is definitively established by its own contracts, by its public marketing, by its contractual obligation to provide commercial cleaning services, and by the work it does to provide cleaning services to "its" clients. As a result, because Jani-King cannot prove that the services performed by cleaners are "performed outside the usual course of the business of [Jani-King]," M.G.L. c. 149, § 148B(a)(2), Plaintiffs are entitled to summary judgment on their misclassification claim.

**C.   JANI-KING'S USE OF THE FRANCHISE STRUCTURE DOES NOT PROVIDE IMMUNITY FROM LIABILITY UNDER SECTION 148B.**

Jani-King is expected to claim that it followed state and federal franchise laws, and that its cleaning workers are therefore legitimate franchisees.[13] Jani-King's attempt

---

[12]   The headquarters operations of most large corporations do not typically engage in the corporation's store-front business – e.g., Walmart's executive office does not directly manage and operate stores, nor do its executives work the cash registers and stock the shelves. Likewise, all national cleaning companies maintain headquarters and local offices (where the business is managed and administered), and employ workers who do the cleaning. Indeed, Jani-King's "franchise expert," Michael Seid, acknowledged that in a traditional cleaning company (what he called a "vertically integrated" company), the company's chief executive officer would be in the same business as the cleaners, even though the CEO does not perform any cleaning work. (Seid Depo. [Exh. W] at 64-67).

[13]   Likewise, Jani-King is expected to rely on testimony from its "franchising expert," Michael Seid. For the reasons that follow, Mr. Seid's testimony is irrelevant, because Jani-King's reliance on a franchising model is irrelevant under prong two. Moreover, Mr. Seid admitted that he can provide no expertise on the issue now before this Court, which is whether the Plaintiffs were employees under section 148B: "I'm totally able to answer your questions on what I believe is an employer-employee on a business point of view, but not a legal point of view." (Seid Depo. [Exh. W] at 82).

to hide behind the franchise label is misplaced for a fundamental reason: section 148B provides no defense for franchisors. There is nothing in the language of section 148B that supports a "franchise" defense. Likewise, no court in Massachusetts has ever recognized such a defense. On the contrary, the SJC deemed a Coverall franchisee to be an employee. Coverall, supra. And another court in this District ruled likewise. Awuah, supra. The same test that applies to every other putative employer under section 148B applies with equal force to franchisors.

Jani-King likely will make emotional appeals to the supposed ability of its "franchisees" to pursue the "American dream" of owning a business. This argument was foreshadowed by loaded questions it asked during depositions of absent class members:

> Q: Do you like being able to set your own schedule?
> A: Yes.
>
> * * *
>
> Q: Do you like the ability to hire and fire your own employees?
> A: Yes.

(Furrier Depo. [Exh. X] at 32). In addition to being legally irrelevant and otherwise disingenuous (who would not like to set their own schedule?), these questions ignore a simple point. Employers are permitted to give their employees these types of freedoms. If Jani-King wants its cleaning workers to have entrepreneurial incentives, it can do so through commissions, performance-based pay, bonuses for finding new clients, the ability to hire and fire other employees, the freedom to set their own schedules, etc. Moreover, Jani-King's cleaning workers are hardly free to operate their own business. For example, as discussed above, Jani-King prevents its workers from having any

contractual rights under cleaning agreements, inspects their work, retains the right to assign and remove client accounts, and restricts them from performing other cleaning services.

Although Jani-King likely will claim that holding it liable will put franchising at risk in Massachusetts, that claim is misplaced. Most importantly, it is for the Massachusetts legislature rather than this Court to address such policy concerns. Moreover, if cleaning franchising is put at risk, that would be a desirable outcome. There are well-known abuses of "franchise" systems in the commercial cleaning industry, where large franchisors (such as Jani-King, Coverall, Jan-Pro, and others) target low-wage workers, often immigrants, to pay thousands of dollars for the privilege of cleaning office buildings as "franchisees." These companies use the franchise label to avoid any obligations as an employer and to justify charging the cleaners substantial fees for the right to work (and thus severely underbid legitimate cleaning companies that use properly classified employees to do the cleaning work). These abuses are so widespread that the Federal Trade Commission issued a "consumer alert" in 2001 about janitorial franchises. Federal Trade Commission, "Buying a Janitorial Service Franchise: Making a Clean Sweep" (August 2001) (available at http://www.ftc.gov/bcp/menus/consumer/invest/business.shtm).

Unfortunately, that alert did little to stem abuses in the industry. The Massachusetts Supreme Judicial Court recently heard oral argument in the Awuah case, which involves a misclassification claim against Coverall. The issue currently before the SJC is the proper measure of damages in a case in which a plaintiff proves misclassification under section 148B. That issue was certified to the SJC by Judge

17

Young, after he ruled that Coverall violated section 148B by misclassifying its cleaning workers as "franchisees" – i.e., as independent contractors. Awuah, supra. In an amicus brief submitted to the SJC by local and national non-profit groups, amici described significant and long-standing abuses in the commercial cleaning industry by companies such as Coverall and Jani-King. Brief of Amici Curiae Brazilian Immigrant Center, *et al.* (Apr. 28, 2011) [Exh. K]. An economic study of the industry highlighted how the odds are stacked against the cleaning workers who are classified as "franchisees," and identified Jani-King as one of the principal players in this industry. David Weil, Market Structure and Compliance: Why Janitorial Franchising Leads to Labor Standards Problems ("Weil Study"), Boston University School of Management Working Paper (April 2011) (included in Exh. K) at A182-A184 (concluding that franchising is not inherently profitable for cleaning *franchisees* – like the Plaintiffs here – but that Jani-King, as a *franchisor*, enjoyed estimated profitability of about 9.5%, the second highest among its major competitors).

In addition to describing how the cleaning franchise structure results in greater violations of employment laws, the Weil Study identified a critical way in which cleaning franchises are different from other franchise systems. In a typical franchise – such as a McDonald's – the franchisor and the franchisee share a common interest in keeping their customers. But in the cleaning franchise industry, a franchisee's loss of a cleaning customer presents an opportunity for move revenue for the franchisor, which can assign the customer to another franchisee, thereby realizing an additional "finder's fee" while continuing to enjoy the same revenue from the customer. This situation creates a

troubling conflict of interest between franchisors like Jani-King and its cleaners. Weil Study, at A177.[14]

The cleaning franchise industry is also unusual to the extent it relies on "franchisees" that, more often than not, are individuals who do all the work of the "franchise" themselves. About 75 percent of Jani-King's Massachusetts "franchisees" are individuals who do the cleaning work alone, with no employees. (Goffredo Depo. [Exh. M] at 64-65; Mota Depo. [Exh. N] at 36-37). In contrast, more traditional franchises – like a McDonald's restaurant or a Marriott hotel – operate regular business operations, with regular employees who enjoy the benefits and protections of employment. In those franchises, the abuses of misclassification are generally non-existent, because the employees are entitled to workers' compensation protection, unemployment coverage, health and welfare benefits, etc. Jani-King's "franchisees" enjoy no such benefits or protections. While a handful of Jani-King franchisees might hire a few people to help them clean, that just makes a bad situation even worse, because the cleaning helpers are also treated like contractors, without any benefits of employment. (Bastos Depo. [Exh. V] at 21).

In short, to the extent Jani-King places any reliance on its status as a franchisor, that reliance is misplaced. By its plain terms, and as other courts (including the SJC and another court in this District) already have held, section 148B applies to cleaning franchises. Any policy-based arguments about allegedly adverse consequences to other franchisors are not for this Court to resolve, and are without any force in the context of well-known problems with the cleaning franchise industry.

---

14     These issues underlie the Plaintiffs' claims for unfair and deceptive business practices (Count I).

## CONCLUSION

The Plaintiffs are entitled to summary judgment if Jani-King is unable to prove all three prongs of section 148B. Based on the undisputed facts, Jani-King cannot prove prong two: there can be no genuine dispute that the work performed by the Plaintiffs and other Jani-King cleaners falls squarely within Jani-King's usual course of business. As a result, Plaintiffs are entitled to summary judgment on Count II of the Second Amended Complaint.

Respectfully submitted,

VINCENT DeGIOVANNI, MARIETTE BARROS, and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (BBO #640716)
Hillary Schwab (BBO #666029)
Stephen Churchill (BBO #564158)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated: July 15, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2011, a copy of this document was served by electronic filing on all counsel of record.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan