UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

VINCENT De GIOVANNI,
MARIETTE BARROS, DIAMANTINO
FERNANDES, MARIA PINTO,
and all others similarly situated,

                 Plaintiffs,

                 v.

JANI-KING INTERNATIONAL, INC.,
JANI-KING, INC., and
JANI-KING OF BOSTON, INC.,

                 Defendants.
_____

Civil Action No. 07-10066-MLW

## **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

After voluminous briefing from the parties[1], extensive analysis[2], and a lengthy hearing[3], this Court entered summary judgment against all three Defendants on the Plaintiffs' misclassification claims under M.G.L. c. 149, § 148B. In reaching that result, the Court carefully and explicitly considered the distinct identities of each of the three Defendants, and ruled that all three Defendants were the Plaintiffs' employers as defined in the statute. It is well settled that a court should revisit its interlocutory rulings only "sparingly," and that permitting a motion for reconsideration is "an extraordinary remedy." Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.,

---

[1] In addition to lengthy factual statements, there were a total of four briefs, totaling close to 80 pages. (ECF Nos. 184, 189, 196, 198).

[2] At the June 6, 2012 hearing, the Court reported, "I have studied this intensively in advance of the hearing." (6/6/12 Transcript, ECF No. 209, pp.77-78).

[3] The hearing began at 3:00 p.m. and concluded at 6:15 p.m. (Id. at 1, 107).

682 F.3d 26, 31 (1st Cir. 2012), quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (other citation omitted). There are no grounds for doing so here.

Having had ample opportunity to make all factual and legal assertions to support their positions, and knowing that Plaintiffs were seeking summary judgment against *all* three Defendants, the Defendants now ask the Court to revisit and change its rulings regarding the liability of Jani-King, Inc. and Jani-King International, Inc., companies that wholly own and work in a closely interrelated fashion with Jani-King of Boston, Inc. The Defendants' motion should be denied, both because there is no procedural basis for this Court to re-do what it already has done, and because the Court's entry of summary judgment against all three Defendants was well supported by the record and applicable authority.

**Argument**

A district court has discretion to reconsider its interlocutory orders, but "[t]he Supreme Court…has stated that 'courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Sarro v. Philip Morris USA, Inc., 2010 WL 1930442, at *1 (D.Mass. May 12, 2010) (Wolf, J.), quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988) (other citation omitted). Likewise, the First Circuit recently reminded courts that "[t]he granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Fabrica de Muebles, 682 F.3d at 31 (citations omitted).

A motion for reconsideration is not justified by a party's failure to make arguments that it could have made earlier. As the First Circuit repeatedly has

2

emphasized, a motion for reconsideration "'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" Id., quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997), quoting Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.1996) (internal quotation marks omitted).

There are only three exceptions to the "need for finality," and these "exceptions are 'narrowly configured and seldom invoked.'" Id., quoting United States v. Connell, 6 F.3d 27, 31 (1st Cir. 1993). The three exceptions are: "(1) if the moving party presents newly discovered evidence, (2) if there has been an intervening change in the law, or (3) if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." Id., quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (other citation omitted).

Based on these standards, Jani-King's motion for reconsideration should be denied for two principal reasons. In the first place, Jani-King had ample opportunity to argue its position in the voluminous briefing that preceded this Court's summary judgment ruling. The Plaintiffs made clear that they were seeking summary judgment under M.G.L. c. 149, § 148B with respect to all of the Defendants, so Jani-King's failure to argue its position more fully cannot be remedied through a motion for reconsideration. In the second place, Jani-King has failed to show that the Court's decision "was based on a manifest error of law or was clearly unjust." Sarro, 2010 WL 1930442, at *1. In fact, as discussed in more detail below, the Court's decision was well supported.

**1. There is no basis for this Court to entertain a motion for reconsideration given that the Defendants already had a full opportunity to address the very issue on which they seek reconsideration.**

In their motion for summary judgment, the Plaintiffs made abundantly clear that they were asking the Court to enter summary judgment in their favor against *all* three Defendants. After defining "Jani-King" to refer collectively to all three Defendants, Plaintiffs concluded their motion as follows:

> The Plaintiffs are entitled to summary judgment if Jani-King is unable to prove all three prongs of section 148B. Based on the undisputed facts, Jani-King cannot prove prong two: there can be no genuine dispute that the work performed by the Plaintiffs and other Jani-King cleaners falls squarely within Jani-King's usual course of business. As a result, Plaintiffs are entitled to summary judgment on Count II of the Second Amended Complaint.[4]

(ECF 184 at 1, 20). As this language demonstrates, the Plaintiffs were seeking not just a legal ruling about prong two; they were seeking summary judgment on Count II. Nothing in the Court's prior orders excused the Defendants from making all arguments they deemed necessary to oppose the entry of summary judgment against them. On the contrary, the Court had ordered that Plaintiffs file "motions for summary judgment based on section 148B(a)(2)" by a certain date (which subsequently was extended), in no way limiting the Defendants' obligation to assert all relevant defenses. (ECF No. 159 at 3). It was incumbent on the Defendants, therefore, to raise any defense they had to defeat the entry of summary judgment against them on Count II.

Moreover, in the body of their summary judgment brief and in their statement of material facts, the Plaintiffs included numerous arguments and record citations regarding the interrelated operations and common (and exclusive) focus on commercial

---

[4] Like in their motion for summary judgment, the Plaintiffs' Second Amended Complaint sought relief against "Jani-King," which was explicitly defined to include all three Defendants. (ECF No. 103 at 1).

4

cleaning of all three of the Defendants. (ECF No. 184 at 7-15; ECF No. 185 at ¶¶ 1-3, 7-16, 21-64). Indeed, the principal focus of the Plaintiffs' legal arguments and statement of facts was on the unified, interconnected nature of the Jani-King business model, from cleaners up through the corporate offices of Jani-King International – a model akin to any large business that had has a national headquarters, regional managers, and local offices. (Id.). It is a boldface misrepresentation, therefore, for the Defendants now to assert that "Plaintiffs never asserted the arguments they put forth based on Section 148B(a)(2) were sufficient to form the basis of a finding that they were employees of Jani-King, Inc. or Jani-King International, Inc." (ECF No. 213 at 3). The Plaintiffs did not need to address differences between the three Defendants, because those differences are immaterial for purpose of Count II.

That Jani-King decided to unilaterally declare that "joint employment" was not before the Court, and therefore that it was not going to address the issue of separate liability (ECF No. 189 at 3-4), does not change the fact that the Plaintiffs moved for summary judgment against all three Defendants. It goes way too far for the Defendants to claim that their arguments in opposing summary judgment were "predicated on the fact that each entity is distinct" and that "[t]o that end, Defendants' briefs and supporting evidence distinguished between each individual defendant." (ECF No. 213 at 4). In fact, Defendants' summary judgment briefs mostly refer to themselves collectively as "Jani-King," without making any distinctions between them. (ECF No. 189 at 1-20). In one section, the services provided by Jani-King International are highlighted, and then the Defendants state, "Jani-King of Boston implements the Jani-King system at the regional level." (Id. at 18-19). But it is far different, on the one hand, to note some

5

*factual differences* between Jani-King of Boston and Jani-King International (which Defendants did) and, on the other hand, to make a *legal argument* that those factual differences constitute a defense to summary judgment (which the Defendants did not do).

Any arguments that the Defendants had, individually or collectively, should have been made in opposition to Plaintiffs' motion. Because a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures," the Defendants cannot belatedly make arguments that it chose not to make previously. Fabrica de Muebles, 682 F.3d at 31 (citations and internal quotation marks omitted).

**2. There is no reason for the Court to revisit its ruling, because the ruling was not based on a manifest error of law and was not clearly unjust.**

The test that Jani-King must meet to support its motion for reconsideration is an extraordinarily high one. Not only must Jani-King show that the Court's decision was fatally flawed by a "manifest error of law" or was "clearly unjust," but those terms must be "narrowly configured." Sarro, 2010 WL 1930442, at *1 (citation and internal quotation marks omitted). A "manifest error" means "wholesale disregard, misapplication, or failure to recognize controlling precedent." Quad/Graphics, Inc. v. One2One Communications LLC, 2012 WL 2370681, at *2 (E.D.Wis. June 21, 2012), quoting Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir.2000). Jani-King has not and cannot meet that standard for a simple reason: the Court's decision was well supported.

Plaintiffs' summary judgment motion did not seek to establish an employee-employer relationship under a multi-factor common law test. Instead, it sought to establish an employee-employer relationship under the three-prong test of M.G.L. c.

6

149, § 148B, which provides that "an individual *performing any service*, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:—

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>
> (2) the service is performed outside the usual course of the business of the employer; and,
>
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

M.G.L. c. 149, § 148B(a) (emphasis added). Based on the plain language in the statute, there is no prerequisite for a direct contract between the worker and the employer in order to establish liability under section 148B. Chuan Wang v. International Business Machines Corp., 82 Mass. App. Ct. 1108 (Table) (2012) ("A formal employment contract…is not a prerequisite to employee status under the Wage Act. … The test is whether an individual 'performs services' for the employer."), citing Somers v. Converged Access, Inc., 454 Mass. 582, 589 (2009), and Stanton v. Lighthouse Financial Servs. Inc., 621 F. Supp. 2d 5, 11 (D.Mass. 2009) ("The Wage Act creates a rebuttable presumption that any individual 'performing any service' for another is an employee for purposes of Section 148") (internal quotations omitted). There is undisputed evidence both that the Plaintiffs "performed services" for the three Defendants and that those services were performed within the "usual course of business" of each of the Defendants, which is commercial cleaning.

As Plaintiffs set forth in their summary judgment papers, Jani-King of Boston is little more than a regional office of Jani-King International, as the Defendants

7

themselves admitted in their summary judgment papers. (ECF No. 189 at 19) ("Jani-King of Boston implements the Jani-King system at the regional level."). Indeed, Jani-King International is the self-described "architect" – and, indeed, the active manager – of the entire Jani-King operation. (ECF No. 185 at ¶¶ 1, 8-16, 24, 40-41, 49, 53-55, 59). For example, when Jani-King of Boston sells a "franchise," it submits all completed paperwork to Jani-King International to review. (Id. ¶ 8). Jani-King International hires and oversees Jani-King of Boston's "Regional Director," and, more generally, oversees the management and operation of the entire Jani-King of Boston office. (Id. ¶ 9). Jani-King International handles telemarketing and customer service functions for its regional offices, including Jani-King of Boston. (Id. ¶¶ 10, 53). Jani-King International also provides billing services for its regional offices. (Id. ¶ 54). As heralded on Jani-King International's website, it is the "King of Clean" for commercial cleaning, and it presents itself as a unified operation, not a collection of independent offices: "Every Jani-King regional office is staffed with experts in operations and customer service whose primary responsibility is ensuring the satisfaction of *our* clients." (ECF No. 184 at 11) (emphasis added).

The Court relied on all of these facts, in addition to numerous others, in reaching its summary judgment decision. (6/6/12 Transcript, ECF No. 209, at 87-96). The Court expressly noted, for example, that "[Jani-King International] oversees the management and operation of the JKB, the Jani-King Boston, office." (Id. at 89).

These undisputed facts paint a clear picture: the Plaintiffs do not "perform services" just for Jani-King of Boston; instead, they perform services for all of the Defendants. It is unsurprising that when opposing summary judgment the Defendants

8

failed to make any arguments that their separate identities constituted a viable defense under section 148B, because the "separate identities" issue is a red herring in the context of this case.[5]

That the Plaintiffs perform services for all of the Defendants is demonstrated by the simple fact that without the services of the cleaners, all of the Defendants would cease to operate.  See Rainbow Development, LLC v. Dep't of Industrial Accidents, 2005 WL 3543770, *3 (Suffolk Super. Ct. Nov. 17, 2005) (in case involving workers who were sent out to perform auto detailing at dealerships, court concluded that employer failed to satisfy second prong because "[w]ithout the services of the workers, [the employer] would cease to operate") (ECF No. 186-9 at 3).  In its summary judgment ruling, this Court noted that "the cleaners are essential to the business of Jani-King, Boston *and all of the Jani-King entities*."  (6/6/12 Transcript, ECF No. 209, at 96) (emphasis added).

While the Defendants place great emphasis on the supposed need for a "direct" service relationship (ECF No. 213 at 14-15) – a term that they fail to define – the Plaintiffs sufficiently addressed that need by citing undisputed evidence about the interconnected nature of the Jani-King entities.  Simply put, the Jani-King entities are so intertwined that it is impossible to make meaningful distinctions about which entity was being "directly" serviced by the Plaintiffs and their fellow cleaners.

---

[5]  The Defendants' reliance on the Attorney General's Advisory 2008/1 (ECF No. 213 at 12) is misplaced.  While the advisory states that "[o]nly when an individual or individuals are classified other than as an employee will there be a determination of whether any of the prongs – including the complex prong two – are violated," it does not logically follow that there can be only one employer under section 148B.  This portion of the advisory simply identifies the circumstances when the Attorney General's office will exercise its prosecutorial discretion – i.e., only when a worker is not classified as anyone's employee, as is true here.

9

Moreover, the liability provisions of section 148B are expansive. After setting out the test for determining whether a worker is an employee or independent contractor, the statute imposes liability not on "direct" employers only, but on "*any* officer or agent having the management of the corporation or entity." M.G.L. c. 149, § 148B(d) (emphasis added). As a result, even if Jani-King of Boston were the only "direct" employer (whatever that means) based on its failure to satisfy prong two, liability for misclassifying the Plaintiffs would not be limited to Jani-King of Boston. Instead, liability would attach to any entity "having the management" of Jani-King of Boston. Given the undisputed evidence that Jani-King International controls and manages Jani-King of Boston, all of the Defendants are liable under section 148B.

Further support for the Court's rulings is found in <u>DiFiore v. American Airlines, Inc.</u>, 454 Mass. 486 (2009). In that case, some plaintiff-skycaps were directly employed by American, while others were directly employed by G2 Secure Staff, LLC ("G2"), a separate legal entity. <u>Id.</u> at 488. Given the existence of these purportedly separate entities, Judge Young certified to the Supreme Judicial Court a question under the Massachusetts Tips Law, M.G.L. c. 149, § 152A, concerning American's liability to the skycaps allegedly "employed" by G2. In holding that American was liable to those skycaps, the Court concluded that an employer "may not escape" the requirements of the wage laws "by entering into a contract with a service entity, such as G2, under which the service entity would employ the [workers]." <u>Id.</u> at 494. Permitting such a scheme "would provide a means to exempt the [principal] from its obligations under the Act." <u>Id.</u> (citation omitted). In the same way, permitting Jani-King International to

escape liability though its use of a regional office structure would frustrate the Legislature's intent to broadly protect workers from misclassification.

Given that section 148B provides its own standard of what gives rise to an employee-employer relationship, there is no need to delve into common law "joint employer" test. That is why the Plaintiffs did not need to make a separate joint employer argument in their summary judgment briefs.[6] And that is why the Court did not need to conduct a separate joint employer analysis. Although the Defendants complain that the Court "effectively held that a plaintiff may hold multiple corporations liable for wages based on a prong-two inquiry alone" (ECF No. 213 at 7), they have nothing to complain about. The Court's holding was in keeping with what the Plaintiffs argued (and the Defendants ignored) and was consistent with the plain language of section 148B. As the Court noted, the Defendants' concern about the strict provisions of section 148B – i.e., that liability can be established under any of the statute's three prongs, including prong two alone – is not properly addressed to the Court: "If there are arguably unfortunate practical or policy implications to the way the statute, properly interpreted, operates, it's the duty of the legislature, not the Court, to create exemptions and exceptions. (6/6/12 Transcript, ECF No. 209, at 102).

Even if the Court chose to examine the relationship of the Defendants through the lens of a common law "joint employer" test (which, as described, is not applicable here, as section 148B provides its own test), the Defendants have failed to demonstrate a "manifest error." Indeed, the record supports the conclusion that the Defendants were

---

[6] The Plaintiffs did, however, note that "[a]s a result of their inter-related ownership, operations, and management, all three [Jani-King] entities are joint employers in the context of this case." (Id. at 1 n.1). The only purpose of that footnote was to make the non-controversial observation that an employee may have multiple employers.

11

joint employers, even if such a test needed to be satisfied. The First Circuit has adopted a "flexible approach" that focuses on the remedial goals of the employment law at issue and considers the degree of control exercised by the parent corporation relative to the "total employment process." Romano v. U-Haul Intern., 233 F.3d 655, 666 (1st Cir. 2000) ("We choose to follow the more flexible approach adopted by the Second Circuit which focuses on employment decisions, but only to the extent that the parent exerts an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.") (internal quotation marks omitted; brackets in original; citations omitted).[7] Jani-King International – the self-described "architect" of the Jani-King "franchise" system, and the entity that drafts and approves all franchise paperwork – controls the only "employment" decision that matters here: the classification of cleaners as independent contractors (or "franchisees," to use Jani-King's term).

---

7     The Defendants incorrectly describe the relevant test for joint employment in the context of this case. (ECF No. 213 at 16). The test that the Defendants characterize as the "undisputed" one applicable to this case was one used by the Massachusetts Commission Against Discrimination in a discrimination case. Wilfert Brothers Realty Co. v. Mass. Comm'n Against Discrimination, 2006 WL 935105, at *2 (Mass. Super. Ct. Mar. 21, 2006). However, a discrimination claim against multiple employers under chapter 151B requires consideration of a common law joint employer test, which is an entirely different matter than a claim against multiple parties for misclassification under section 148B; as discussed above, section 148B does not require consideration of a common law test. Also, in the Wilfert Brothers case, upon which Jani-King relies, the court went on to state that there are other common law tests for joint employment: "In addition, two or more businesses may be so interrelated that they may be considered a 'single employer.'" Id. The court then cited Romano for the proposition that "[t]he heart of the inquiry, essentially, concerns the extent to which the two entities are integrated, and the degree of control that they share over employment decisions concerning the claimant." Id., citing Romano, 233 F.3d at 664-66. The relevant "employment decision" concerning the Plaintiffs in this case, of course, is the decision to classify them as independent contractors, and charge them various fees and deductions that the SJC has held to be unlawful in Awuah v. Coverall North America, Inc., 460 Mass. 484 (2011).

## Conclusion

The parties and this Court have already had occasion to fully brief and consider the Defendants' liability under section 148B. The Defendants provide no reason, much less the type of compelling reason that is required to support a motion for reconsideration, to upset the Court's summary judgment rulings against them. Not only is it too late to make arguments that should have been made previously, but the Court's rulings were amply supported by the record and by relevant authority. As a result, the Defendants' motion for reconsideration should be denied.[8]

Respectfully submitted,

VINCENT DeGIOVANNI, MARIETTE BARROS, DIAMANTINO FERNANDES, MARIA PINTO, and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (BBO #640716)
Hillary Schwab (BBO #666029)
Stephen Churchill (BBO #564158)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated: August 7, 2012

---

[8] Notwithstanding the arguments set forth here, and Defendants' waiver of the issue pressed in their motion for reconsideration, if the Court nevertheless deemed it necessary to re-open the question of each Defendant's separate liability, the Court might consider certifying this issue to the Supreme Judicial Court. Just as in the Depianti et al v. Jan-Pro Franchising Int'l matter, C.A. No. 08-10663, the issue raised here is what standard should be applied when a worker contends that multiple entities are liable for misclassification under section 148B, and what circumstances warrant a finding of liability against multiple entities.

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 7, 2012, a copy of this document was served by electronic filing on all counsel of record.

                                  /s/ Shannon Liss-Riordan
                                  Shannon Liss-Riordan