UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
VINCENT De GIOVANNI et al,         )
and all others similarly situated, )
                                   )
            Plaintiffs,            )
                                   )   Civil Action No. 07-10066-MLW
      v.                           )
                                   )
JANI-KING INTERNATIONAL, INC.,     )
JANI-KING, INC., and               )
JANI-KING OF BOSTON, INC.,         )
                                   )
            Defendants.            )
_____)

**PLAINTIFFS' ASSENTED-TO MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs brought this action (and a related action that was filed in 2012 to cover a later time period, Shanley et al v. Jani-King International, Inc. et al, C.A. No. 12-12146-FDS), on behalf of franchisee who contended primarily that they had been misclassified as independent contractors in violation of the Massachusetts Independent Contractor Law, Mass. Gen. L. c. 149 § 148B. Following litigation of these claims, as well as related claims brought by cleaning workers against several other similar companies (see Awuah et al v. Coverall North America, 460 Mass. 484 (2011), 707 F. Supp. 2d 80 (D. Mass. 2010); Depianti et al v. Jan-Pro Franchising International, Inc., 465 Mass. 607 (2013); Sola et al v. CleanNet USA et al, C.A. No. 12-10580-JLT), the parties have reached a proposed settlement of these claims for a total of $7.5 million.

This settlement, the second to be achieved in Massachusetts under these claims, will provide substantial compensation to the franchisee s who purchased Jani-King franchises from Jani-King of Boston in Massachusetts at any time since January 2004.

Plaintiffs now request that the Court preliminarily approve this settlement and allow the parties to issue notice to the class members. A copy of the proposed settlement agreement is attached here as Exhibit A. A copy of the proposed notice to class members is attached here as Exhibit B and a claim form for workers to return is attached as Exhibit C. Upon approval by the Court, this notice will be issued by Plaintiffs' counsel to all eligible class members, at their last known addresses.[1]

In addition, Plaintiffs request that the Court schedule an approval hearing to take place in July 2014. At that hearing, Plaintiffs will report on the results of the notice process, including the number of class members who have returned claim forms by that date, the status of reaching class members whose notices were returned as undeliverable, and whether any class members have objected to the settlement. Also at that hearing, Plaintiffs will ask the Court for final approval of the settlement so that payments may be distributed to the class. Under the parties' agreement, assuming court approval of the settlement, the first installment of the settlement proceeds will be paid in November 2014.

Plaintiffs submit that the proposed settlement is fair, reasonable, and adequate and should receive preliminary approval by the Court. After extensive litigation in this case spanning seven years, the settlement was reached after lengthy discussions, including two mediation sessions with an experienced mediator and arbitrator, Mark Irvings. Resolution of the case now will provide an immediate and substantial monetary benefit for the class, an outcome that is preferable to prospect of continued litigation.

---

[1] Plaintiffs' counsel will conduct address search updates and will make efforts to get notice to class members who may have moved. Since the settlement will be paid out in installments over the next three years, class members who receive notice late will still be able to receive their share of the settlement if they submit a claim form in the next three years.

Accordingly, for all the reasons set forth herein, Plaintiffs request that the Court grant preliminary approval of the proposed class settlement, allow the plaintiffs to send the attached notice to class members, and schedule a final approval hearing for June 2014.

### I.     THE PROPOSED PLAN OF DISTRIBUTION.

Upon preliminary approval by the Court, Plaintiffs' counsel will mail the attached notice to the last known addresses of all individuals who purchased a Jani-King franchise from Jani-King of Boston in Massachusetts since January 2004.  The notice informs class members about the allegations in this case and the terms of the settlement.  It also informs the class members of their right to object to the settlement, or to opt out of the settlement if they would prefer not to be bound by it, and will identify the date, time, and location of the final approval hearing to be scheduled by the Court.

From data that Jani-King has provided, Plaintiffs' counsel will be responsible for calculating the distribution of the proceeds of the settlement fund to the class members. Payments to class members will be calculated based on the franchise fees, franchise note payments, and insurance payments that workers paid since January 2004 (the damages that Plaintiffs sought in this case, and that the SJC ruled were recoverable in its decision in <u>Awuah et al v. Coverall North America</u>, 460 Mass. 484 (2011)).

Class members will have until a date to be specified in May 2014, to opt-out of the settlement or submit objections to the settlement.  Class members who submit claim forms will receive their first installment payment from the settlement in November 2014, assuming the Court approves the proposed settlement.  The settlement will be paid out in four installments of $1,500,000 in November 2014 and $2,000,000 each in November 2015, November 2016, and November 2017.  Thus, class members who are located

later may still receive their share of the settlement provided they return a claim form before the final distribution in November 2017. The total proceeds of the settlement (minus incentive payments for the lead plaintiffs and attorneys' fees and costs) will be paid out to class members who submit claims.

Finally, the proposed settlement provides for incentive payments to the seven named plaintiffs who initiated the litigation and pursued it on behalf of their co-workers, Vincent DiGiovanni, Marriette Barros, Diamantino Fernandes, Maria Pinto, Maria Monteiro, Manuel Fernandes, and Edward Shanley, in the amount of $15,000 each. It also provides for a one-third share for attorneys' fees, which has been approved routinely in cases of this nature in Massachusetts. As discussed in Section III, infra, these payments are fair and reasonable, and should be approved. The courts have long recognized the judicial and public value of incentive payments for lead plaintiffs who undergo the efforts, public attention, and risks of retaliation (including from current or future employers) of pursuing claims on behalf of their co-workers, and have routinely approved payments in the range of, and in excess of, the payments requested here. Similarly, the courts have consistently endorsed one-third payments for attorneys' fees in common fund cases. Indeed, the First Circuit has endorsed the percentage-of-recovery approach, like the one used in this proposed settlement, finding that it is less burdensome to administer, promotes efficient use of attorney time and resources, and rewards counsel for the result achieved. See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295 (1st Cir. 1995).

## II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

It is well established that the courts favor settlements.  See, e.g., E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  "All settlements spare the judicial system and the litigants the expense and time associated with the full panoply of pretrial, trial and post-trial proceedings."  2 McLaughlin on Class Actions § 6:3.  The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources," Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993), and "where one proceeding can resolve many thousands . . . of claims that might otherwise threaten to swamp the judiciary," 2 McLaughlin on Class Action § 6:3.

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandates approve of such settlements if they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005).  However, at the preliminary approval stage, courts need not come to a final conclusion as to whether the proposed settlement is fair, reasonable, and adequate.  Rather, in preliminarily approving a class settlement, courts determine "whether a proposed settlement is 'within the range of possible approval' and

whether or not notice should be sent to class members." True v. American Hondo Motor Co., 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010), quoting In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); see also In re Prudential Security Litig., 163 F.R.D. 345, 355 (E.D.N.Y. 2006) (same).

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." In re M3 Power Razor System Marketing & Sales Practice Litig., 270 F.R.D. 45, 62-63 (D. Mass. 2010); see also City Partnership Co. v. Atlantic Acquisition, 100 F.3d 1041, 1043 (1st Cir. 1996). More specifically, there is a "presumption that the settlement is within the range of reasonableness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Id., quoting In re Lupron Marketing & Sales Practices Litig., 345 F. Supp. 2d 135, 137 (D. Mass. 2004).  An examination of these factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate, and should be preliminarily approved by the Court.[2] Notably, settlements in similar wage and hour class action cases brought by Plaintiffs' counsel have been approved in more than forty cases.  These settlements contained terms similar to the proposed settlement in this case, including a similar method for notifying class members, distributing the settlement fund, allocating incentive payments, and providing for the same one-third provision for attorneys' fees.[3]

---

[2] Because notice has not yet issued, no class member has filed an objection to the proposed settlement.  Thus, Plaintiffs will address the fourth factor, concerning the percentage and nature of any objections, after the notice period has concluded.

[3] These cases include dozens of state court cases, as well as the following federal cases: DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013); Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013); Cutter et al v. HealthMarkets, Inc.,

The proposed settlement in this case comes after seven years of litigation by Plaintiffs' counsel of these and related claims against similar cleaning companies, including multiple appeals, summary judgment and class certification briefing, and discovery.  Plaintiffs' counsel is thus well versed in the state of the law surrounding independent contractor misclassification and cleaning franchise companies in particular.  The parties reached this agreement after clearly arms-length bargaining conducted by experienced counsel over many months and multiple mediation sessions.

Indeed, Plaintiffs' counsel in this case, Shannon Liss-Riordan, is recognized as the pioneer in this type of litigation, having obtained class certification and summary judgment in this case as well as another similar cleaning company, Coverall, and having argued two precedential cases to the Massachusetts Supreme Judicial Court involving these same claims against cleaning franchise companies – <u>Awuah et al v. Coverall North America</u>, 460 Mass. 484 (2011) (holding that cleaning franchisees who had been held to be misclassified as independent contractors could recover such damages as franchise fees and insurance payments, which they paid on account of their misclassification); and <u>Depianti et al v. Jan-Pro Franchising International, Inc.</u>, 465 Mass. 607 (2013) (holding that national cleaning franchise company could be liable for misclassification of workers, nothwithstanding fact that contracts were directly between the workers and an intermediate "master franchisee").  In addition to her work on behalf

---

C.A. No. 10-cv-11488 (D. Mass. 2012); <u>Abla et al. v. Brinker Restaurant Corp.</u>, Civ. A. No. 10-10373 (D. Mass. 2011); <u>Apana v. Fairmont Hotels & Resorts (U.S.), Inc.</u>, Civ. A. No. 08-00528, docket no. 97 (D. Haw. Mar. 3, 2011); <u>Kiely et al v. TripAdvisor</u>, C.A. 08-11284 (D. Mass. 2011); <u>Maliniski et al. v. Starwood Hotels</u>, Civ. A. No. 08-11859 (D. Mass. 2010); <u>Hayes et al. v. Aramark Sports Service LLC</u>, Civ. A. No. 08-10700 (D. Mass. 2009); <u>Johnson et al. v. Morton's Restaurant Group</u>, Civ. A. No. 05-11058 (D. Mass. 2009); <u>Monahan v. WHM LLC d/b/a Boca Raton Resort & Club</u>, Civ. A. No. 09-80198 (S.D. Fla. 2009); <u>Niles v. Ruth's Chris Steak House, LLC</u>, C.A. No. 08-7700 (S.D.N.Y. 2008).

of cleaning workers who have been classified as independent contractors, Attorney Liss-Riordan has also litigated precedent-setting cases on behalf of other misclassified workers in other industries, including on behalf of exotic dancers (see, e.g, Chaves v. King Arthur's Lounge, Inc., Suffolk C. A. No. 07-2505 (Mass. Super. Jul. 30, 2009) (granting summary judgment and class certification to exotic dancers on their misclassification claim)), delivery drivers (see, e.g., Schwann et al v. FedEx Ground Package System, Inc., C.A. No. 11-cv-11094-RGS (D. Mass. July 3, 2013) (granting summary judgment to FedEx drivers, finding them to have been misclassified as independent contractors)), and cab drivers (see Farah et al. v. Tutunjian et al, Suffolk C.A. No. 12-3430) (June 27, 2013) (finding plaintiff cab drivers likely to succeed on the merits of their claim that they were misclassified as independent contractors)).  Attorney Liss-Riordan was able to draw on this substantial experience in order to provide the plaintiff class with a high degree of expertise in this field.

Finally, the proposed settlement calls for incentive payments of $15,000 each to the workers who pressed these claims on behalf of the class: Vincent DiGiovanni, Marriette Barros, Diamantino Fernandes, Maria Pinto, Maria Monteiro, Manuel Fernandes, and Edward Shanley.  These incentive payments are fair and reasonable and should be approved, given that it was the plaintiffs who initiated and pursued this lawsuit on behalf of their fellow workers and because it was through their initiative and risk that this recovery was obtained.  They served important functions for the class and were necessary to the result achieved.

Courts have routinely approved incentive payments in class settlements as a way of compensating class representatives for lending their names, reputations, and efforts

to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of state and federal law. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation"), quoting In re Lupron, 228 F.R.D. 75, 98 (D. Mass. 2005); In re Compact Disc Min. Adver. Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be encouraged, and such incentives further the goals of federal and state laws"); see also, e.g., Sheppard v. Consol. Edison Co. of New York, Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in the range of those requested in this case, and in even higher amounts. See, e.g., Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); Yap v.

Sumintomo Corp. of America, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs).  See also Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving $25,000 incentive payments for lead plaintiffs in wage action); DaSilva et al v. CleanNet USA, Inc., C.A. No. 12-10580 (D. Mass. 2013) (same); Abla v. Brinker Restaurant Corp., Civ. A. No. 10-10373 (D. Mass. 2011) (same); Hayes v. Aramark Sports Service LLC, Civ. A. No. 08-10700 (D. Mass. 2009) (same); Apana v. Fairmont Hotels & Resorts, Inc., Civ. A. No. 08-00528 (D. Haw. 2011) (same); Shea v. Weston Golf Club, Middlesex Civ. A. No. 02-1826 (Mass. Super. 2009) (same); Fernandez v. Four Seasons Hotel, Suffolk Civ. A. No. 02-4689 (Mass. Super. 2008) (same); Banks v. SBH Corp. (Grill 23), Suffolk Civ. A. No. 04-3515 (Mass. Super. 2007) (same); Frye v. Columbia Sussex Corp., Middlesex Civ. A. No. 06-4622 (Mass. Super. 2007) (same); Meimaridis v. Brae Burn Country Club, Middlesex Civ. A. No. 04-3769 (Mass. Super. 2006) (same).

### III. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE.

The proposed distribution of the settlement proceeds provides for a one-third share for attorneys' fees and expenses.  That share, which has been consistently approved by the courts in the cases listed above in footnote 3, is fair and reasonable and should be approved in this case as well.  As with all cases of this nature handled by Plaintiffs' counsel's firm, Plaintiffs' counsel accepted this case on a fully contingent arrangement, with no payment up front, and has borne all the expenses, costs, and risks associated with litigating this case.[4]  The lead plaintiffs support this request for

---

[4] Plaintiffs' counsel's firm operates on an almost all contingent fee basis.  It is through the award of these one-third contingent fees when they do prevail or successfully resolve a case that the firm is able to pursue litigation for years, advance hundreds of dollars in case expenses,

attorneys' fees, and the notice will inform class members that one-third of the settlement proceeds would be used to pay for attorneys' fees.

Plaintiffs' counsel has been the primary employee-side firm litigating cases under the Massachusetts Independent Contractor Law.  Lead counsel Shannon Liss-Riordan has been a pioneer developing the law in this field over the last decade and has obtained significant victories against cleaning franchise companies that have classified their workers as independent contractors.  In addition to this case, these cases include <u>Awuah et al v. Coverall North America</u>, 707 F. Supp. 2d 80 (D. Mass. 2010) (holding cleaning workers to have been misclassified), 460 Mass. 484 (2011) (holding that workers can recover damages for franchise fees and insurance payments on account of misclassification); <u>Depianti v. Jan-Pro Franchising International, Inc.</u>, 465 Mass. 607 (2013) (holding that national cleaning franchise company could be liable for misclassification of workers, even though contract was between workers and intermediate "master franchisee"); <u>DaSilva et al v. CleanNet USA, Inc</u>., C.A. No. 12-10580; <u>Machado et al v. System4 LLC</u>, Norfolk Super Court C.A. No. 10-0555 (finding franchisee cleaning workers to have shown likelihood of success in proving they were misclassified as independent contractors); <u>De Souza et al. v. The Solomon Partnership, Inc. d/b/a All-Pro Cleaning Systems et al.</u>, AAA No. 11 523 01574 11 (2012) (arbitration ruling that franchisee cleaning workers had been misclassified as independent contractors).

Having handled all of these cases, Plaintiffs' counsel was able in this case to draw from the benefit of this experience.  Her experience with the independent

---

and take risks in representing clients who cannot afford to pay for legal services.

contractor statute and this type of litigation provided the class a high degree of expertise in this area. A one-third attorney's fee in a common fund case has been consistently approved as reasonable. See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit., 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund)[5]; Matamoros et al v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass. 2013) (approving award of one-third attorneys' fee for a $23.5 million settlement in a Tips Law class action); Johnson et al. v. Morton's Restaurant Group, Civ. A. No. 05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for a $12 million settlement in a Tips Law class action); In Re: Lithotripsy Antitrust Litigation, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); In re: Medical X-Ray Film Antitrust Litigation, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570 (D. Mass. 2000) (awarding as an attorneys'

---

[5] In Thirteen Appeals, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases. See, e.g., Camden Condominium Ass'n v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993). See also Report of Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985) and Federal Judicial Center, Awarding Attorneys' Fees and Managing Fee Litigation, 63-64 (1994).

fee one-third of a more than $5 million recovery); In re: Peritus Software Servs., Inc. Sec. Litig., Civ. A. No. 98-10578 (D. Mass. 2000); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897 (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); Morton v. Kurzweil Applied Intelligence, Inc., Civ. A. No. 10829 (D. Mass. Feb. 4, 1998); In re Gillette Securities Litigation, Civ. A. No. 88-1858 (D. Mass. Mar. 30, 1994); Wilensky v. Digital Equipment Corporation, Civ. A. No. 94-10752 (D. Mass. 2001); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135 (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466 (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement).

Courts favor awarding fees from a common fund based upon the percentage of the fund method. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted); see also Blum v. Stenson, 465 U.S 886, 900 n.16 (1984).

Among the advantages of the percentage approach recognized by the First Circuit in Thirteen Appeals was the fact that it is less burdensome to administer than the lodestar method. See Thirteen Appeals, 56 F.3d at 307. The court in that case also endorsed the percentage of recovery approach because it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than

encouraging attorneys prolong litigation in order to inflate their recoverable hours. See id. ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement"). Similarly, the Court observed that the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills. See id. ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. . . . the market pays for the result achieved"), quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992).

Finally, awarding a percentage of the common fund, such as the one-third fee in this case, recognizes and encourages the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees.[6] Unlike traditional firms that receive hourly fees on a monthly basis, plaintiffs' attorneys who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, document production, and so forth), without ever receiving any ongoing payment for their work. Sometimes fees and

---

[6] In approving one-third contingency fees for such cases, courts have recognized that plaintiffs' counsel who take cases on contingency, including the undersigned, often spend years litigating cases vigorously without receiving any payment at all for their work. The system of permitting attorneys to accept work on a contingency basis recognizes that in many cases, attorneys will not receive any payment for years (if at all), and in some cases they will receive earlier larger payments. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate"). Such a system allows parties access to the courts who would not otherwise be able to find competent, and successful, counsel to represent them.

14

expenses are recovered; other times, despite hundreds or even thousands of hours of work, nothing is recovered.  This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees.  Courts have long recognized this reality.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").  For that reason, courts have routinely approved one-third fee awards in class settlements, recognizing "the attorneys' fees requested [are] entirely contingent upon success.  Proposed Class Counsel risk[s] time and effort and advance[s] costs and expenses, with no ultimate guarantee of compensation."  Macedonia Church v. Lancaster Hotel, LP, 2011 WL 2360138, at *14 (D. Conn. June 9, 2011).

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them.  That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations."  Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979) (addressing anti-trust laws).  This reasoning applies with equal force to wage and hour claims.  See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute

[wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).[7]

Here, Plaintiffs' counsel has litigated this and similar misclassification cases against other cleaning franchise companies for, quite literally, years, and has achieved a significant result for the plaintiff class.  By comparison, however, Plaintiffs' counsel has spent just as long litigating other cases on behalf of workers without compensation—and, indeed, at considerable expense.  In the practice of their contingency work, Plaintiffs' counsel have advanced hundreds of thousands of dollars in out-of-pocket expenses, which has not been repaid, to pursue litigation on behalf of workers in various types of employment cases, including wage, tips, misclassification, and discrimination cases.  To name just one example, Plaintiffs' counsel spent more than five years litigating the skycaps tips case against American Airlines, which they successfully tried to a jury in federal court and succeeded in getting the verdict affirmed by the Supreme Judicial Court, see DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009), only to have the verdict reversed by the First Circuit based on a federal preemption issue, see DiFiore v. American Airlines, Inc., 646 F.3d at 81 (1st Cir. 2011).

---

[7]     In addition, given Plaintiffs' counsel's history with the Independent Contractor Law, particularly in the area of cleaning franchise companies, this case can be seen as a partial culmination of nearly a decade's worth of work developing the law in this area.  While some courts have expressed concern over attorneys' fee awards based on a percentage of a common fund where the attorney involved has essentially "piggybacked" the case on the success of other attorneys in other similar cases, that is clearly not the case here.  See, e.g.,Mazola v. The May Department Stores Co., 1999 WL 1261312, at *2 (D. Mass. 1999) (Gertner, J.) (noting that the "percentage of the common fund" approach "may be appropriate for the counsel that innovated the cause of action, and took all the risks," but "it is not entirely appropriate for counsel that takes advantage of the efforts of others who have . . . done the 'spadework'").

With that reversal, hundreds of thousands of dollars of fees were lost, and thousands of hours of attorney work went unpaid.  Likewise, the firm has spent more than eight years litigating independent contractor misclassification cases on behalf of workers such as janitors, truck drivers, and exotic dancers, and in the process has advanced hundreds of thousands of dollars in expenses.  Many of those cases have lasted years; some, such as Awuah v. Coverall North America, Inc., Civ. A. No. 2007-10287, are going into their eighth year of litigation (and sixth appeal).  In addition to wage and hour cases, the firm has also advanced hundreds of thousands of dollars in expert expenses and incurred hundreds of hours of attorney time for cases challenging discrimination in promotional exams for police officers in the Commonwealth, including a case that has gone to trial and has now been pending for more than six years, Lopez v. City of Lawrence et al., Civ. A. No. 07-11693, with still no end in sight.

     In sum, a plaintiffs-side contingency practice on behalf of low wage workers who could not afford to pay out-of-pocket for counsel, such as Plaintiffs' counsel's firm, is made possible by the nature of contingency fee work.  Thus, in considering the fairness and reasonableness of the proposed attorneys' fees in this case, the Court should consider the nature of Plaintiffs' counsel's practice, which is only made possible by this contingency fee structure.  For these reasons, and given this precedent approving one-third recovery for attorneys' fees in class action cases just like this one, the Court should award the requested one-third recovery in this case as well.

## IV. CONCLUSION.

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant preliminary approval of this proposed settlement and allow Plaintiffs' counsel to issue the attached notices to the class members. A proposed order of preliminary approval is attached here as Exhibit D. Plaintiffs also request that the Court schedule a final approval and fairness hearing in July 2014, at which time Plaintiffs will request that the Court grant final approval of the settlement.

Respectfully Submitted,

VINCENT De GIOVANNI et al,
and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO # 640716
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street – 20th Floor
Boston, MA 02114

DATED:   March 14, 2014       (617) 994 – 5800


### CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2014, a copy of this document was served by electronic filing on all counsel of record.

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.